**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
Joshua D. Arisohn (*Admitted Pro Hac Vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com
        jarisohn@bursor.com

[Additional counsel on signature page]

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ALBINO LUCERO JR., on Behalf of Himself and all Others Similarly Situated,<br><br>                         Plaintiff,<br><br>    v.<br><br>SOLARCITY CORP.,<br><br>                         Defendant. | Case No. 3:15-cv-05107-RS<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date: March 9, 2017<br>Time: 1:30 PM<br>Courtroom 3, 17th Floor<br><br>Hon. Richard G. Seeborg |

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 9, 2017 at 1:30 p.m., or as soon thereafter as the matter may be heard by the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 3, 17th Floor, in the courtroom of the Honorable Richard G. Seeborg, Plaintiff will and hereby does move the Court to certify the classes and subclasses described herein, appoint Plaintiff as a class representative, and appoint Bursor & Fisher, P.A. and Nathan & Associates, APC as class counsel.

This motion is made on the grounds that certification is proper given that Plaintiff has met each requirement of Rule 23(a), Rule 23(b)(3) and Rule 23(b)(2).

This motion is based on the attached Memorandum Of Points And Authorities, the accompanying Declaration of Joshua D. Arisohn, Declaration of Randall A. Snyder, Report of Anya Verkhovskaya, the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

### CIVIL RULE 7-4(a)(3) STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should certify the classes and subclasses described herein, appoint Plaintiff as class representative, and appoint Bursor & Fisher, P.A. and Nathan & Associates, APC as class counsel.

Dated: December 14, 2016        Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:    */s/ Joshua D. Arisohn*
         Joshua D. Arisohn

Scott A. Bursor (State Bar No. 276006)
Joshua D. Arisohn (*Admitted Pro Hac Vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com
       jarisohn@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan, Esq. (State Bar No. 208436)
600 W. Broadway, Suite 700
San Diego, California 92101
Tel: (619) 272-7014
Fax: (619) 330-1819
Email: rnathan@nathanlawpractice.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    THE PROPOSED CLASSES AND SUBCLASSES ............................................. 4

III.   THE TELEPHONE CONSUMER PROTECTION ACT ....................................... 6

IV.    THE LEGAL STANDARD FOR CLASS CERTIFICATION ............................... 8

V.     THE REQUIREMENTS OF RULE 23(a) ARE READILY MET ......................... 8

       A.    Numerosity Is Satisfied ........................................................................ 8

       B.    Commonality Is Satisfied ...................................................................... 9

       C.    Plaintiff's Claims Are Typical ............................................................ 10

       D.    Plaintiff Will Adequately Represent The Classes and Subclasses .......................... 11

VI.    THE PROPOSED CLASSES AND SUBCLASSES SATISFY RULE 23(b)(3) ............... 12

       A.    Common Questions of Fact or Law Predominate .................................... 12

       B.    A Class Action Is Superior To Numerous Individual TCPA Actions ..................... 17

       C.    The Proposed Classes And Subclasses Are Ascertainable ....................... 18

VII.   THE PROPOSED CLASSES AND SUBCLASSES SATISFY RULE 23(b)(2) ............... 21

VIII.  CONCLUSION .................................................................................................. 22

**TABLE OF AUTHORITIES**

**CASES**

*Abdeljalil v. Gen. Elec. Capital Corp.*,
    306 F.R.D. 303 (S.D. Cal. 2015) ................................................. 7, 20

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................ 17

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
    133 S. Ct. 1184 (2013) ......................................................... 8, 13

*Arnott v. U.S. Citizenship & Immigration Servs.*,
    290 F.R.D. 579 (C.D. Cal. 2012) .................................................. 8

*Avio, Inc. v. Alfoccino, Inc.*,
    311 F.R.D. 434 (E.D. Mich. 2015) ............................................. 14, 15

*Balbarin v. N. Star*,
    2011 WL 211013 (N.D. Ill. Jan. 21, 2011) ....................................... 16

*Bates v. Dollar Loan Ctr., LLC*,
    2014 WL 5469221 (D. Nev. Oct. 28, 2014) ....................................... 20

*Bee, Denning, Inc. v. Capital All. Grp.*,
    310 F.R.D. 614 (S.D. Cal. 2015) ............................................... 6, 19

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    302 F.R.D. 240 (N.D. Ill. 2014) ............................................... 7, 19

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ................................................... 11

*Booth v. Appstack, Inc.*,
    2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) ................................ 7, 14, 19

*Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*,
    249 F.R.D. 334 (N.D. Cal. 2008) ................................................. 9

*CE Design v. Beaty Const., Inc.*,
    2009 WL 192481 (N.D. Ill. Jan. 26, 2009) ....................................... 16

*Chapman v. Wagener Equities, Inc.*,
    2014 WL 540250 (N.D. Ill. Feb. 11, 2014) ....................................... 16

*Chun–Hoon v. McKee Foods Corp.*,
    2006 WL 3093764 (N.D. Cal. Oct. 31, 2006) ..................................... 13

*Elkins v. Medco Health Solutions, Inc.*,
    2014 WL 1663406 (E.D. Mo. Apr. 25, 2014) ...................................... 16

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
    2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) ..................................... 19

*G.M. Sign, Inc. v. Franklin Bank, S.S.B.*,
   2008 WL 3889950 (N.D. Ill. Aug. 20, 2008) ........................................................ 15

*Gaines v. Law Office of Patenaude & Felix, A.P.C.*,
   2014 WL 3894348 (S.D. Cal. June 12, 2014)....................................................... 16

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)......................................................................................... 9

*Grant v. Capital Mgmt. Servs., L.P.*,
   449 Fed. Appx. 598 (9th Cir. 2011)................................................................. 16

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................... 10, 11, 13

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ..................................................................... 8, 10

*Heinrichs v. Wells Fargo Bank, N.A.*,
   2014 WL 985558 (N.D. Cal. Mar. 7, 2014).......................................................... 16

*Hinman v. M & M Rental Ctr., Inc.*,
   545 F. Supp. 2d 802 (N.D. Ill. 2008) ............................................................... 16

