1  RANDALL S. LUSKEY (STATE BAR NO. 240915)
   rluskey@orrick.com
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
3  405 Howard Street
   San Francisco, CA  94105-2669
4  Telephone:     +1 415 773 5700
   Facsimile:      +1 415 773 5759
5
6  ELYSE D. ECHTMAN (admitted *pro hac vice*)
   eechtman@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
7  51 West 52nd Street
   New York, New York 10019-6142
8  Telephone:     +1 212 506 5000
   Facsimile:      +1 212 506 5151
9
10 CHRISTINA GUEROLA SARCHIO (admitted *pro hac vice*)
   csarchio@orrick.com
   JONATHAN A. DIRENFELD (admitted *pro hac vice*)
11 jdirenfeld@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
12 1152 15th Street, N.W.
   Washington, D.C. 20005-1706
13 Telephone:     +1 202 339 8400
   Facsimile:      +1 202 339 8500
14
   Attorneys for Defendant
15 SolarCity Corp.

16              UNITED STATES DISTRICT COURT

17            NORTHERN DISTRICT OF CALIFORNIA

18               SAN FRANCISCO DIVISION

19
   JOSE ALBINO LUCERO JR., on Behalf of      Case No. 3:15-cv-05107-RS
20 Himself and all Others Similarly Situated,
                                              **DEFENDANT SOLARCITY CORP.'S**
21                     Plaintiffs,            **NOTICE OF MOTION AND MOTION**
                                              **TO EXCLUDE THE EXPERT REPORT**
22         v.                                 **AND TESTIMONY OF RANDALL A.**
                                              **SNYDER**
23 SOLARCITY CORP.,
                                              Hearing Date:  March 9, 2017
24                     Defendant.             Time: 1:30 p.m.
                                              Judge: Hon. Richard G. Seeborg
25                                            Courtroom: 3, 17th Floor

26

27

28

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:  PLEASE TAKE NOTICE that the following motion to exclude the expert report and testimony of Randall A. Snyder will be heard on March 9, 2017, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 3, 17th Floor of this Court, located at 450 Golden Gate Avenue, San Francisco, California, the Honorable Richard G. Seeborg presiding.

Defendant SolarCity Corp. moves this Court to exclude Snyder's report and testimony on the ground that Snyder's opinions are unreliable and will not assist the court in assessing Plaintiff's motion for class certification.

The motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the materials attached to the Declaration of Paul D. Meyer (cited hereinafter as "Ex. A-H") that are being filed herewith; the record in this matter; and such other and further papers, evidence, and argument as may be submitted in connection with this motion.

Dated: January 26, 2017

Orrick, Herrington & Sutcliffe LLP

By: */s/ Randall S. Luskey*
Randall S. Luskey

Counsel for SOLARCITY CORP.

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND FACTS ..................................................................................... 3

      A.    SolarCity's Distinct Phone Systems ......................................................... 3

      B.    Plaintiff's Proposed Autodialer Class ...................................................... 4

      C.    Snyder's Report......................................................................................... 5

            1.    SolarCity Phone Manuals............................................................... 6

            2.    SolarCity Witness Testimony ........................................................ 6

            3.    Generic Online Research................................................................ 7

      D.    Snyder's Deposition Testimony................................................................ 9

            1.    Snyder's Lack of Experience ......................................................... 9

            2.    Snyder's Concession That an Individualized Phone System
                  Analysis Is Necessary .................................................................... 9

            3.    Snyder's Definition of "Human Intervention" ........................... 10

            4.    Snyder's Personal Interest in TCPA Cases ................................. 12

III.  LEGAL STANDARD.......................................................................................... 13

IV.   ARGUMENT ....................................................................................................... 14

      A.    The Court Should Exclude Snyder's Declaration and Testimony Because
            They Are Fundamentally Unreliable.......................................................... 14

            1.    Snyder Failed to Analyze the Phone Systems That SolarCity Used,
                  or Even Systems That Were Contemporaneous to Those SolarCity
                  Used. ............................................................................................ 14

                  a.    Other courts have rejected Snyder's expert opinions on
                        similar grounds................................................................... 18

