**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
Joshua D. Arisohn (*Admitted Pro Hac Vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com
jarisohn@bursor.com

[Additional counsel on signature page]

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ALBINO LUCERO JR., on Behalf of Himself and all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SOLARCITY CORP.,<br><br>Defendant. | Case No. 3:15-cv-05107-RS<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCLUDE THE DECLARATION, EXPERT REPORT AND TESTIMONY OF RAY HORAK**<br><br>Date: April 6, 2017<br>Time: 1:30 PM<br>Courtroom 3, 17th Floor<br><br>Hon. Richard Seeborg |

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 6, 2017 at 1:30 p.m., or as soon thereafter as the matter may be heard by the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 3, 17th Floor, in the courtroom of the Honorable Richard Seeborg, Plaintiff will and hereby does move the Court to exclude the declaration, report and testimony of Ray Horak on the ground that Horak's opinions are irrelevant, unreliable and will not assist the court in assessing Plaintiff's motion for class certification.

This motion is based on the attached Memorandum Of Points And Authorities, the accompanying Declaration of Joshua D. Arisohn and any other written and oral arguments that may be presented to the Court.

## CIVIL RULE 7-4(a)(3) STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should exclude the declaration, report and testimony of Ray Horak.

Dated: February 23, 2017

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ *Joshua D. Arisohn*
      Joshua D. Arisohn

Scott A. Bursor (State Bar No. 276006)
Joshua D. Arisohn (*Admitted Pro Hac Vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com
       jarisohn@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan, Esq. (State Bar No. 208436)
600 W. Broadway, Suite 700
San Diego, California 92101
Tel: (619) 272-7014
Fax: (619) 330-1819
Email: rnathan@nathanlawpractice.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

|      |                                                                                           | PAGE(S) |
|------|-------------------------------------------------------------------------------------------|---------|
| I.   | INTRODUCTION .................................................................................................. | 1 |
| II.  | HORAK'S OPINIONS ARE IRRELEVANT ................................................................ | 1 |
|      | A. Horak's Opinions Are Divorced From The Governing Standard ............................. | 1 |
|      | B. Horak Makes Legal Conclusions ............................................................................ | 4 |
| III. | HORAK'S METHODOLOGY IS UNRELIABLE ........................................................... | 7 |
|      | A. Horak Ignored Evidence Contrary To His Opinions ................................................ | 7 |
|      | B. Horak Is Frequently Criticized By Courts For His Unreliable Methodology ........... | 9 |
| IV.  | HORAK IN UNQUALIFIED .................................................................................... | 9 |
| V.   | CONCLUSION ...................................................................................................... | 10 |

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Abarca v. Franklin Cty. Water Dist.*,
   761 F. Supp. 2d 1007 (E.D. Cal. 2011) ................................................................. 7, 8

*Am. Alternative Ins. Corp. v. Coyne*,
   2016 WL 801374 (N.D. Cal. Mar. 1, 2016) ................................................................ 6

*Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*,
   2013 WL 3654550 (W.D. Mich. July 12, 2013) ......................................................... 9

*Bammerlin v. Navistar Intern. Transp. Corp.*,
   30 F.3d 898 (7th Cir. 1994) ......................................................................................... 6

*CE Design Ltd. v. King Architectural Metals, Inc.*,
   271 F.R.D. 595 (N.D. Ill. 2010) ................................................................................... 9

*Clayton v. Synchrony Bank*,
   2016 WL 7106018 (E.D. Cal. Nov. 7, 2016) .............................................................. 2

*Compressor Eng'g Corp. v. Thomas*,
   2016 WL 7473448 (E.D. Mich. Dec. 29, 2016) ......................................................... 9

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ..................................................................................................... 4

*Fontes v. Time Warner Cable Inc.*,
   2015 WL 9272790 (C.D. Cal. Dec. 17, 2015) ............................................................ 3

*Hangarter v. Provident Life & Acc. Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ....................................................................................... 6

*In re Ford Tailgate Litig.*,
   2015 WL 7571772 (N.D. Cal. Nov. 25, 2015) ............................................................ 6

*In re Genetically Modified Rice Litig.*,
   2010 WL 5070718 (E.D. Mo. Dec. 6, 2010) ............................................................... 6

*In the Matter of Rules & Regs. Implementing*,
   18 F.C.C.R. 14014 (July 3, 2003) ........................................................................... 2, 5