*In re Emulex Corp.*,
   210 F.R.D. 717 (C.D. Cal. 2002) .................................................................... 12

*In re Yahoo Mail Litig.*,
   308 F.R.D. 577 (N.D. Cal. 2015) .................................................................... 21

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
   27 F.C.C. Rcd. 1830 (2012) ......................................................................... 17

*Ira Holtzman, C.P.A. v. Turza*,
   728 F.3d 682 (7th Cir. 2013) ....................................................................... 16

*James v. JPMorgan Chase Bank, N.A.*,
   2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) ..................................................... 14

*Kamar v. Radio Shack Corp.*,
   254 F.R.D. 387 (C.D. Cal. 2008) .................................................................... 14

*Kernats v. Comcast Corp.*,
   2010 WL 4193219 (N.D. Ill. Oct. 20, 2010)....................................................... 14

*Knutson v. Schwan's Home Serv., Inc.*,
   2013 WL 4774763 (S.D. Cal. Sept. 5, 2013)................................................. 15, 18, 19

*Krakauer v. Dish Network L.L.C.*,
   311 F.R.D. 384 (M.D.N.C. 2015) ..................................................................... 8

*Kristensen v. Credit Payment Servs.*,
   12 F. Supp. 3d 1292 (D. Nev. 2014) ................................................................ 17

*Lee v. Stonebridge Life Ins. Co.*,
    289 F.R.D. 292 (N.D. Cal. 2013)........................................................................ 6, 15

*Mace v. Van Ru Credit Corp.*,
    109 F.3d 338 (7th Cir. 1997) ............................................................................ 17

*Mainstream Mktg. Servs., Inc. v. F.T.C.*,
    358 F.3d 1228 (10th Cir. 2004) ...................................................................... 7, 8

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
    289 F.R.D. 674 (S.D. Fla. 2013)...................................................................... 15

*McCrary v. Elations Co., LLC*,
    2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ................................................ 18

*Mendez v. C-Two Grp., Inc.*,
    2015 WL 8477487 (N.D. Cal. Dec. 10, 2015) .............................................. 6, 17

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002).......................................................................... 13

*Moreno v. AutoZone, Inc.*,
    251 F.R.D. 417 (N.D. Cal. 2008).................................................................... 20

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) .......................................................................... 14

*Ott v. Mortg. Inv'rs Corp. of Ohio*,
    65 F. Supp. 3d 1046 (D. Or. 2014) ................................................................. 16

*Ries v. Arizona Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012)................................................................... 21, 22

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2009) .......................................................................... 9

*Sailola v. Mun. Servs. Bureau*,
    2014 WL 3389395 (D. Haw. July 9, 2014)..................................................... 16

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) .................................................................. 2, 4, 16, 17

*Saulsberry v. Meridian Fin. Servs., Inc.*,
    2016 WL 3456939 (C.D. Cal. Apr. 14, 2016) ................................................ 20

*Shupe v. JPMorgan Chase Bank of Ariz.*,
    2012 WL 1344820 (D. Ariz. Mar. 14, 2012).................................................. 16

*Smith v. Cardinal Logistics Mgmt. Corp.*,
    2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) ................................................ 13

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .......................................................................... 11

*Steinfeld v. Discover Fin. Servs.*,
   2014 WL 1309352 (N.D. Cal. Mar. 31, 2014) ........................................................................ 18

*Stern v. DoCircle, Inc.*,
   2014 WL 486262 (C.D. Cal. Jan. 29, 2014) ................................................................. 15, 19

*Taylor v. Universal Auto Grp. I, Inc.*,
   2014 WL 6654270 (W.D. Wash. Nov. 24, 2014) ........................................................... 17

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ...................................................................................................... 9, 10

*Wang v. Chinese Daily News, Inc.*,
   737 F.3d 538 (9th Cir. 2013) ........................................................................................... 13

*Whitaker v. Bennett Law, PLLC*,
   2014 WL 5454398 (S.D. Cal. Oct. 27, 2014) ................................................................. 15

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ........................................................................................... 12

*Wolph v. Acer Am. Corp.*,
   272 F.R.D. 477 (N.D. Cal. 2011) ..................................................................................... 18

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ........................................................................................... 8

**STATUTES**

47 U.S.C. § 227 ........................................................................................................................ 1, 6, 16

47 U.S.C. § 227(b) ................................................................................................................... 6

47 U.S.C. § 227(b)(1)(A) ....................................................................................................... 2

47 U.S.C. § 227(b)(3)(C) ....................................................................................................... 14

47 U.S.C. § 227(c) ................................................................................................................... 7

47 U.S.C. § 227(c)(5) .............................................................................................................. 7

**RULES**

Fed. R. Civ. P. 23 ................................................................................................................ passim

Fed. R. Civ. P. 23(a) ........................................................................................................... passim

Fed. R. Civ. P. 23(b) ........................................................................................................... passim

Fed. R. Civ. P. 23(g) ........................................................................................................... 12

**REGULATIONS**

47 C.F.R. § 64.1200(c) .......................................................................................................... 7

47 C.F.R. § 64.1200(e) ........................................................................................... 7

**OTHER AUTHORITIES**

7AA Wright & Miller, Fed. Prac. & Proc. § 1778 (3d ed. 2011) ......................................... 13

Newberg on Class Actions § 12:2 ................................................................................ 14

## I. INTRODUCTION

Plaintiff Jose Albino Lucero Jr. ("Plaintiff") alleges that Defendant SolarCity Corp. ("Defendant" or "SolarCity") called him and class and subclass members using automatic telephone dialing systems ("ATDS" or "autodialer"), without their prior express consent, and despite the fact that they are registered on the national Do Not Call ("NDNC") list, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. ███████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████

SolarCity is a massive company and it buys leads from lead generators on a massive scale.[1]

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████

---

[1] Earlier this year, SolarCity accepted a bid by Tesla Motors Inc. to buy the company for $2.6 billion. *SolarCity accepts Tesla's $2.6 billion offer; both shares fall*, Reuters (Aug. 1, 2016), *available at* http://www.reuters.com/article/us-solarcity-m-a-tesla-idUSKCN10C26O (last checked Dec. 14, 2016).