            2.    Snyder's Opinions Improperly Rely on Legal Conclusions and
                  Dubious Reasoning. ...................................................................... 19

      B.    Snyder's Bias Provides an Independent Ground to Exclude His Report and
            Testimony as Unreliable. ........................................................................... 21

V.    CONCLUSION ................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA Int'l v. FCC,*
   No. 15-1211 (D.C. Cir. argued October 19, 2016) ...................................................20

*Crow Tribe of Indians v. Racicot,*
   87 F.3d 1039, 1045 (9th Cir. 1996)........................................................................19

*Daubert v. Merrell Dow Pharm.,*
   509 U.S. 579, 595 (1993)............................................................................13, 17

*Daubert v. Merrell Dow Pharm., Inc.,*
   43 F.3d 1311, 1318 (9th Cir. 1995)........................................................................13

*Dominguez v. Yahoo!, Inc.,*
   8 F. Supp. 3d 637, 643 (E.D. Pa. 2014) .............................................................12, 19

*Dominguez v. Yahoo!, Inc.,*
   629 F. App'x 369 (3d Cir. 2015) ..........................................................................19

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970, 982 (9th Cir. 2011).................................................................13, 14, 17, 21

*Enyart v. Nat'l Conference of Bar Examiners, Inc.,*
   823 F. Supp. 2d 995, 1008 (N.D. Cal. 2011) ............................................................21

*Gen. Elec. Co. v. Joiner,*
   522 U.S. 136, 147 (1997) ................................................................................18

*In re Ford Tailgate Litig.,*
   No. 11-CV-02953-RS, 2015 WL 7571772, (N.D. Cal. Nov. 25, 2015) .................................18

*In re Montage Tech. Grp. Ltd. Sec. Litig.,*
   No. 14-CV-00722-SI, 2016 WL 1598666, (N.D. Cal. Apr. 21, 2016) .............................13, 14

*Johnson v. Yahoo!, Inc.,*
   No. 14 CV 2028, 2014 WL 7005102, (N.D. Ill. Dec. 11, 2014)...........................................20

*Kamakahi v. Am. Soc'y for Reprod. Med.,*
   305 F.R.D. 164, 176 (N.D. Cal. 2015) .....................................................................17

*Kamar v. Radio Shack Corp.,*
   254 F.R.D. 387, 399 (C.D. Cal. 2008) ......................................................................4

*Kumho Tire Co. v. Carmichael,*
   526 U.S. 137, 145, 147-49 (1999)..................................................................13, 14, 21

DEFENDANT  SOLARCITY CORP.'S MOTION TO
EXCLUDE SNYDER (Case No. 3:15-cv-05107-RS)

*Legg v. Voice Media Grp., Inc.,*
    No. 13-62044-CIV-COHN, 2014 WL 1767097 (S.D. Fla. May 2, 2014) .........................18, 20

*Maffei v. N. Ins. Co. of New York,*
    12 F.3d 892, 898-99 (9th Cir. 1993) .......................................................................19

*Marks v. Crunch San Diego, LLC,*
    No. 14-56834 (9th Cir. filed November 21, 2014) ..................................................20

*Obrey v. Johnson,*
    400 F.3d 691, 696 (9th Cir. 2005)..........................................................................17

*Pecover v. Elec. Arts Inc.,*
    No. C 08-2820 VRW, 2010 WL 8742757, (N.D. Cal. Dec. 21, 2010).....................14

*United States v. Scholl,*
    166 F.3d 964, 973 (9th Cir. 1999)..........................................................................19

**Statutes**

28 U.S.C. § 702........................................................................................... *passim*

47 U.S.C. § 227 .................................................................................................5

Fed. R. Civ. P. 23(a)(b) .....................................................................................4

**Other Authorities**

David E. Bernstein, *The Misbegotten Judicial Resistance to the Daubert Revolution*,
    89 Notre Dame L. Rev. 27, 69 (2013) ....................................................................21

Learned Hand, *Historical and Practical Considerations Regarding Expert Testimony*,
    15 Harv. L. Rev. 40, 53 (1901) ..............................................................................21

In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of
    1991,
    30 F.C.C. Rcd. 7961 (July 10, 2015) .....................................................................15

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.** <u>**INTRODUCTION**</u>

Plaintiff's reliance on the expert report of Randall Snyder to support his motion for class certification is ill-founded and misguided. Plaintiff contends that Snyder's report helps establish that common questions unite the proposed autodialer class, and that those questions predominate over individualized inquiries, ███████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████ But Snyder's report establishes no such thing. It is fundamentally unreliable.