*In the Matter of Rules & Regs. Implementing*,
   3 F.C.C. Rcd. 559 (Jan. 4, 2008) ................................................................................. 2

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
   30 F.C.C. Rcd. 7961 (July 10, 2015) ................................................................... 2, 5, 7

*Interwoven, Inc. v. Vertical Computer Sys.*,
   2013 WL 3786633 (N.D. Cal. July 18, 2013) ............................................................. 4

*Jackson Five Star Catering, Inc. v. Beason*,
   2013 WL 5966340 (E.D. Mich. Nov. 8, 2013) ........................................................... 9

| | |
|---|---|
| *Lathrop v. Uber Techs., Inc.*, 2016 WL 97511 (N.D. Cal. Jan. 8, 2016) | 3 |
| *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288 (S.D. Cal. 2014) | 6 |
| *McHugh v. United States Auto. Ass'n*, 164 F.3d 451 (9th Cir. 1999) | 6 |
| *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867 (N.D. Cal. 2016) | 10 |
| *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) | 2 |
| *Savanna Grp., Inc. v. Trynex, Inc.*, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013) | 9 |
| *Small v. GE Capital, Inc.*, 2016 WL 4502460 (C.D. Cal. June 9, 2016) | 3 |
| *United States v. Sandoval–Mendoza*, 472 F.3d 645 (9th Cir. 2006) | 4 |

**STATUTES**

| | |
|---|---|
| 47 U.S.C. § 227 | 1 |

**RULES**

| | |
|---|---|
| Federal Rule of Evidence 702 | 9 |
| Federal Rule of Evidence 702(a) | 9 |
| Federal Rule of Evidence 702(b) | 7 |

## I. INTRODUCTION

A central issue in this case is whether the telephone systems used by Defendant SolarCity Corp. ("Defendant" or "SolarCity") constitute automatic telephone dialing systems ("ATDS" or "autodialer") for purposes of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA"). The Federal Communications Commission ("FCC") has ruled that whether equipment constitutes an ATDS depends on its potential capacity, not how it was used or configured at the time that calls were placed. And yet, Defendant's expert witness Ray Horak offers an opinion on precisely what the FCC has said not to consider. He opines only on the capacity of Defendant's telephone systems at the time of use. For this reason alone, Mr. Horak's opinions should be excluded as irrelevant.

Mr. Horak's report, declaration and testimony should be excluded for other reasons as well. He seeks improperly to provide legal opinions in this case regarding the meaning of "human intervention." That phrase is used by the FCC as part of its test for determining whether equipment constitutes as at ATDS, but it is not a defined term. It is the job of the Court to conduct this legal analysis, but Mr. Horak bases his entire report on his own interpretation, which he has gleaned from the dictionary.

Finally, Mr. Horak's report, declaration and testimony should be excluded because they are inherently unreliable and because he is unqualified. Mr. Horak was aware of evidence that each of the telephone dialing systems at issue in this case could be used as autodialers. But rather than factor this evidence into his analysis, Mr. Horak chose simply to ignore it. An expert who turns a blind eye to contrary evidence in this manner is inherently unreliable. Indeed, when Mr. Horak has engaged in this kind of unreliable methodology in other cases, courts have roundly criticized him and have not shied away from excluding his opinions. This Court should follow suit.

## II. HORAK'S OPINIONS ARE IRRELEVANT

### A. Horak's Opinions Are Divorced From The Governing Standard

Mr. Horak has submitted a declaration and expert report in this case in order to present his opinion that the dialing equipment employed by Defendant did not have the capacity to be used as an autodialer at the time that they were used to place the calls at issue. Arisohn Decl. Ex. A (Horak

Rpt.) at 1.  But that analysis has no bearing on whether that dialing equipment constitutes an ATDS. The FCC, Ninth Circuit and courts throughout the country have repeatedly recognized that the test for determining whether equipment qualifies as an ATDS does not depend on how it was used or configured at the time, but rather its potential or future capacity.  Because Mr. Horak's opinions are limited to the capacity of Defendant's equipment at the time of use, they have no relevance to any issue before this Court and should be excluded.