Snyder Decl. ¶¶ 64, 66 and 68; *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) ("When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* to store or produce telephone numbers to be called, using a random or sequential number generator.") (original emphasis) (internal quotation marks omitted).

The TCPA prohibits calling consumers with autodialers absent prior express consent. 47 U.S.C. § 227(b)(1)(A). 

Throughout the class period, Defendant's compliance policies were slipshod.

One of the consumers receiving unwanted calls from Defendant was Plaintiff Jose Albino Lucero Jr.. Plaintiff's caller ID ████████████████████ show that SolarCity called Plaintiff six times ████████████████. Arisohn Decl. Ex. O (LUCERO000020-23); Verkhovskaya Rpt. ¶ 31, Ex. G. Defendant placed these calls to Plaintiff's cellular phone. *Id.* Ex. P (LUCERO000012-18); Ex. Q (Lucero Dep.) at 55:24-56:6, Ex. R (SCPROD00029795). Plaintiff never consented to receiving phone calls from Defendant. *Id.* Ex. Q (Lucero Dep.) at 52:29-21, 158:16-21. ████████████████████████████████████████████████████████ Not only did Plaintiff never consent to receiving these calls from Defendant, but he has been on the NDNC list since at least 2010. *Id.* Ex. S (LUCERO000004-06); Ex. Q (Lucero Dep.) at 74:7-20. Congress passed the TCPA precisely to discourage these kinds of harassing phone calls.

## II. THE PROPOSED CLASSES AND SUBCLASSES

Defendant's calls to consumers violated the TCPA in two different ways. First, Defendant placed calls using an autodialer without the prior express consent of call recipients. Accordingly, Plaintiff seeks certification of an **Autodialer Class**, defined as:

All individuals in the United States who received one or more calls on their cellular telephones from SolarCity Corp. from November 6, 2011

> to the date that class notice is disseminated, where such calls were
> made through the use of an automated telephone dialing system.

The Autodialer Class contains two subgroups for whom the lack of consent is particularly clear: (A) call recipients for whom Defendant has ███████████ indicating consent, and (B) call recipients for whom Defendant has ████████████████████████████████ ████████████████████████. Accordingly, Plaintiff seeks certification of two Autodialer Subclasses. **Autodialer Subclass A** is defined as:

> All individuals in the United States who received one or more calls on
> their cellular telephones from SolarCity Corp. from November 6, 2011
> to the date that class notice is disseminated, where such calls were
> made through the use of an automated telephone dialing system, ████
> ████████████████████████

**Autodialer Subclass B** is defined as:

> All individuals in the United States who received one or more calls on
> their cellular telephones from SolarCity Corp. from November 6, 2011
> to the date that class notice is disseminated, where such calls were
> made through the use of an automated telephone dialing system, ████
> ████████████████████████

Second, Defendant violated the TCPA by placing calls to consumers registered on the NDNC list. Accordingly, Plaintiff seeks certification of a **NDNC Class**, defined as:

> All individuals registered on the National Do Not Call Registry whom
> SolarCity Corp. called more than one time in a 12-month period on
> their cellular or landline phone where each call was made more than
> 30 days after registration.

Like the Autodialer Class, the NDNC Class contains two subgroups for whom a lack of consent is particularly clear: (A) call recipients for whom Defendant has ████████████ indicating consent, and (B) call recipients for whom Defendant has ████████████████████████████ ████████████████████████████████████ Accordingly, Plaintiff seeks certification of two NDNC Subclasses. **NDNC Subclass A** is defined as:

> All individuals registered on the National Do Not Call Registry whom
> SolarCity Corp. called more than one time in a 12-month period on
> their cellular or landline phone where each call was made more than
> 30 days after registration, and for whom SolarCity Corp. ████████
> ████████████

**NDNC Subclass B** is defined as:

All individuals registered on the National Do Not Call Registry whom SolarCity Corp. called more than one time in a 12-month period on their cellular or landline phone where each call was made more than 30 days after registration, and for whom SolarCity Corp. ██████.

As shown below, for all of these classes and subclasses, Plaintiff meets each requirement of Rule 23(a), Rule 23(b)(3) and Rule 23(b)(2).

## III.  THE TELEPHONE CONSUMER PROTECTION ACT

The TCPA is a consumer-protection statute that Congress enacted after finding that robo-calls had become a serious problem, posing a nuisance and invading the privacy of telephone subscribers nationwide.  *See* TCPA, 47 U.S.C. § 227 note; *see also* 105 Stat. 2394 § 2(10).  To address this issue, Congress prohibited callers from using automated telephone dialing systems to contact cellular customers without the prior express consent of the called party.  Congress also granted a private right of action with statutory damages for victims of illegal calls, to facilitate both public and private enforcement.  *See* 47 U.S.C. § 227(b).  Despite these measures, illegal robocalling has persisted as a low-cost, high-volume way of attempting to contact consumers, and continues to skate the edges of federal and state law.[2]

Courts routinely certify class actions to remedy telemarketing campaigns that systematically violate the TCPA.  *See, e.g.*, *Mendez v. C-Two Grp., Inc.*, 2015 WL 8477487, at *2 (N.D. Cal. Dec. 10, 2015) (certifying a class of plaintiffs who received text messages from defendant); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013) (certifying a class of plaintiffs who received text messages from defendant) (Seeborg, J.); *Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614 (S.D. Cal. 2015) (certifying automated call class); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014) (certifying a class of plaintiffs which alleged that

---

[2] *See* Prepared Statement of The Federal Trade Commission "Stopping Fraudulent Robocalls: Can More Be Done?", before the Committee on Commerce, Science and Transportation, Senate, 113th Congress 8 (2013), *available at* https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-entitled-%E2%80%9Cstopping-fraudulent-robocall-scams-can-more-be/130710robocallstatement.pdf (last visited Dec. 14, 2016) (describing complex systems through which telemarketers attempt to circumvent the law by involving third parties to obtain lead lists, voice recordings, and autodialing services).

defendants made or benefitted from robocalls that "utilized a prerecorded voice to send the same type of message, from the same person, using the same technology"); *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015) (certifying an autodialer class); *Booth v. Appstack, Inc.*, 2015 WL 1466247, at *3 (W.D. Wash. Mar. 30, 2015) (certifying class of all persons who were called with pre-recorded messages).