Snyder's opinion is unreliable because he bases his opinion *not* on the products that Solar-City's sales team actually used, but on different industry products offered by the same phone companies. Remarkably, Snyder claims he did so because what he was "essentially . . . asked to do" was determine if the telephone system providers generally offered "a product that has the capabilities of what an automatic telephone dialing system is." Declaration of Christina Guerola Sarchio in Support of Defendant SolarCity Corp.'s Opposition to Motion for Class Certification, Ex. H Deposition of Randall A. Snyder ("Snyder Dep.") 212:14-212:20. ███████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████.

The shortcomings in Snyder's analysis are even more apparent in light of what else he failed to do. ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Even with those failings, Snyder's report and testimony might nonetheless be admissible if he had extensive previous experience working with the systems he opines about and could therefore reliably draw from his background knowledge. But Snyder possesses no previous experience working directly with these particular systems. He has never physically inspected the systems, or similar systems. And

- 1 -

he has not spoken or asked to speak with anybody who has such experience.

Given these deficiencies, it is unsurprising that Snyder's report is barren of facts that would help the Court decide whether each of SolarCity's phone systems was, in fact, an ATDS, or whether common questions underlie that determination. Snyder did little more than copy-paste-and-edit the first 13 pages of his report from previous reports he has written about different telephone systems;

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ .

Snyder's report is unreliable for the additional reason that it is grounded in unsupported legal conclusions. Instead of factually describing the specific capabilities of the phone systems, Snyder attempts to answer the ultimate legal question of whether each system constitutes an ATDS.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ . But in so concluding, Snyder adopts a definition of "human intervention" and "capacity" that stretches the imagination and is untethered from legal or professional authority.

Finally, Snyder's personal biases further undermine his report's reliability. In 2014, Snyder's wife served as a lead plaintiff in a TCPA lawsuit that her husband helped to initiate with the help of a law firm that he had worked for as a plaintiffs' expert. Indeed, at the time of his wife's suit, Snyder was working as a plaintiffs' expert in separate TCPA litigation, again offering his broad interpretation of what constitutes an ATDS. Snyder has also admitted that he has a personal interest in TCPA cases because he wants to end what he calls "annoying and harassing robocalls."

And Snyder has worked hard to reach that goal. One hundred percent of his work-related income comes from serving as a litigation expert, to a tune of more than $300,000 last year alone. He was hired by plaintiffs in 78 of the 79 TCPA cases he has worked on. Such evidence of bias goes beyond merely undermining Snyder's credibility and goes directly to the reliability of his opinions and underlying analytical approach.

These multiple deficiencies are glaring and fatal to the admissibility of Snyder's report and testimony. This Court should exclude the report and testimony as unreliable under Federal Rule of Evidence 702 and *Daubert*, insofar as Snyder's opinions relate to the capabilities of the phone systems that SolarCity used.[1]

## II.    BACKGROUND FACTS

### A.    SolarCity's Distinct Phone Systems







**B.  Plaintiff's Proposed Autodialer Class**

Plaintiff asserts claims on behalf of a putative autodialer class that consists of two subclasses of individuals who allegedly received calls "made through the use of an automated telephone dialing system" during the putative class period. Dkt. 93.04 at 4-5.