The TCPA defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. § 227(a)(1).  Interpreted broadly by the FCC, an ATDS also includes systems that have "the capacity to dial numbers without human intervention." *In the Matter of Rules & Regs. Implementing the TCPA*, 18 F.C.C.R. 14014, ¶ 132 (July 3, 2003) ("2003 Order"); *see also id.* at ¶¶ 131-33; *In the Matter of Rules & Regs. Implementing the TCPA*, 23 F.C.C. Rcd. 559, ¶ 13 (Jan. 4, 2008) ("2008 FCC Order").  Likewise, the FCC has determined that "predictive dialers"—equipment that "store pre-programmed numbers or receive numbers from a computer database and then dial those numbers in a manner that maximizes efficiency for call centers"— also qualify as "autodialers" under the TCPA.  2003 Order, at ¶¶ 131-33.

Both the FCC and the Ninth Circuit have ruled that the dispositive issue is whether a given dialing system has the "capacity" to function as an autodialer, not how a telemarketer uses the system.  *Id.* at ¶¶ 133-34; *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (a dialing system "need only have the capacity" to function as an autodialer).  In other words, even if telemarketer uses a system to make manual calls, the system qualifies as an autodialer if the telemarketer has the option to use the system in an automated fashion.  In 2015, the FCC further "rejected any 'present use' or 'current capacity' test," and ruled that "the capacity of an autodialer is not limited to its current configuration but also includes its <u>potential functionalities</u>." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, ¶ 16 (July 10, 2015) (emphasis added).  More specifically, the FCC explained that dialing equipment qualifies as an autodialer under the TCPA if it can be "paired with predictive dialing software." *Id.* at ¶ 14; *Clayton v. Synchrony Bank*, 2016 WL 7106018, at *3 (E.D. Cal. Nov. 7, 2016) ("The

Federal Communications Commission determined the definition included any system with the 'future capacity' to store, generate, or dial random or sequential numbers through future changes in its hardware or software.") (quoting *Small v. GE Capital, Inc.*, 2016 WL 4502460, at *2 (C.D. Cal. June 9, 2016)); *Lathrop v. Uber Techs., Inc.*, 2016 WL 97511, at *2 (N.D. Cal. Jan. 8, 2016) (By adopting a "potential capacity" interpretation, the FCC "rejected any "present use" or "current capacity" test."); *Fontes v. Time Warner Cable Inc.*, 2015 WL 9272790, at *2 (C.D. Cal. Dec. 17, 2015) (The FCC ruled that the TCPA "does not exempt equipment that lacks the 'present ability' to dial randomly or sequentially. In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities.").

Despite this black letter law, Mr. Horak does not address the potential capabilities of the dialers at issue. Instead, his opinions in this case are limited to whether Defendant ███████████████████████████████████████████████████████████████████████████████████████████ Arisohn Decl. Ex. A (Horak Rpt.) at 1 (emphasis added). At his deposition, as well, Mr. Horak confirmed that he was opining solely on the capacity of SolarCity's telephone equipment at the time of use:

███████████████████████████████████████

Arisohn Decl. Ex. B (Horak Dep.) at 46:23-47:2. Mr. Horak does not present any opinions in this case relevant to the governing standard: whether the telephone systems at issue were *capable* of being used as autodialers:

███████████████████████████████████████

[redacted quotation]

*Id.* at 20:9-15; 23:13-19; 36:17-24; 54:4-15.

Because Mr. Horak addresses an issue untethered from the governing standard for determining whether the equipment at issue is an ATDS, his opinions lack any relevance to either the merits of plaintiff's claims or class certification. As such, his declaration, report and testimony should be excluded. *United States v. Sandoval–Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (Expert opinions are relevant only if the knowledge underlying them has a "valid connection to the pertinent inquiry.") *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."); *Interwoven, Inc. v. Vertical Computer Sys.*, 2013 WL 3786633, at *3 (N.D. Cal. July 18, 2013) ("Expert testimony that is unreliable or irrelevant must be excluded under Rule 702.") (Seeborg, J.).

### B. Horak Makes Legal Conclusions

Mr. Horak's declaration, report and testimony should also be excluded because they include, and are entirely premised upon, his own legal conclusions. The meaning of "human intervention" is a matter of legal interpretation that must be left to the Court. Yet, Mr. Horak has taken it upon himself to interpret that phrase, and all of his opinions in this case are based on that interpretation.