The TCPA also provides that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action for injunctive relief, damages, or both. 47 U.S.C. § 227(c)(5). 47 C.F.R. § 64.1200(c), promulgated under Section 227(c), prohibits all telephone solicitations to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry. . . ." This regulation also applies to wireless telephone subscribers who have registered their numbers on the national do-not-call registry. 47 C.F.R. § 64.1200(e).

> The national do-not-call registry is a list containing the personal telephone numbers of telephone subscribers who have voluntarily indicated that they do not wish to receive unsolicited calls from commercial telemarketers. Commercial telemarketers are generally prohibited from calling phone numbers that have been placed on the do-not-call registry, and they must pay an annual fee to access the numbers on the registry so that they can delete those numbers from their telephone solicitation lists. So far, consumers have registered more than 50 million phone numbers on the national do-not-call registry.

*Mainstream Mktg. Servs., Inc. v. F.T.C.*, 358 F.3d 1228, 1234 (10th Cir. 2004). The FTC records complaints from consumers who have registered their numbers on the NDNC list, but have received telemarketing calls on their cell phones or landline phones anyway.[3] Despite the enactment of the NDNC list in 2003, there were still over 3 million consumer complaints made to the FTC in 2014 alone.[4]

---

[3] Federal Trade Commission, *National Do Not Call Registry Data Book FY 2014*, at 8 (Nov. 19, 2014) *available at* https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2014/dncdatabookfy2014.pdf (last visited Dec. 14, 2016).

[4] *Id.*

# IV.    THE LEGAL STANDARD FOR CLASS CERTIFICATION

A party seeking class certification must satisfy the four prerequisites of Rule 23(a): "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Arnott v. U.S. Citizenship & Immigration Servs.*, 290 F.R.D. 579, 583 (C.D. Cal. 2012) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)) (internal quotation marks omitted).  In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under Rule 23(b)(1), (2), or (3).  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Here, Plaintiff asks the Court to certify the classes and subclasses under Rule 23(b)(3), which permits class actions for damages where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Plaintiff also seeks certification pursuant to Fed. R. Civ. P. 23(b)(2) which provides that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

The party seeking class certification bears the burden of proof in demonstrating that it has satisfied all four Rule 23(a) prerequisites and that their class lawsuit falls within one of the three types of actions permitted under Rule 23(b).  *Zinser*, 253 F.3d at 1186.  The district court must conduct a rigorous analysis to determine whether plaintiffs met their burden to pursue their claims as a class action.  *Id.* at 161.  Nevertheless, Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).

# V.    THE REQUIREMENTS OF RULE 23(a) ARE READILY MET

## A.    Numerosity Is Satisfied

Rule 23(a)(1) requires the classes to be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the

requirement, while one less than twenty-one does not.  *See Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008).  Here, numerosity cannot reasonably be disputed.  The Autodialer Class is sufficiently numerous because Defendant made ███████████ ███████████████████████████████████████████ Verkhovskaya Rpt. ¶ 17.  Likewise, because a large percentage of these calls, as well as Defendant's calls to landlines, were made to consumers on the national Do Not Call list, the NDNC Class is sufficiently numerous as well.[5]  The A subclasses are only slightly smaller given that many of the calls at issue were made███████ ████████████████████████████████████████████ Verkhovskaya Rpt. ¶ 17. The B subclasses are even larger than the A subclasses because they exclude only a fraction of the consumers ██████████████  In sum, the proposed classes and subclasses contain many thousands of class members.

### B.  Commonality Is Satisfied

To satisfy the commonality requirement of Rule 23(a)(2), Plaintiff must identify "a common contention" that is "capable of classwide resolution."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).   That is, "determination of [the contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  All questions of fact and law need not be common to satisfy the rule.  *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2009).  "What matters to class certification is . . . the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551 (emphasis in original).

Here, there are multiple common questions.  To start, Plaintiff's and the classes' and subclasses' claims arise out of a common nucleus of operative facts:  SolarCity violated the TCPA by placing calls utilizing automated telephone dialing systems without the recipients' prior express consent and regardless of whether call recipients were listed on the NDNC list.  Each class and

---

[5] Federal Trade Commission, *Hundreds of millions say "Do Not Call"* (Nov. 19, 2015), *available at* https://www.consumer.ftc.gov/blog/hundreds-millions-say-do-not-call (last visited Dec. 14, 2016) ("As of October 1, 2015, the Do Not Call list includes more than 222 million numbers."); *2009 Economic Report of the President* (Jan. 16, 2009) at 244, *available at* https://georgewbush-whitehouse.archives.gov/cea/ERP_2009.pdf (by 2007, 72 percent of Americans had registered on the national Do Not Call list).

subclass member has suffered the same injury and is entitled to statutory damages under the TCPA.

This common nucleus of operative facts gives rise to several common and controlling factual and legal questions that will resolve each class members' TCPA claims against Defendant in one stroke, including:

- Whether SolarCity placed the calls in question using an automated telephone dialing system as contemplated by the TCPA;

- Whether SolarCity placed the calls in question to consumers registered on the NDNC list;

- Whether SolarCity's conduct constitutes a violation of the TCPA;

- Whether SolarCity and the classes and subclasses are entitled to actual, statutory, or other forms of damages, and other monetary relief;

- Whether Plaintiff and the classes and subclasses are entitled to treble damages based on the willfulness of SolarCity's conduct; and

- Whether Plaintiff and the classes and subclasses are entitled to equitable relief.

Accordingly, the requirement of commonality is satisfied.