Plaintiff argues that class-wide common questions of law and fact exist among class members to satisfy Federal Rule of Civil Procedure 23(a), and that such questions predominate pursuant to Rule 23(b)(3).  Specifically, Plaintiff contends that the putative class satisfies Rule 23(a)'s commonality requirement because all claims are rooted in the fact that SolarCity "plac[ed] calls utilizing automated telephone dialing systems without the recipients' prior express consent[.]"  Dkt. 93.04 at 9.  And under Rule 23(b)(3), Plaintiff argues that such common questions predominate because SolarCity "placed calls using an automated telephone dialing system," Dkt. 93.04 at 13, and liabil-

DEFENDANT  SOLARCITY CORP.'S MOTION TO
EXCLUDE SNYDER (Case No. 3:15-cv-05107-RS)

ity therefore turns on a "uniform policy that [was] uniformly implemented," Dkt. 93.04 at 13 (quoting *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008)).

### C.     Snyder's Report

Plaintiff relies on Snyder to establish that each class member received a call from an ATDS.[2]

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████.

To do so, Snyder's report begins with 13 pages of background largely copied-pasted-and-edited from his previous expert reports in other litigation. Ex. A (Snyder Rpt.) ¶¶ 1-35; Snyder Dep. 61:3-62:19. Those pages describe Snyder's understanding of the TCPA—mostly based on his understanding of FCC legal guidance—and his general knowledge of how modern telephones work. Ex. A (Snyder Rpt.) ¶¶ 1-35; Snyder Dep. 61:3-62:19. ████████████████████████████

███████████████████████████████████████████████████. Ex. A (Snyder Rpt.) ¶¶ 36-43.

████████████████████████████████████████████████████

██████████

███████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████

████████████████████████████████████████████████

_____

[2] The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

. Ex. A (Snyder Rpt.) ¶¶ 73-75.

In reaching his conclusion, Snyder testified he reviewed information from three sources. *See* Ex. A (Snyder Rpt.) ¶¶ 3, 38, 39, 41, 43.

2. **SolarCity Witness Testimony**

Second, Snyder relied on the depositions of four SolarCity company officials. Ex. A

(Snyder Rpt.) ¶ 3. ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████. Raymond Dep. 191:7-11.

**3.** **Generic Online Research**

████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Notably, the version of the script that Snyder submitted with his report omitted that date. Snyder Dep. 140:11-17. Snyder apologized in his deposition for the "oversight." Snyder Dep. 140:16-17.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████.

### D. Snyder's Deposition Testimony

#### 1. Snyder's Lack of Experience

In his deposition, Snyder confirmed that he has no personal or professional experience with any of the phone systems at issue in this case, apart from some possible limited exposure to them in his previous litigation work. Snyder Dep. 51:4-19, 155:4-156:2, 215:25-217:8, 236:16-238:4. Specifically, Snyder testified that he has never attended or taught any courses regarding the systems, has never written about them professionally, has never worked directly with them, and has never interviewed anybody who has such experience. Snyder Dep. 51:4-19, 155:4-156:2, 215:25-217:8, 236:16-238:4.

#### 2. Snyder's Concession That an Individualized Phone System Analysis Is Necessary

Regarding how to analyze whether a phone system has the capabilities to make it an ATDS, Snyder agreed that an analysis must be focused on the individualized technological issues inherent in each system. *See* Snyder Dep. 239:5-24. For instance, to determine whether a system can dial numbers without human intervention, Snyder testified that he

> would have to know the exact protocols, precisely what occurred, how numbers were stored, how they were presented, the actual topology and architecture of the system, how the number was passed into the centralized dialing system, how the centralized dialing system signaled out the digits. There is quite a bit of information that's required in order for me to say this machine has its capacity and it also was used in a certain way.

Snyder Dep. 67:17-68:1.  Snyder elaborated that a typical PBX system that requires an agent to manually dial or click-to-dial a number may or may not be an ATDS, depending on other criteria. Snyder Dep. 72:16-73:16.