1  This is not the appropriate role for an expert witness and requires that Mr. Horak's testimony be
2  excluded in full.
3       The FCC has ruled that an "autodialer" for purposes of the TCPA includes equipment that
4  has "the capacity to dial numbers without human intervention." *In the Matter of Rules & Regs.*
5  *Implementing the TCPA*, 18 F.C.C.R. 14014, ¶ 132 (July 3, 2003) ("2003 Order"); *see also id.* at
6  ¶¶ 131-33; 2008 FCC Order at ¶ 13. In his report, Mr. Horak notes that "the FCC failed to define
7  human intervention." Accordingly, he takes it upon himself to conduct that legal analysis:



Arisohn Decl. Ex. A (Horak Rpt.) ¶ 12. At his deposition, Mr. Horak explained that he was
qualified to interpret the FCC's 2013 Order because he is a





Arisohn Decl. Ex. B (Horak Dep.) at 9:13-11:9

This kind of legal interpretation is not appropriate for expert witnesses. *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1293 (S.D. Cal. 2014) (expert's testimony opining on legal questions, including the meaning of "human intervention," was irrelevant); *Am. Alternative Ins. Corp. v. Coyne*, 2016 WL 801374, at *3 (N.D. Cal. Mar. 1, 2016) ("Legal conclusions formulated by an expert are not helpful to the trier of fact and are not admissible."); *McHugh v. United States Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) (holding that expert testimony "cannot be used to provide legal meaning or interpret the policies as written"); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law . . . . [I]nstructing the jury as to the applicable law is the distinct and exclusive province of the court."); *In re Genetically Modified Rice Litig.*, 2010 WL 5070718, at *6 (E.D. Mo. Dec. 6, 2010) ("Experts may not draw legal conclusions or interpret laws or regulations."); *Bammerlin v. Navistar Intern. Transp. Corp.*, 30 F.3d 898, 901 (7th Cir. 1994) ("It is well-established that expert witnesses may not testify to legal conclusions or to the applicability or interpretation of a particular statute or regulation."); *In re Ford Tailgate Litig.*, 2015 WL 7571772, at *8 (N.D. Cal. Nov. 25, 2015) ("courts—not jurors or experts—must interpret" federal regulations).

1 [redacted]
2 [redacted]
3 [redacted]
4 [redacted]
5 [redacted]
6 [redacted]
7 [redacted]

## III. HORAK'S METHODOLOGY IS UNRELIABLE

### A. Horak Ignored Evidence Contrary To His Opinions

Mr. Horak's report, declaration and testimony should also be excluded as unreliable because he ignored evidence contrary to his opinions. Federal Rule of Evidence 702(b) permits expert testimony only when it is "based on sufficient facts or data." Where, however, an expert witness ignores evidence contrary to his opinions, or otherwise fails to account for such evidence, the proffered testimony is properly excluded. *Abarca v. Franklin Cty. Water Dist.*, 761 F. Supp. 2d 1007, 1054 (E.D. Cal. 2011) ("Many cases decided under Daubert have excluded opinion testimony from experts who ignored facts or considerations that must be considered under methods based on reliable principles.").

Here, Mr. Horak failed to consider evidence indicating that each of the telephone systems at issue could function as autodialers, even though he was aware of such evidence. As to the [redacted] systems, [redacted] wrote an email to Mr. Horak stating that [redacted] like the one used by SolarCity. Arisohn Decl. Ex. C. Mr. Horak makes no mention of this email or capability in his report. Likewise, Mr. Horak acknowledged at his deposition that while he is aware that predictive dialers could be added to [redacted] either through code or commercially available add-ons, he ignored that in his report:

26 [redacted]
27 [redacted]
28 [redacted]

[redacted deposition excerpt]

Arisohn Decl. Ex. B (Horak Dep.) at 87:8-20. Mr. Horak's excuse for ignoring this contrary evidence is that he was not asked to consider it:

[redacted deposition excerpt]

*Id.* at 88:6-20.

Likewise, Mr. Horak ignores several pieces of evidence indicating that that ▮ could be used as an autodialer. Mr. Horak's own notes memorializing an interview with a ▮ employee states that the ▮ platform at issue ▮ Arisohn Decl. Ex. D at HORAK000191. Despite the fact that Mr. Horak acknowledges that power dialing as an "automatic dialing mode," he makes no mention of this capability his report. Arisohn Decl. Ex. A (Horak Rpt.) ¶ 27. Mr. Horak's notes regarding the ▮ call also reference ▮ preview dialing function. Arisohn Decl. Ex. D at HORAK000191. This too is omitted from his report. In addition, while Mr. Horak notes that SolarCity used ▮ he ignores the manual for that application explaining that it allows for ▮ Arisohn Decl. Ex. E at HORAK000802.