## C. Plaintiff's Claims Are Typical

Rule 23(a)(3) requires the representative party to have claims that are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The typicality requirement is "permissive" and requires only that the representative's claims are "reasonably co-extensive with those of the absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, the essential characteristics of Plaintiff's claims and those of the respective classes and subclasses he seeks to represent are more than significant—they are practically identical. First, plaintiff's and class and subclass members' claims result from the exact same conduct: SolarCity called him on his cellular phone using an autodialer without his prior express consent and despite the fact that he was registered on the NDNC list. Arisohn Decl. Ex. P (LUCERO000012-18); Ex. Q

(Lucero Dep.) at 52:29-21, 55:24-56:6, 74:7-20, 158:16-21, ███████████████; Ex. S

(LUCERO000004-06); Verkhovskaya Rpt. ¶ 31.  These calls all had the same purpose; they were all

attempts by SolarCity to peddle its solar products.  As a result, Plaintiff's rights under the TCPA

were violated by the same common course of conduct to which SolarCity subjected every other class

and subclass member, and Plaintiff suffered the exact same injury as all other class and subclass

members.  Accordingly, Plaintiff's claims satisfy the typicality requirement of Rule 23(a).

### D.    Plaintiff Will Adequately Represent The Classes and Subclasses

Rule 23(a) also requires the representative parties to "fairly and adequately protect the

interests of the class." Fed. R. Civ. P. 23(a)(4).  The Ninth Circuit has established a two-prong test

for this requirement:  "(1) do the named plaintiffs and their counsel have any conflicts of interest

with other class members and (2) will the named plaintiffs and their counsel prosecute the action

vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing

*Hanlon*, 150 F.3d at 1020).  Here, Plaintiff satisfies both prongs.

First, Plaintiff is an adequate class representative.  The "due process touchstone of adequacy

and fairness of representation must be judged in light of . . . the alternatives to class representation

available." *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975).  Rule 23 "requires adequate

representation.  The alternative may be none at all." *Id.* at n.26.  Here, Plaintiff has already

demonstrated his adequacy and commitment to vigorously prosecuting this action by performing his

duties as a named plaintiff.  In that regard, Plaintiff searched for and produced documents relevant to

this action, responded to Defendant's interrogatories, reviewed documents to be filed on his behalf,

sat for a lengthy deposition, regularly corresponds with his counsel, and remains updated on the

status of this case.  Arisohn Decl. Ex. Q (Lucero Dep.) at 90:2-92:5.  Furthermore, Plaintiff has the

same interests as the class and subclass members who were also called by Defendant.  Plainly,

Plaintiff is an adequate class representative.

Plaintiff's lawyers are also qualified to serve as class counsel.  Rule 23(g) requires that a

district court appoint class counsel for any class that is certified. *See* Fed. R. Civ. P. 23(g)(1)(A).  In

appointing class counsel, Rule 23(g) lists four factors for consideration:  (1) the work counsel has

done in identifying or investigating potential claims in the action; (2) counsel's experience in

handling class actions or other complex litigation and the type of claims in the litigation;

(3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to

representing the class. Fed. R. Civ. P. 23(g). In evaluating the adequacy of counsel, "a court may

examine the attorneys' professional qualifications, skill, experience, and resources. The court may

also look at the attorneys' demonstrated performance in the suit itself." *In re Emulex Corp.*, 210

F.R.D. 717, 720 (C.D. Cal. 2002).

Plaintiff's counsel, Bursor & Fisher, P.A. and Nathan & Associates, APC, are lawyers who

have experience litigating class action claims. *See* Arisohn Decl. Ex. T (Bursor & Fisher, P.A. Firm

Resume); Ex. U (Nathan & Associates, APC Firm Resume). Plaintiff's counsel—already appointed

interim class counsel in this matter (ECF No. 87)—have been appointed class counsel in dozens of

cases in both federal and state courts, and have won multi-million dollar verdicts or recoveries in 5

of 5 class action jury trials since 2008. *Id.* They have also been vigorously prosecuting this action

through discovery and litigation of Defendant's motions to dismiss and motion to stay, have retained

experts, conducted substantial research regarding the legal issues, and thoroughly investigated the

factual issues in this action. They have no conflicts of interest and will prosecute this action

vigorously on behalf of Plaintiff and the classes and subclasses. These facts demonstrate that Bursor

& Fisher, P.A. and Nathan & Associates, APC are qualified to serve as class counsel.

## VI.     THE PROPOSED CLASSES AND SUBCLASSES SATISFY RULE 23(b)(3)

Rule 23(b)(3) authorizes class certification where "questions of law or fact common to class

members predominate over any questions affecting only individual members," and "a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R.

Civ. P. 23(b)(3); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010).

Both of these requirements are met here.

### A.     Common Questions of Fact or Law Predominate

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate

over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The analysis

"presumes that the existence of common issues of fact or law have been established pursuant to Rule

23(a)(2)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Thus, the predominance

analysis "focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1022). The main concern is "the balance between individual and common issues." *Id.* at 546 (quotation marks and citation omitted). This does not mean, however, that individual issues need be entirely absent. "[F]ederal courts have recognized that individual issues will likely be present during class actions but that such issues should not prevent class certification so long as they do not override the underlying common question." *Smith v. Cardinal Logistics Mgmt. Corp.*, 2008 WL 4156364, at *10 (N.D. Cal. Sept. 5, 2008); *Chun–Hoon v. McKee Foods Corp.*, 2006 WL 3093764, at *5 (N.D. Cal. Oct. 31, 2006) (stating "even though individual issues exist, they do not bar class certification"). Rather, "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); 7AA Wright & Miller, Fed. Prac. & Proc. § 1778 (3d ed. 2011) (Rule 23(b)(3)'s predominance requirement is satisfied when "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication"). Notably, Rule 23(b)(3) calls only for "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc.*, 133 S. Ct. 1184 at 1191.