**3.** <u>**Snyder's Definition of "Human Intervention"**</u>



#### 4. Snyder's Personal Interest in TCPA Cases

Snyder's deposition testimony also described his personal interest in serving as a plaintiff's expert witness in TCPA litigation. Snyder testified he has been retained by plaintiffs in 78 of the 79 TCPA cases he has been involved in as an expert. Snyder Dep. 19:15-21. Yet in letters to the FCC advocating for a strict reading of the TCPA, he has stated that he has been retained by both plaintiffs and defendants, without any qualification of that statement. Ex. D (Snyder FCC letter) 1. Further, Snyder testified in his deposition that 100 percent of his work-related income since 2014 has come from serving as a litigation expert. Snyder Dep. 49:7-50:2. In 2016, that income totaled approximately $300,000. Snyder Dep. 48:20-22.

Snyder also confirmed that his wife was a lead plaintiff in a TCPA lawsuit that he helped initiate in 2014 with the help of a law firm that he had worked for extensively as an expert. Snyder Dep. 40:17-44:4; *see also* Ex. E (Complaint, *Snyder v. IvisionMobile, Inc.*, No. 13-cv-05946 (N.D. Cal. filed Apr. 15, 2014)). The lawsuit concerned a few unsolicited commercial text messages that the Snyders' minor son received after activating a new phone. Snyder Dep. 40:23-41:17. At the time of the suit, Snyder was working as a plaintiffs' expert in separate TCPA litigation also concerning text messaging, offering his broad interpretation of what constitutes an ATDS. *Compare* Ex. F (Docket, *Snyder v. IvisionMobile, Inc.*) with Ex. G (Snyder Dep. in *Dominguez v. Yahoo!*

*Inc.*, 8 F. Supp. 3d 637 (E.D. Pa. 2014)). The suit brought by Snyder's wife settled in November 2014, and Snyder believes that his wife received monetary compensation through the settlement. Snyder Dep. 45:15-18. Further confirming his personal interest in TCPA litigation, Snyder testified that he enjoys being a plaintiffs' expert because he wants to end what he calls "annoying and har-assing robocalls." Snyder Dep. 40:4-5.

### III.  LEGAL STANDARD

Federal Rule of Evidence 702 permits expert testimony where "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

In applying Rule 702, a district court "must act as a 'gatekeeper'" by "making a preliminary determination that the expert's testimony is reliable." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145, 147-49 (1999)). As the Supreme Court established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, a district court must focus on the reliability of an expert's "principles and methodology, not on the conclusions that they generate." 509 U.S. 579, 595 (1993); *see also Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995) ("[T]he test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology."). Although *Daubert* itself concerned scientific testimony, the requirements of reliability that it described apply to all expert testimony. *Kumho Tire*, 526 U.S. at 141; *see also In re Ford Tailgate Litig.*, No. 11-CV-02953, 2015 WL 7571772, at *5 (N.D. Cal. Nov. 25, 2015), appeal dismissed (Feb. 16, 2016) (Seeborg, J.).

The requirement that expert opinions be reliable, articulated by cases like *Daubert* and *Kumho Tires*, applies with equal force in the class certification context, when the expert's opinion is important to the certification determination. *See Ellis*, 657 F.3d at 982 (observing that "the dis-trict court correctly applied" *Daubert*'s evidentiary standard when considering motions to strike expert testimony in class certification proceedings); *In re Montage Tech. Grp. Ltd. Sec. Litig.*, No.

14-CV-00722, 2016 WL 1598666, at *8–9 (N.D. Cal. Apr. 21, 2016) (applying *Daubert* to expert testimony at the class certification stage). "Given that class actions consume vast judicial resources and that many defendants face substantial settlement pressures as a result of class certification . . . it hardly seems appropriate to allow flimsy expert opinions to buttress plaintiffs' FRCP 23 arguments." *Pecover v. Elec. Arts Inc.*, No. C 08-2820, 2010 WL 8742757, at *3 (N.D. Cal. Dec. 21, 2010).