Regarding the ▮ platform, Mr. Horak does mention the availability of an add-on autodialer through a module known as the ▮. Arisohn Decl. Ex. A (Horak Rpt.) ¶ 61. But even in the face of this evidence, Mr. Horak does not consider it as part of his analysis because it would have ▮. *Id.* In light of the fact that ▮

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was a meaningful barrier to its use of this ATDS. Mr. Horak's failure to consider this evidence, like the evidence for all of the other autodialers, renders his opinions fatally unreliable.

### B. Horak Is Frequently Criticized By Courts For His Unreliable Methodology

Mr. Horak has been widely criticized by numerous courts for engaging in precisely this kind of unreliable methodology. *Compressor Eng'g Corp. v. Thomas*, 2016 WL 7473448, at *16 (E.D. Mich. Dec. 29, 2016) ("the Court finds Horak's opinion unpersuasive" on the accuracy of call logs and the need to make individualized inquiries); *id.* at *16 ("Horak's opinion has been scrutinized in this district and others as being 'unpersuasive,' 'speculative at best,' and found to fail to help a defendant meet their burden at the summary judgment stage.") (citing cases); *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, 2013 WL 3654550, at *4 (W.D. Mich. July 12, 2013) ("Horak's opinion is unpersuasive for several reasons . . . [and] speculative at best"); *id.* at *5 ("there is no support for Horak's conclusion"); *Jackson Five Star Catering, Inc. v. Beason*, 2013 WL 5966340, *2-3 (E.D. Mich. Nov. 8, 2013) (striking Horak's expert opinions because they were "factually unsupported, legal conclusions, or irrelevant"); *CE Design Ltd. v. King Architectural Metals, Inc.*, 271 F.R.D. 595, 601 (N.D. Ill. 2010) ("Horak's assessment of the transmission information's reliability is speculative" and not "supported by case authority.") *Savanna Grp., Inc. v. Trynex, Inc.*, 2013 WL 66181, at *10 (N.D. Ill. Jan. 4, 2013) (rejecting Horak's speculation that individual issues would predominate). The Court should be extremely wary in crediting any of Mr. Horak's equally unreliable opinions in this case.

### IV. HORAK IN UNQUALIFIED

Mr. Horak's should also be excluded from testifying as an expert witness in this case because is not qualified. Federal Rule of Evidence 702(a) permits expert testimony where "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." The Committee Notes add that an expert is "a person qualified by 'knowledge, skill, experience, training or education.'" Notes of Advisory Committee on Proposed Rules. "Rule 702 recognizes that witnesses gain expertise in a variety of ways, including training and experience. To be able to testify, however, expert witnesses must describe

their relevant background and explain how that background informed the opinions they offer."
*Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 900 (N.D. Cal. 2016) (Seeborg, J.)

Here, nothing in Mr. Horak's background, experience or training qualifies him to testify as an expert on the capabilities of telephone equipment. ████████████████

████████████████████████████

████ Horak Rpt. at 3. He has no technical background or training, no engineering background, no experience with hardware or software development. Arisohn Decl. Ex. F (HORAK000180-86). ████████████████

████████████████ *Id.* None of this experience qualifies him as an expert for purposes of this case.

## V. CONCLUSION

Accordingly, the Court should exclude Mr. Horak's declaration, report and testimony related to the three phone systems that SolarCity used during the proposed class period.

Dated: February 23, 2017                Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ *Joshua D. Arisohn*
      Joshua D. Arisohn

Scott A. Bursor (State Bar No. 276006)
Joshua D. Arisohn (*Admitted Pro Hac Vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com
      jarisohn@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

| | |
|---|---|
| 1 | **NATHAN & ASSOCIATES, APC** |
| 2 | Reuben D. Nathan, Esq. (State Bar No. 208436) |
|   | 600 W. Broadway, Suite 700 |
| 3 | San Diego, California 92101 |
|   | Tel: (619) 272-7014 |
| 4 | Fax: (619) 330-1819 |
|   | Email: rnathan@nathanlawpractice.com |
| 5 | |
| 6 | *Attorneys for Plaintiff* |