Here, the foregoing discussion regarding commonality and typicality demonstrates that the claims of Plaintiff and classes and subclasses arise out of a common course of conduct. As discussed above, Defendant employed uniform practices with regard to each class and subclass member: (i) it placed calls using an automated telephone dialing system, (ii) each call was designed to sell Defendant's solar products and services, (iii) each call was made without the call recipient's prior express consent, and (iv) each call was made without regard to whether call recipients were registered on the NDNC list. Where, as here, "liability turns on an employer's uniform policy that is uniformly implemented, . . . predominance is easily established" and "[c]lass certification is usually appropriate." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008); *Kernats v.*

*Comcast Corp.*, 2010 WL 4193219, at *8 (N.D. Ill. Oct. 20, 2010) (where "a class challenges a uniform policy or practice, the validity of that policy or practice tends to be the predominant issue in the ensuing litigation"). And the main issue in this case—Defendant's use of autodialers to call Plaintiff and class members—even taken alone, is sufficient to establish predominance. *James v. JPMorgan Chase Bank, N.A.*, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) ("Class-wide proof can answer the predominant questions (whether Chase auto-dialed each person and whether each call violates the TCPA)."); *Avio, Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434, 446 (E.D. Mich. 2015) ("The heart of this litigation arises from a single campaign of faxes sent by a single set of Defendants. Each allegedly violative fax was identical in its substance. And critically, all of the potential class members' claims are brought under the same federal statute and are based on identical legal theories that can be uniformly resolved together.").

The sheer number of common issues in this case demonstrates that such issues predominate. For instance, the relief sought is identical in each class and subclass member's case. The TCPA provides a statutory damages award of $500 for each violation of the Act. 47 U.S.C.§ 227(b)(3)(C). Each member of the classes and subclasses is seeking the same statutory damages, the only difference between claims being the number of times a class or subclass member was called, allowing damages to be easily calculated. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 670-71 (7th Cir. 2015) ("a common method for showing individual damages—a simple formula could be applied to each class member's employment records . . . would be sufficient for the predominance and superiority requirements to be met.") (quoting *Newberg on Class Actions* § 12:2). As such, Plaintiff's and the classes' and subclasses' claims will be subject to common proof, and this litigation is well-suited to the class action process.

These numerous common issues are not outweighed by the potential for individual issues of consent that are belied by the record and thus entirely speculative. *Booth v. Appstack, Inc.*, 2015 WL 1466247, at *11 (W.D. Wash. Mar. 30, 2015) ("Defendants' contention that the sources from which SalesGenie obtained the telephone numbers may have procured class members' consent to receive robocalls does not rise above speculation, which is inadequate to defeat class certification."). In *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013) (Seeborg, J.), for instance, the

defendant argued that class certification was inappropriate because "the dialing lists used here were generated, at least in part, from websites where individuals had consented to receiving" text messages and would thus "require individualized treatment of each class member's claim." *Id.* at 295. The court rejected this argument outright, noting that if there is evidence of consent, "merits discovery should reveal it, with whatever consequences that may then have to the size of the class or whether any class action can proceed." *Id.* Likewise, in *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, 2008 WL 3889950 (N.D. Ill. Aug. 20, 2008), the court indicated that individual issues of consent are unlikely to ever predominate over common issues in a TCPA class action:

> As [plaintiff] points out, the claims at issue in this case arise from a uniform type of alleged violation of a single statute. Though some of the issues [defendant] identifies have the potential to require individual resolution, there can be no question that the common issues identified above will be a main focus of this case going forward.

> Moreover, the obstacles [defendant] perceives to predominance and superiority are largely illusory. One example is the contention that an individualized inquiry is required to ascertain membership in the class because every class member would have to adduce evidence that prior consent was not given. Such evidence would be within the knowledge of the potential class member, and a party would need a good-faith basis to believe that he or she satisfies the class definition before making a representation to this court to that effect.

*Id.* at *6. Numerous other courts have reached similar conclusions.[6]

---

[6] *See, e.g.*, *Stern v. DoCircle, Inc.*, 2014 WL 486262, at *8 (C.D. Cal. Jan. 29, 2014) (finding that predominance was satisfied despite the potential for individualized consent issues to arise, and noting that if "individualized inquiries threaten to swamp common questions, the Court can revisit the propriety of class certification"); *Knutson v. Schwan's Home Serv., Inc.*, 2013 WL 4774763, at *10 (S.D. Cal. Sept. 5, 2013) (despite asserted individual issues of consent, "common questions . . . predominate"); *Whitaker v. Bennett Law, PLLC*, 2014 WL 5454398, at *6 (S.D. Cal. Oct. 27, 2014) ("The central issue of Bennet Law's liability is whether or not they placed unsolicited, automated calls to the putative class member's cellular telephones, which predominates over the subsequent issues of intent and the existence or nonexistence of prior express consent with each individual call."); *Avio, Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434, 446 (E.D. Mich. 2015) ("While it is undoubtedly true that some individualized issues may arise involving consent, there is no indication that those issues are so widespread so as to overcome the numerous and foundational issues common to all members of the class."); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 687 (S.D. Fla. 2013) ("[T]he issue of consent does not, in this case, present an individualized issue destroying the cohesiveness of the class."); *CE Design v. Beaty Const., Inc.*, 2009 WL 192481, at *9 (N.D. Ill. Jan. 26, 2009) (predominance satisfied despite the possibility of individual consent inquiries because "whether the plaintiffs received unsolicited faxes . . . is the singular question that predominates above all else" and claims fell "within the purview the same federal statute and [arose] from the alleged conduct of one defendant acting over a very short period of time"); *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008) ("At present, I have no reason to believe that the resolution of any individual issues will consume more time or resources than the

1    Moreover, the subclasses are all defined in such a manner that adjudication of their claims

2    will not involve <u>any</u> individual issues of consent.  Because the A subclasses exclude any consumers

3    for whom ████████████████ there is zero evidence that any of the members of these

4    subclasses consented to being called by SolarCity with the use of an autodialer or to overriding their

5    registrations on the NDNC list.  There is thus no reason to believe that there will be any

6    individualized inquiries regarding the consent of the these subclass members beyond mere

7    speculation.