The plaintiff bears the burden to establish the admissibility of expert testimony by a preponderance of the evidence. *See* Fed. R. Evid. 702, Advisory Committee Notes; *In re Montage Tech.*, 2016 WL 1598666, at *8. In determining whether a plaintiff has met that burden, "[a] trial court has broad latitude not only in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." *Ellis*, 657 F.3d at 982 (citing *Kumho Tire*, 526 U.S. at 152). In some cases, for instance, the scientific basis for an expert's conclusions may be most relevant to the question of reliability. *See Kumho Tire*, 526 U.S. at 150. "In other cases, the relevant reliability concerns may focus upon personal knowledge or experience." *Id.*

At bottom, a district court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

## IV.   ARGUMENT

### A.   The Court Should Exclude Snyder's Declaration and Testimony Because They Are Fundamentally Unreliable.

#### 1.   Snyder Failed to Analyze the Phone Systems That SolarCity Used, or Even Systems That Were Contemporaneous to Those SolarCity Used.

For an expert to provide opinions about the operation of a phone system, one would expect the expert's analysis to meet some minimum, common sense, threshold requirements. First, the expert should physically examine the phone system, or have extensive experience working directly with it. Second, he should describe the features of the specific product used, such as how it makes phone calls and stores phone numbers. Third, in the event that circumstances prevent the expert from physically inspecting the phone system, he should conduct a thorough review of the technical literature regarding the product or model at issue, and, if he has questions, he should speak with

individuals who have experience working with that product. Fourth, in the event that a specific product or model cannot be ascertained, the expert should analyze the products on the market at the relevant time of use, and provide some comparative assessment of capabilities.

Those analytical basics make particular sense in light of the FCC's 2015 TCPA Omnibus Order, which emphasizes that the particulars of the equipment used are critical to assessing whether that equipment qualifies as an ATDS. *See* In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 F.C.C. Rcd. 7961 (July 10, 2015) ("2015 FCC Order"). For instance, the 2015 FCC Order describes how not every piece of modern dialing equipment has the capacity to be an autodialer, and "there must be more than a theoretical potential that the equipment could be modified to satisfy the 'autodialer' definition." 2015 FCC Order ¶ 18. Similarly, the 2015 FCC Order stressed that determining whether a phone system can dial numbers without human intervention is a highly fact-specific inquiry: "How the human intervention element applies to a particular piece of equipment is specific to each individual piece of equipment, based on how the equipment functions and depends on human intervention, and is therefore a case-by-case determination." *Id.* ¶ 17. Indeed, as Snyder himself testified, determining whether a phone system can dial without human intervention requires an understanding of the "actual topology and architecture of the system, how the number was passed into the centralized dialing system, [and] how the centralized dialing system signaled out the digits," among other factors. Snyder Dep. 67:17-68:1; *see also* Horak Decl. ¶ 66

Yet Snyder performed none of the elementary analytical steps described above, even though his report indicates that he did.



---

[4] It is also notable that Plaintiff's counsel chose not to depose a technical representative from SolarCity. Nor has Plaintiff's counsel indicated that SolarCity's discovery responses were insufficient or incomplete.

Those statements alone should disqualify Snyder's report as based on unreliable methods, particularly insofar as Plaintiff seeks to use Snyder's opinions to establish at the certification stage that individuals in the autodialer class each received calls "made through the use of an automated telephone dialing system." Dkt. 93.04 at 4-5; *see Ellis*, 657 F.3d at 982. By way of analogy, imagine an automotive products liability case where a key question at the certification stage is whether a particular Ford car had the capacity to regulate its speed without human intervention. The relevant inquiry would not be whether Ford makes certain models of cars with cruise control, but whether the particular model in question had cruise control installed. The same logic applies here. *See generally Obrey v. Johnson*, 400 F.3d 691, 696 (9th Cir. 2005) (observing that evidence may be excluded as unreliable if it "suffer[s] from serious methodological flaws"); *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 176 (N.D. Cal. 2015) (citing *Obrey* in the class cer- tification context).

At bottom, a court should exclude evidence when it finds "that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Such is plainly the case here, given the gaping empirical gulf between Snyder's conclusions and the information that he bases those conclusions on. This court recently considered and excluded similarly deficient expert testimony in *In re Ford Tailgate Litigation*, No. 11-CV-02953, 2015 WL 7571772, at *5-9 (N.D. Cal. Nov. 25, 2015), appeal dismissed (Feb. 16, 2016) (Seeborg, J.). The court rejected the experts' opinions, in part, because of the unreliability of the experts' methods, the lack of sufficiently underlying data, and the failure of one expert to "back up his opinions with reference to any meaningful testing, literature, or comparisons." *Id.* at *7-9. Similarly, here, Snyder's opinions are fundamentally unreliable for many of the same general reasons: a lack of sufficient data, questionable methodology, and the failure to adequately ground his opinions in "testing, literature, or comparisons."