8    Likewise, because the B subclasses are defined by ████████████████, the

9    legal effect of this language can be decided on a classwide basis.  ████████████

10   ████████████████████████████████████████████

11   ████████████████████████████████████████████

12   ██████ Such consent is ineffective for purposes of the TCPA.  Express consent must be "clearly

13   and unmistakably stated." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir.2009)

14   (quoting Black's Law Dictionary 323 (8th ed. 2004)).  Indeed, in *Satterfield*, the Ninth Circuit ruled

15   that consent to receive calls from one business does not constitute consent to receive calls from a

16   different business.  *Id.*  In addition, the FCC has ruled that "the seller must secure a written

17   agreement **between itself and the consumer** showing that the consumer agrees to receive autodialed

18

19   resolution of common issues."); *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013)
     ("Class certification is normal in litigation under § 227, because the main questions, such as whether
20   a given [call was made using an autodialer], are common to all recipients."); *Chapman v. Wagener
     Equities, Inc.*, 2014 WL 540250, at *15 (N.D. Ill. Feb. 11, 2014) ("Predominance, in any event, is a
21   qualitative, not quantitative assessment, and the defendants have identified no basis to believe that
     this case will be different than the 'normal' § 227 class action in which the common issues arising
22   from the near-simultaneous transmission, by the same defendant, of the same unsolicited fax
     predominate over potential distinctions between a small portion of the class."); *Balbarin v. N. Star*,
23   2011 WL 211013, at *1 (N.D. Ill. Jan. 21, 2011) ("The possibility that some putative class members
     might ultimately be found to be outside the class does not preclude class certification.").

24   In any event, "'express consent' has limited bearing on the predominance inquiry because it is not an
     element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the
25   defendant bears the burden of proof."  *Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. Appx. 598, 600
     n.1 (9th Cir. 2011).  *See also Sailola v. Mun. Servs. Bureau*, 2014 WL 3389395, at *7 (D. Haw. July
26   9, 2014); *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, 2014 WL 3894348, at *4 (S.D. Cal.
     June 12, 2014); *Elkins v. Medco Health Solutions, Inc.*, 2014 WL 1663406, at *6 (E.D. Mo. Apr. 25,
27   2014); *Heinrichs v. Wells Fargo Bank, N.A.*, 2014 WL 985558, at *2-3 (N.D. Cal. Mar. 7, 2014);
     *Shupe v. JPMorgan Chase Bank of Ariz.*, 2012 WL 1344820, at *4 (D. Ariz. Mar. 14, 2012); *Ott v.
28   Mortg. Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046, 1065 (D. Or. 2014).

or prerecorded telemarketing calls from the seller." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1872 (2012) (emphasis added). Here, because the members of the B subclasses never consented to being called by SolarCity in particular and did not enter an agreement with SolarCity at all, Defendant called them without the requisite prior express consent. Accordingly, consent for the B subclasses can be determined on a classwide basis. *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1307-08 (D. Nev. 2014) ("Kristensen therefore has advanced a viable theory of class-wide proof of lack-of-consent."); *Taylor v. Universal Auto Grp. I, Inc.*, 2014 WL 6654270, at *16 (W.D. Wash. Nov. 24, 2014) ("The Court finds plaintiff has satisfied the predominance requirement with respect to his TCPA claim concerning the December 2009 "welcome" message, given that the predominant issue of prior express consent is subject to generalized proof on a classwide basis.").

## B. A Class Action Is Superior To Numerous Individual TCPA Actions

A class action is the superior method to resolve the classes' and subclasses' claims as there is a substantial risk that their claims would be forfeited absent class certification. The TCPA does not provide for statutory fee-shifting, so any potential individual judgment would likely be dwarfed by the attorneys' fees and costs incurred to obtain that judgment. As a result, without certification, class members will lose their rights by attrition, and Defendant will be able to continue its mass campaign of illegal telemarketing calls. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997)). This alone demonstrates that resolution on a class-wide basis is the superior method of adjudicating the classes' and subclasses' claims. *Mendez v. C-Two Grp., Inc.*, 2015 WL 8477487, at *8 (N.D. Cal. Dec. 10, 2015) ("The Court finds that a class action is superior to thousands of individual small-claims cases.").

In addition, even if individual lawsuits were filed, hearing essentially the same case over and over again would be patently inefficient. In contrast, class certification would avoid the need for

multiple individual actions and duplicative proceedings that would inevitably result in enormous and unnecessary expense to both the judicial system and its litigants. Class certification, on the other hand, would promote consistency of rulings and judgments, while at the same time giving all parties the benefit of finality by resolution in a single action.

### C. The Proposed Classes And Subclasses Are Ascertainable

"Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011) (internal quotation omitted). "The class definition must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member." *Id.* The Ninth Circuit only requires that the class definition describe objective criteria that allow a class member to identify himself or herself as having a right to recover or opt out based on the description, without the use of subjective factors like state of mind. *McCrary v. Elations Co., LLC*, 2014 WL 1779243, at *7-9 (C.D. Cal. Jan. 13, 2014). Accordingly, courts in this district and elsewhere routinely find that TCPA classes are ascertainable. *See, e.g.*, *Steinfeld v. Discover Fin. Servs.*, 2014 WL 1309352, at *3 (N.D. Cal. Mar. 31, 2014) (finding on a motion for final approval of class action settlement that a class defined as all persons who received calls made to their cellular phones through the use of an ATDS was "sufficiently definite and readily ascertainable"); *Knutson v. Schwan's Home Serv., Inc.*, No. 2013 WL 4774763, at *5 (S.D. Cal. Sept. 5, 2013) (finding the proposed class ascertainable because "[w]hether a customer received an autodialed or artificial/prerecorded call may be determined objectively.").