### a. Other courts have rejected Snyder's expert opinions on similar grounds.

Notably, Snyder has done this before, although not to this extent. In 2014, the Southern District of Florida excluded his expert testimony about whether a company used a phone system that constituted an ATDS when it sent text messages. *Legg v. Voice Media Grp., Inc.*, No. 13-62044-CIV, 2014 WL 1767097 (S.D. Fla. May 2, 2014). The court found that Snyder had failed to inspect any of the relevant equipment and instead relied on a handbook produced by the vendor that the company used to send its text messages. *Id.* at *5. The court concluded that "Snyder does

not know whether [the defendant company] actually used the systems discussed in the handbook, or in the manner provided in the handbook. Indeed, Snyder cannot even say whether [the vendor's] own equipment conforms to the specifications discussed in its handbook." *Id.* Snyder's opinion therefore amounted to "speculation," and the court excluded it. *Id.* Similarly, the Eastern District of Pennsylvania has deemed Snyder's testimony "entirely unreliable" on the question of whether a given phone system could randomly or sequentially generate telephone numbers. *Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 3d 637, 643 (E.D. Pa. 2014), vacated and remanded sub nom. *Dominguez v. Yahoo!, Inc.*, 629 F. App'x 369 (3d Cir. 2015). The Court should reach the same conclusion here.

### 2. Snyder's Opinions Improperly Rely on Legal Conclusions and Dubious Reasoning.

Even if Snyder's analysis accurately identified the products SolarCity used, the nest of inconsistencies and legal conclusions it is built upon would nevertheless render his opinion fundamentally unreliable. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

It is the job of experts to "interpret and analyze factual evidence. They do not testify about the law because the judge's special legal knowledge is presumed to be sufficient." *United States v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999) (citation omitted); *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law."). Courts may therefore reject an expert witness's opinions when the opinions are little more than legal conclusions. *See, e.g.*, *Maffei v. N. Ins. Co. of New York*, 12 F.3d 892, 898-99 (9th Cir. 1993) (rejecting an expert declaration as conclusory when it purported to answer what was ultimately a legal question).

In this case, Snyder's opinions are inextricably intertwined with his personal understanding

of the legal terms embedded in the definition of an ATDS. ████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████

Snyder's opinions regarding capacity are similarly suspect. As Snyder testified in his deposition, it had "been explained" to him that he should use an expansive definition of capacity based on recent FCC regulations. Snyder Dep. 241:24-242:10. That definition, however, is far from uncontroversial and is currently being litigated in the Ninth Circuit and D.C. Circuit, among others. *See Marks v. Crunch San Diego, LLC*, No. 14-56834 (9th Cir.); *ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir.). ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

Again, this is not the first time that Snyder has taken that approach. In *Legg*, for instance, the court noted that Snyder intended to testify that the phone systems at issue met "the legal definition of an automatic telephone dialing system." 2014 WL 1767097, at *4. The court refused to allow such testimony because implicit within it was "Snyder's conclusion as to the legal definition of an automatic dialing system"—a conclusion that impermissibly encroached "on the responsibilities of the judge and jury." *Id.* Similarly, in *Johnson v. Yahoo!, Inc.*, No. 14 CV 2028, 2014 WL 7005102, at *5 (N.D. Ill. Dec. 11, 2014), the district court refused to consider Snyder's ultimate

legal conclusion that a phone system's storage of numbers met the relevant definitions under the TCPA. This Court should reach the same conclusion.[6]