Here, the classes and subclasses are defined so that class members can be identified exclusively through the use of objective criteria in an administratively feasible manner. █████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████████████████████████████████ ████████████████████████████████████ █████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

██████████████████████████ This process would involve an automated process through which a copy of the NDNC list with dates of registration would be cross-referenced against ██████████ ███████ Ms. Verkhovskaya's process for identifying the NDNC Class has been approved in multiple cases.  *Id.* Ex. E.

Members of the Autodialer Class and the NDNC Class can then be culled down to isolate members of the subclasses.  Autodialer Subclass A and NDNC Subclass A can both be determined by reference to Defendant's own internal documents ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Members of the Autodialer Class and NDNC Class ███████████████████████ can easily be identified from Defendant's own documents and excluded from the A subclasses.  Verkhovskaya Rpt. ¶ 29.  Because leads ██████████████████ can be easily identified from Defendant's own records in an administratively feasible manner, Autodialer Subclass A and NDNC Subclass A are both ascertainable.  *Bates v. Dollar Loan Ctr., LLC*, 2014 WL 5469221, at *3 (D. Nev. Oct. 28, 2014) ("Defendants' argument that the required data retrieval and analysis will be tedious is wholly unpersuasive.  It would be far more tedious to hold trials for each alleged TCPA violation at issue here; this is precisely the reason that class actions exist."); *Saulsberry v. Meridian Fin. Servs., Inc.*, 2016 WL 3456939, at *5 (C.D. Cal. Apr. 14, 2016) ( "For the purposes of ascertainability, it is enough that the class definition describes 'a set of common characteristics sufficient to allow' a prospective plaintiff to "identify himself or herself as having a right to recover based on the description.") (quoting *Moreno v. AutoZone, Inc.*, 251 F.R.D. 417, 421 (N.D. Cal. 2008)); *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 308 (S.D. Cal. 2015) ("This Court agrees with plaintiff that the class here is ascertainable because class members likely can be determined by objective criteria based on defendant's business records and the class members will likely be able to identify whether they received prerecorded calls from defendant.").

The process for identifying members of Autodialer Subclass B and NDNC Subclass B is also easily accomplished. ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████: 

███ ████████████████████████████████████████████

███ ███████████████

███ ██████████████████████████████████████████

███ ██████████████████████████████████████████

██████████████████████████████████████████.

████████████████████████████████████ Such general and broad language is essentially meaningless and devoid of legal significance. ████████████████████████████

████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████

Once the calls and phone numbers for each class and subclass has been identified, they can easily be matched up with the identities and contact information for class members through several alternative automated processes. Ms. Verkhovskaya would be able to "coordinate a data process via one or a combination of the data processors LexisNexis, TransUnion or Microbilt, that will identify, for a given telephone number, an overview of ownership records dating back up to ten years, including: owner name, address, and carrier associated with the telephone number." *Id.* ¶¶ 23-24. Ms. Verkhovskaya could also ████████████████████████████████████████████████████████

███████████████████ or subpoena information from wireless carriers. *Id.* ¶¶ 25-28, Ex. F.

The classes and subclasses are thus all ascertainable. *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 248 (N.D. Ill. 2014) ("[I]t is fairly clear that the identities of the persons whose numbers are on plaintiffs' list of 930,000—indeed, the subscribers for those numbers at the time defendants called them—are sufficiently ascertainable."); *Booth v. Appstack, Inc.*, 2015 WL 1466247, at *4 (W.D. Wash. Mar. 30, 2015) (finding TCPA class ascertainable where plaintiffs intended to rely on telephone carrier records and reverse look-up directories to identify class members); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 2009 WL 2581324, at *4 (N.D. Ill. Aug. 20, 2009) (finding TCPA class ascertainable because "[plaintiff] may use the log and fax numbers to 'work backwards' to locate and identify the exact entities to whom the fax was sent"); *Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 624 (S.D. Cal. 2015) ("These call recipients are readily identifiable using the same reverse look-up approach that Plaintiffs plan to use to identify members of the junk fax class."); *Stern v. DoCircle, Inc.*, 2014 WL 486262, at *3 (C.D. Cal. Jan. 29, 2014) (consent goes to the merits, and is "not an argument as to whether the class definition is administratively feasible.").

## VII.    THE PROPOSED CLASSES SATISFY RULE 23(b)(2)

Alternatively, the Court should certify an injunctive relief class. Rule 23(b)(2) permits certification of an injunctive relief class where the prerequisites of Rule 23(a) are satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Certification under Rule 23(b)(2) does not require predominance, superiority, or ascertainability. *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 541 (N.D. Cal. 2012); *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 597 (N.D. Cal. 2015).

Certification under Rule 23(b)(2) is appropriate in this case. Defendant has acted on grounds generally applicable to the class by calling class members on their cellular phones with an autodialer and by calling class members who were registered on the NDNC list. Plaintiff's request for injunctive relief can be satisfied "with indivisible equitable relief that benefits all class members at once," by requiring that Defendant stop making the types of calls at issue in this case. *Ries*, 287 F.R.D. at 541. This "case exemplifies the kind of action that may be appropriate for certification

under Rule 23(b)(2)" because Plaintiff seeks relief from harassing phone calls, and stopping those calls would benefit all class members at once. *Id.*

## VIII.  CONCLUSION

For the reasons set forth above, Plaintiff respectfully request that the Court enter an order (i) certifying the classes and subclasses, (ii) appointing Plaintiff as Class Representative for the the classes and subclasses, (iii) appointing Bursor & Fisher, P.A. and Nathan & Associates, APC as Class Counsel, and (iv) granting any such further relief as this Court deems reasonable and just.

Dated:  December 14, 2016                    Respectfully submitted,

**BURSOR & FISHER, P.A.**


By:  /s/ *Joshua D. Arisohn*
        Joshua D. Arisohn

Scott A. Bursor (State Bar No. 276006)
Joshua D. Arisohn (*Admitted Pro Hac Vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com
            jarisohn@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan, Esq. (State Bar No. 208436)
600 W. Broadway, Suite 700
San Diego, California 92101
Tel: (619) 272-7014
Fax: (619) 330-1819
Email: rnathan@nathanlawpractice.com

*Attorneys for Plaintiff*