### B.  Snyder's Bias Provides an Independent Ground to Exclude His Report and Testimony as Unreliable.

Finally, Snyder's deposition testimony reveals that he has a significant personal bias that not only undermines the credibility of his opinions, but also supports their inadmissibility under Rule 702 and *Daubert*. The very nature of adversarial proceedings, of course, invites partiality from paid experts on each side. More than a century ago, Judge Learned Hand described "the natural bias of one called in such matters to represent a single side and liberally paid to defend it." Hand, *Historical and Practical Considerations Regarding Expert Testimony,* 15 Harv. L. Rev. 40, 53 (1901). Courts and commentators have continued to express those sentiments in an era when parties often present dueling experts with entirely opposing views of an issue. *See* David E. Bernstein, *The Misbegotten Judicial Resistance to the Daubert Revolution*, 89 Notre Dame L. Rev. 27, 69 (2013).

In the usual case, at least at the trial stage, courts have recognized that such bias goes to questions of expert credibility, not admissibility. It is the stuff of impeachment during cross-examination. *See United States v. Abonce-Barrera*, 257 F.3d 959, 965 (9th Cir. 2001) (stating, in the criminal trial context, that "[g]enerally evidence of bias goes toward the credibility of a witness, not his competency to testify, and credibility is an issue for the jury"); *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 823 F. Supp. 2d 995, 1008 (N.D. Cal. 2011) ("As a general rule, bias is not a permissible reason for the exclusion of expert testimony.").

Yet *Daubert* and its progeny make clear that district courts enjoy wide latitude "in deciding how to determine" the reliability of expert testimony. *Ellis*, 657 F.3d at 982. What matters are the

---

[6] Snyder adamantly argued in his deposition testimony that the descriptions of equipment he offered "are functions that are within automatic-dialing systems. They are not descriptions that constitute an ATDS under the law." Snyder Dep. 86:15-19.

1   "particular circumstances of the particular case." *Kumho Tire*, 526 U.S. at 150. Although courts

2   have not directly addressed the question, evidence of significant personal bias should be a factor in

3   a reliability analysis when there is evidence that an expert has a personal agenda that goes well

4   beyond merely trying to curry favor with the side that compensates it.

5   This is the case here. In 2014, Snyder helped initiate a TCPA lawsuit on behalf of his wife

6   and son, and his family received a direct financial benefit from that litigation through a settlement.

7   *See* Ex. E (Complaint, *Snyder v. IvisionMobile, Inc.*, No. 13-cv-05946 (N.D. Cal. filed Apr. 15,

8   2014). At the same time, Snyder was testifying as an expert for plaintiffs in separate litigation.

9   *Compare* Ex. F (Docket, *Snyder v. IvisionMobile, Inc.*) with Ex. G (Snyder Dep. in *Dominguez v.*

10  *Yahoo*). Further, Snyder has testified in this litigation and previous litigation that he enjoys working

11  as a plaintiffs' side TCPA expert because he wants to end "annoying and harassing robocalls."

12  Snyder Dep. 40:4-5; *see also* Ex. G (Snyder Dep. in *Dominguez v. Yahoo*) 52:15-20 (where Snyder

13  states that "[o]ne of the reasons I like doing this expert witness work is because I want these mes-

14  sages to stop. They're annoying and harassing and they cost money. And not everyone looks like

15  you can pursue an action against it [sic]. They're just harassing spam.").

16  Snyder has worked hard to achieve that goal. In 78 of the 79 TCPA cases he has been

17  involved in, Snyder's work has been on behalf of plaintiffs. All of his work income since 2014 has

18  come from serving as an expert witness—to a tune of $300,000 last year alone.

19  Such evidence of significant personal bias, at least when taken in concert with the flaws in

20  Snyder's analytical approach, supports the conclusion that his opinions should be excluded. Those

21  opinions are grounded in personal interest and speculation, rather than experience and knowledge.

22  //

23  //

24  //

25  //

26  //

27  //

28  //

V.   **CONCLUSION**

Accordingly, this court should exclude Snyder's opinions ███████████████

███████████████████████████

Dated: January 26, 2016                    Respectfully submitted,

                                           Orrick, Herrington & Sutcliffe LLP

                                           By: */s/ Randall S. Luskey*
                                           Randall S. Luskey

                                           Counsel for SOLARCITY CORP.