**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
Joshua D. Arisohn (*Admitted Pro Hac Vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com
          jarisohn@bursor.com

[Additional counsel on signature page]

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ALBINO LUCERO JR., on Behalf of Himself and all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SOLARCITY CORP.,<br><br>Defendant. | Case No. 3:15-cv-05107-RS<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ENFORCE BINDING SETTLEMENT TERM SHEET**<br><br>Date: August 3, 2017<br>Time: 1:30 PM<br>Courtroom 3, 17th Floor<br><br>Hon. Richard Seeborg |

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 3, 2017 at 1:30 PM or as soon thereafter as the matter may be heard by the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 3, 17th Floor, in the courtroom of the Honorable Richard Seeborg, Plaintiff will and hereby does move the Court to enforce the Class Action Settlement Term Sheet executed by the parties on May 19, 2017.

This motion is made on the grounds that the Class Action Settlement Term Sheet is a binding and enforceable agreement to settle this action.

This motion is based on the attached Memorandum of Points and Authorities, the accompanying Declarations of Joshua D. Arisohn, the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

### CIVIL RULE 7-4(a)(3) STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should enforce the Class Action Settlement Term Sheet executed by the parties on May 19, 2017.

Dated:  June 22, 2017                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Joshua D. Arisohn*
         Joshua D. Arisohn

Scott A. Bursor (State Bar No. 276006)
Joshua D. Arisohn (*Admitted Pro Hac Vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com
           jarisohn@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan, Esq. (State Bar No. 208436)
600 W. Broadway, Suite 700
San Diego, California 92101
Tel: (619) 272-7014
Fax: (619) 330-1819
Email: rnathan@nathanlawpractice.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PAGE(S)

I. INTRODUCTION .................................................................................................................. 1

II. THE MAY 19 TERM SHEET IS AN ENFORCEABLE SETTLEMENT
AGREEMENT ........................................................................................................................ 5

    A. This Court Has Inherent Power To Enforce The Term Sheet ................................... 5

    B. The May 19 Term Sheet Includes All Necessary Terms ........................................... 9

    C. The Parties Intended To Be Bound By The Term Sheet ......................................... 11

III. THE ENFORCEABLE TERM SHEET SETS OUT THE PAYMENT TERMS
.............................................................................................................................................. 11

IV. THE TERM SHEET DOES NOT PROVIDE FOR A BLOW PROVISION ...................... 12

V. DEFENDANT IS IN BREACH OF ITS OBLIGATION TO WORK
DILIGENTLY TOWARDS EXECUTING A FORMAL SETTLEMENT.......................... 12

VI. CONCLUSION ..................................................................................................................... 13

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alipio v. Secretary of Army*,
  1998 WL 231021 (N.D. Cal. May 1, 1998) ................................................................................ 6

*Aro Corp. v. Allied Witan Co.*,
  531 F.2d 1368 (6th Cir. 1976) .................................................................................................. 5

*Autera v. Robinson*,
  419 F.2d 1197 (D.C. Cir. 1969) ................................................................................................ 5

*Callie v. Near*,
  829 F.2d 888 (9th Cir. 1987) ................................................................................................ 5, 6

*Consolidation Coal Co. v. United States Dept. of Interior*,
  43 F. Supp. 2d 857 (S.D. Ohio 1999) ....................................................................................... 5

*Dacanay v. Mendoza*,
  573 F.2d 1075 (9th Cir. 1978) .................................................................................................. 5

*Facebook, Inc. v. Pac. Nw. Software, Inc.*,
  640 F.3d 1034 (9th Cir. 2011) .......................................................................................... passim

*Harrop v. Western Airlines, Inc.*,
  550 F.2d 1143 (9th Cir. 1977) .................................................................................................. 6

*In re Suchy*,
  786 F.2d 900 (9th Cir. 1985) .................................................................................................... 5

*J & J Sports Productions, Inc. v. Chai*,
  2010 WL 2991479 (E.D. Cal. July 28, 2010) ........................................................................... 5

*Marks-Foreman v. Reporter Pub. Co.*,
  12 F. Supp. 2d 1089 (S.D. Cal. 1998) ....................................................................................... 6

*Marrs v. Cox*,
  930 F.2d 28 (9th Cir. 1991) ...................................................................................................... 5

*Mid-S. Towing Co. v. Har-Win, Inc.*,
  733 F.2d 386 (5th Cir. 1984) .................................................................................................... 5

*Ozyagcilar v. Davis*,
  701 F.2d 306 (4th Cir. 1983) .................................................................................................... 6

*Ramirez v. DeCoster*,
  142 F. Supp. 2d 104 (D. Me. 2001) ...................................................................................... 7, 8

*Shaffer v. Litton Loan Servicing, LP*,
  2012 WL 10274678 (C.D. Cal. Nov. 13, 2012) ..................................................................... 6, 9

*TNT Mktg., Inc. v. Agresti,*
  796 F.2d 276 (9th Cir. 1986) .................................................................................................. 5

*Zendejas v. Reel Cleaning Servs., Inc.,*
  2009 WL 2431299 (N.D. Ill. Aug. 6, 2009) ............................................................................ 8, 9

**RULES**

Fed. R. Civ. P. 59(e) ........................................................................................................................ 4

I.      INTRODUCTION

On the eve of this Court issuing a decision on Plaintiff's motion for class certification, the parties reached agreement to settle this case. That agreement was reduced to writing in a "Class Action Settlement Term Sheet" (the "May 19 Term Sheet" or "Term Sheet"), executed by counsel for Defendant SolarCity Corp. ("SolarCity") Tiffany Cheung and by Plaintiff's counsel Scott A. Bursor on behalf of the Plaintiff and the putative class. Arisohn Decl. Ex. A.

The Term Sheet states that SolarCity will pay $15 million into a settlement fund for the settlement of "all claims" in this action. Term Sheet ¶¶ 1, 6. The Term Sheet provides that "[t]here will be no reversion of any funds from the Settlement Fund to Solar City." *Id.* ¶ 2. It also states that "[t]he costs of class notice, claims administration, Plaintiffs attorneys' fees and litigation expenses, and class representative incentive payments, as approved by the court, are to be paid from the Settlement Fund." *Id.* ¶ 3. The Term Sheet precisely defines the settlement class:

> all individuals in the United States, from November 6, 2011 to the date that class notice is disseminated, who received from or on behalf of Defendant: (1) one or more calls on their cellphones, including calls using an artificial or prerecorded voice, or (2) at least two telemarketing calls during any 12-month period where their phone numbers appeared on a National or State Do Not Call Registry or Solar City's Internal Do Not Call List more than 15 days before the calls.

*Id.* ¶ 4. It names each of the released parties:

> Solar City, each, any and all of their respective past, present, and future heirs, executors, administrators, predecessors, successors, assigns, parent companies, subsidiaries, divisions, joint venturers, entities in which Solar City has a controlling interest, holding companies, employees, agents, consultants, marketing partners, resellers, lead generators, telemarketers, independent contractors, insurers, reinsurers, directors, officers, partners, principals, attorneys, accountants, financial advisors, investors, investment bankers, underwriters, shareholders, auditors, legal representatives, successors in interest, affiliates, trusts, and corporations; and each and all of the past, present, and future officers, directors, principals, representatives, employees, agents, shareholders, attorneys, successors, executors, and assigns of any of the foregoing entities.

*Id.* ¶ 5. It also provides for the precise scope of release:

> Any and all claims, liabilities, demands, causes of action, or lawsuits of the Class Members, whether known or unknown (including Unknown Claims), whether legal, statutory, equitable, or of any other

> type or form, whether under federal, state, or local law, and whether brought in an individual, representative, or any other capacity, of every nature and description whatsoever that were brought Action or could have been brought in the Action or relating in any way to telephone calls by, from, or on behalf of Solar City to Settlement Class Members, including but not limited to claims for any alleged TCPA violation or any other telephone- or telemarketing-related federal, state or local law, regulation or ordinance, claims that in any way relate to automated calls (i.e., those made using an Automatic Telephone Dialing System and/or an artificial or prerecorded voice) or telemarketing calls made by or on behalf of Solar City to Settlement Class Members or telephone numbers assigned to Settlement Class Members.

*Id.* ¶ 6. Finally, the Term Sheet states that "[t]he parties shall promptly notify the court that they have reached agreement on all material terms of a class action settlement of this matter, and shall work diligently to execute a formal settlement agreement within 14 days." *Id.* ¶ 9.

Both SolarCity and the Plaintiff are represented by sophisticated counsel. The initial draft of the Term Sheet was prepared by Plaintiff's counsel, though edits were proposed and accepted by counsel for both sides before it was executed. The Term Sheet was executed by Tiffany Cheung, counsel for SolarCity, and by an attorney, Scott A. Bursor, on behalf of the Plaintiff, Jose Albino Lucero Jr., and putative class members.

The Term Sheet was executed on the morning of May 19, 2017, more than two months after the Court had heard oral argument on Plaintiff's motion for class certification. Immediately following the execution of the Term Sheet, the parties called the Court pursuant to paragraph 9 of the Term Sheet and left a voicemail stating that they had "reached agreement on all material terms." Term Sheet ¶ 9; Arisohn Decl. ¶ 2. Less than one hour later, Ms. Cheung followed up by E-Mail to the court on behalf of the parties confirming the same and "request[ing] that the Court stay further proceedings in the case pending plaintiffs' motion for preliminary approval." *Id.*, Ex. B

The day that the May 19 Term Sheet was executed, Ms. Cheung E-mailed Joshua D. Arisohn, counsel for Plaintiff, stating that she would "prepare a draft of the settlement agreement" and aim to circulate it "by the middle of next week." *Id.*, Ex. C. By May 25, however, Plaintiff had not received any word from Ms. Cheung and Mr. Arisohn E-Mailed her asking for an update. *Id.* Ms. Cheung responded tersely: "Working on the draft; likely tomorrow." *Id.* The next day, on May

26, Ms. Cheung sent Mr. Arisohn another E-Mail stating "Update - have a draft that is close and actively working on it. I'll send as soon as I can." *Id.* But by May 30, 2017—11 days after the Term Sheet was fully executed—Ms. Cheung still had not sent Plaintiff a draft settlement agreement and Mr. Arisohn once again inquired whether a draft would be forthcoming. *Id.* Ms. Cheung never responded.

Finally, on May 31—12 days after the signing of the Term Sheet and just two days away from the 14-day deadline the parties had agreed to for completing a settlement agreement—Mr. Arisohn E-Mailed Ms. Cheung with a warning that SolarCity was not adhering to its promise to work towards a formal settlement agreement:

> As you are aware, paragraph (9) of the Term Sheet that we signed in this matter (attached) provides that the parties "shall work diligently to execute a formal settlement agreement within 14 days." Because SolarCity has delayed in providing a draft settlement agreement as promised, it is currently in breach of this provision. SolarCity needs to cure this breach today or we will take appropriate action.

*Id.*, Ex. D. Later that day, Ms. Cheung finally circulated a draft settlement agreement (the "May 31 Draft"). *Id.*, Ex. E.

That draft agreement differed markedly from the Term Sheet in one important respect: SolarCity sought to completely upend the payment terms. The Term Sheet provides that SolarCity "will pay $15 million into the Settlement Fund" and that "[t]he costs of class notice, claims administration, Plaintiffs attorneys' fees and litigation expenses, and class representative incentive payments, as approved by the court, are to be paid from the Settlement Fund." Term Sheet ¶¶ 1, 3. SolarCity's May 31 Draft, however, provided that instead of a single payment of $15 million, it would instead make three separate payments over what would likely be a multi-year period:

> Defendant shall fund the Settlement Agreement as follows: (a) within fourteen (14) days of the entry of the Preliminary Approval Order (and receipt of wire instructions provided by the Settlement Administrator to Defendant and an executed W-9), Defendant will transfer to the Settlement Administrator (via wire instructions provided by the Settlement Administrator to Defendant) the estimated costs of class notice and initial administration costs (estimate to be provided by Settlement Administrator) into the Settlement Fund; (b) within thirty (30) days after entry of the Final Approval Order and Judgment, Defendant will pay the Fee Award subject to the terms of section ___

>below; and (c) within thirty (30) days after the Effective Date,[1] Defendant will transfer to the Settlement Administrator the remaining amount of the Settlement Fund not previously paid by Defendant.

Arisohn Decl., Ex. E. In addition, SolarCity's draft included a blow provision under which it would have the option to void the Settlement Agreement "[i]f 500 or more of potential Settlement Class Members opt out of the Settlement." *Id.* These material terms had never previously been discussed or agreed to and do not appear in the Term Sheet. The payment provision, in particularly, is directly contrary to the payment structure set out in the Term Sheet.

On June 6, 2017, Scott A. Bursor, counsel for Plaintiff, sent Ms. Cheung a redline of the agreement to reflect the payment terms that parties had agreed to in the Term Sheet:

>Defendant shall fund the Settlement Agreement as follows: (a) within fourteen (14) days of the entry of the Preliminary Approval Order (and receipt of wire instructions provided by the Settlement Administrator to Defendant and an executed W-9), Defendant will transfer to the Settlement Administrator (via wire instructions provided by the Settlement Administrator to Defendant) Fifteen Million Dollars ($15,000,000).

*Id.*, Ex. F.

By June 13, 2017, Plaintiff had not heard back from SolarCity and Mr. Arisohn once again E-Mailed Ms. Cheung asking "[c]an you please send us an update on where things stand with the settlement agreement?" *Id.*, Ex. G. Later that day, Ms. Cheung circulated an updated redline in which SolarCity's changed payment terms and the blow provision reappeared. *Id.*, Exs. G-H. Mr. Bursor responded the next day on June 14 stating that SolarCity's "last round of edits to the settlement agreement suggest[ed] bad faith." *Id.* Ex. I.

Now, 34 days after the execution of the Term Sheet, SolarCity has refused to agree to a formal settlement agreement that conforms to the material terms previously agreed to by the parties. The preparation of settlement documents based on the May 19 Term Sheet should have been a

---

[1] The May 31 Draft defines the Effective Date as "the first date by which any Judgment entered pursuant to the Agreement becomes Final." *Id.*, Ex. E. It defines "Final" as "one business day following the later of the following events: (i) the expiration of three (3) business days after the time to file a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to file an Appeal has passed without any Appeal having been taken; and (iii) the resolution of any Appeal in a manner that does not reverse or vacate the Final Judgment and in a manner that permits the consummation of the Settlement substantially in accordance with the terms and conditions of this Agreement." *Id.*

scrivening exercise. But SolarCity attempted to change the deal by inserting a completely different payment terms that would potentially leave the class without payment for several years and a blow-up provision that would completely change the calculous of the deal. Because the Plaintiff will not accept terms that are less favorable than those in the May 19 Term Sheet, the parties have been unable to jointly prepare more detailed settlement documents. Plaintiff therefore moves to enforce the terms of the May 19 Term Sheet, which the parties agree includes "all material terms of a class action settlement." Term Sheet ¶ 9. Alternatively, if the Court finds that the Term Sheet is not enforceable, Plaintiff requests that the Court disregard the Parties' previous request to stay further proceedings in the case and move forward on Plaintiff's Motion For Class Certification.

## II.  THE MAY 19 TERM SHEET IS AN ENFORCEABLE SETTLEMENT AGREEMENT

### A.  This Court Has Inherent Power To Enforce The Term Sheet

Under federal law, "[i]t is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (citing *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984), *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976), and *Autera v. Robinson*, 419 F.2d 1197, 1200 (D.C. Cir. 1969)); *see TNT Mktg., Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986) ("The district court had inherent power to enforce the agreement in settlement of litigation before it,") (citing *In re Suchy*, 786 F.2d 900, 902–03 (9th Cir. 1985) ("Furthermore, it is well settled that a court has inherent power to enforce summarily a Settlement Agreement involving an action pending before it")); *J & J Sports Productions, Inc. v. Chai*, 2010 WL 2991479, *1 (E.D. Cal. July 28, 2010) ("If a dismissal is not final, a district court has continuing jurisdiction to enforce, modify or vacate the Settlement Agreement") (citing *Consolidation Coal Co. v. United States Dept. of Interior*, 43 F. Supp. 2d 857, 863 (S.D. Ohio 1999)); *see also Marrs v. Cox*, 930 F.2d 28 (9th Cir. 1991) (Unpub. Disp.) ("A court has inherent power summarily to enforce a Settlement Agreement with respect to an action pending before it; the merits of the antecedent controversy become inconsequential") (citing *TNT Marketing,* 796 F.2d at 278, and *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978)).

To be enforced, a settlement agreement must meet two requirements. First, it must be a

complete agreement. *Callie*, 829 F.2d at 890 (citing *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983)). This requires that the parties have reached agreement on all necessary terms. *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1037 (9th Cir. 2011). Second, the parties "must have *either* agreed to the terms of the settlement or authorized their respective counsel to settle the dispute." *Marks-Foreman v. Reporter Pub. Co.*, 12 F. Supp. 2d 1089, 1092 (S.D. Cal. 1998) (citing *Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977) (emphasis added)); *Alipio v. Secretary of Army*, 1998 WL 231021, *3 (N.D. Cal. May 1, 1998).

A district court's authority to determine the enforceability of a settlement agreement applies equally to class action settlements, where additional "papering" of the agreement and court approval will be required. In *Shaffer v. Litton Loan Servicing, LP*, 2012 WL 10274678 (C.D. Cal. Nov. 13, 2012), for example, the parties had reached agreement on a class action settlement through an exchange of emails between counsel. The settlement was memorialized in a February 17, 1999 email Litton's counsel sent to plaintiff's counsel:

> On Thursday February 12, 2009, plaintiffs proposed an all-inclusive settlement . . . in the total amount of $537,500 covering all class claims, all claims of the individual named plaintiffs, and all attorneys' fees and costs, of whatever nature. Litton accepts this demand, subject to the parties reaching agreement on the terms of a proposed settlement agreement.

*Id.* at *3. Thereafter, the parties filed a joint notice of settlement, reporting that they had reached a settlement encompassing the claims of the nationwide class and the individual claims of the named plaintiffs. *Id.* The court directed the parties to file a joint motion for preliminary approval of the class settlement, together with a proposed form of class notice, by April 13, 2009. *Id.* Between February 17 and April 13, 2009, counsel worked together to finalize the settlement agreement and release. *Id.* However, on April 13, 2009, class counsel advised Litton's attorney, for the first time, that certain of the class representatives, the Saulniers, would neither execute nor support the settlement agreement. *Id.* at *4. After an evidentiary hearing, the district court found that it was undisputed that "as of February 17, 2009, the settlement and release had not been memorialized, and the class notice and claims forms had yet to be drafted." *Id.* at *9. Nevertheless, the district court found that the February 17 email included all material terms and was enforceable:

> [O]n February 17, 2009, the parties agreed to the material terms of the settlement. As Allensworth testified, the terms of the February 17 agreement remained essentially unchanged and were memorialized in the April 13, 2009 final settlement agreement. As he also noted, the total amount of the settlement to which the parties agreed on February 17 did not change. The agreement settled all class claims and the named plaintiffs' individual claims. The $5,000 that was to be paid to the named plaintiffs in settlement of their individual and class claims did not change. Similarly, the agreed upon resolution addressed attorneys' fees and costs, as well as administrative costs. Allensworth described what transpired between February 17 and April 13, 2009, as 'wordsmithing' that did not alter the fundamental terms of the settlement.
>
> The court has independently reviewed the various draft settlement agreements that the parties exchanged between February 17 and April 13, 2009, and their email correspondence, and finds that Allensworth's characterization is accurate. The drafts reworded the release and the class notice. No draft, however, contemplated modification of the fundamental terms to which the parties agreed on February 17, 2009, i.e., the total amount of the settlement, the release by plaintiffs of all class and individual claims, and incentive payments of $5,000 to the named plaintiffs for their participation in the litigation and the release of their individual claims. Thus, the court concludes that the parties agreed to the material terms of the settlement on February 17, 2009, despite their continued negotiation of the language of the written agreement to be provided to the court for purposes of Rule 23.

*Id.* at *15.

Similarly, in *Ramirez v. DeCoster*, 142 F. Supp. 2d 104 (D. Me. 2001), the district court granted a motion to enforce a six-paragraph term sheet settling a class action against the operator of an egg farm, claiming racial and ethnic discrimination. The term sheet read as follows:

> 1. Plaintiffs agree to settle this matter against all Defendants for the sum of $6 million dollars.
>
> 2. Payments shall be as follows:
>
>    $1.5 million upon approval of the Court
>
>    $4.5 million over a period of 24 months
>
> 3. The Plaintiffs agree to use their best efforts to help lift the boycott of DeCoster with the various retail establishments.
>
> 4. Consideration will be given to rehiring certain former employees of DeCoster.

      5.      Parties agree to make a good faith effort to deal with other collateral but not financial issues with the Court.

      6.      This mediation agreement contemplates that a written Settlement Agreement will be executed upon agreement to all material terms.

*Id.* at 107.  This term sheet was signed by an attorney for the plaintiffs, an attorney for the defendants, and by the mediator.  *Id.*  After the term sheet was signed, but before a formal settlement agreement was executed, the court issued a ruling on class certification that favored the defendants.  In light of that ruling, the defendants sought to disavow the term sheet.  *Id.* at 108.  When the plaintiffs moved to enforce the term sheet, the defendants argued it was incomplete because it lacked terms concerning (a) the definition of "best efforts"; (b) the scope of the plaintiff class; and (c) the nature of any security for the installment payments.  *Id.* at 109.  After an evidentiary hearing, the district court found none of those missing terms were material.  *Id.* at 109–112.  The district court also found that ¶ 6, contemplating a further written settlement agreement, did not undermine the enforceability of the term sheet:

> All the lawyers and [the mediator] recognized that a formal written document must be prepared in order to secure court approval, but that was basically a scrivening exercise, with a good faith obligation attached.  That was the reasonable objective interpretation of paragraph 6.  The intent to be bound was made manifest, and paragraph 6 did not expressly condition the effectiveness of the deal on execution of a later, more comprehensive, document.  The February 21 agreement was, therefore, binding.

*Id.* at 114.

      In another similar case, *Zendejas v. Reel Cleaning Servs., Inc.*, 2009 WL 2431299 (N.D. Ill. Aug. 6, 2009), the parties orally agreed to settle a Fair Labor Standards Act (FLSA) class action for $155,000, inclusive of attorney's fees, to be paid in specified installments.  *Id.* at *2.  During a June 6, 2008 status conference, before a written agreement had been prepared, plaintiffs' counsel stated "that he thought the case was settled based on an agreement that had been reached that morning… [though] there were some unresolved issues regarding who would sign the agreement and in what capacity and the consequences if defendants failed to make an installment payment."  *Id.*  Counsel for both sides indicated at the status conference "that they were confident that those issues could be

resolved." *Id.* Counsel then exchanged several drafts of a formal class action settlement agreement, including a July 31, 2008 draft which appeared to be near-final and to reflect agreement on all material terms. *Id.* at *3. Thereafter the defendant sought to insert two new terms. One was a provision requiring the plaintiffs' counsel to "agree to forego representing other individuals in future similar lawsuits." *Id.* at *11. The other was a provision requiring plaintiffs to agree that class members would be required to "provide a fingerprint or photo identification in advance of receiving a settlement payment." *Id.* at *12. The plaintiffs refused to include these terms in the settlement agreement. Instead, plaintiffs' counsel signed a clean version of the July 31 draft and sent it to defendants' counsel. *Id.* at *6. When defendants refused to execute the agreement, the plaintiffs moved to enforce it. *Id.* The district court granted plaintiffs' motion, finding the July 31 draft reflected agreement on all material terms of the class action settlement, and that "defendants' execution of the settlement documents was not a condition precedent to a binding agreement." *Id.* at *7.

These three cases, *Shaffer*, *Ramirez*, and *Zendejas*, demonstrate that "even in the context of class action settlements that must comport with Rule 23, courts generally find there is agreement on all of the material terms of settlement where the parties have agreed upon the monetary amount of the settlement payment and the fact that plaintiffs will release specific claims." *Shaffer*, 2012 WL 10274678, at *15. "Agreement on the precise terms of a written settlement agreement, precise release language, or the form of class notice is not required." *Id.* (footnote omitted).

B.   **The May 19 Term Sheet Includes All Necessary Terms**

The legal standard for whether a settlement term sheet is enforceable was explained by the Ninth Circuit in *Facebook Inc. v. Pacific Northwest Software, Inc.*, 640 F.3d 1034 (2011), which concerned the dispute between Mark Zuckerberg and the Winkelvoss twins concerning the ownership of the social-networking website, Facebook. "After a day of negotiations, ConnectU, Facebook and the Winkelvosses signed a handwritten, one-and-a-third page 'Term Sheet & Settlement Agreement' whereby the Winkelvosses agreed to give up ConnectU in exchange for cash and a piece of Facebook." *Id.* at 1037. "The settlement fell apart during negotiations over the form of the final deal documents, and Facebook filed a motion with the district court seeking to enforce

it." *Id.* "ConnectU argued that the Settlement Agreement was unenforceable because it lacked material terms and had been procured by fraud." *Id.* The district court found the term sheet enforceable, and the Ninth Circuit affirmed. *Id.* at 1038 ("The district court got it exactly right when it found the Settlement Agreement enforceable but refused to add the stack of documents drafted by Facebook's deal lawyers.").

The Ninth Circuit explained that for an agreement to be enforceable under California law, it need not include all "material" terms, "so long as the terms it does include are sufficiently definite for a court to determine whether a breach has occurred, order specific performance or award damages":

> "[A] term may be 'material' in one of two ways: It may be a necessary term, without which there can be no contract; or, it may be an important term that affects the value of the bargain. Obviously, omission of the former would render the contract a nullity. *See Citizens Utils. Co. v. Wheeler,* 156 Cal.App.2d 423, 319 P.2d 763, 769–70 (1958) (arms-length acquisition of a private company's shares couldn't proceed because price was omitted from the contract). But a contract that omits terms of the latter type is enforceable under California law, so long as the terms it does include are sufficiently definite for a court to determine whether a breach has occurred, order specific performance or award damages. *See Elite Show Servs., Inc. v. Staffpro, Inc.,* 119 Cal.App.4th 263, 14 Cal.Rptr.3d 184, 188 (2004); 1 B.E. Witkin, *Summary of California Law, Contracts* § 137 (10th ed. 2005) [hereinafter *Witkin on Contracts*]; *cf. Terry v. Conlan,* 131 Cal.App.4th 1445, 33 Cal.Rptr.3d 603, 612–13 (2005). This is not a very demanding test, and the Settlement Agreement easily passes it: The parties agreed that Facebook would swallow up ConnectU, the Winklevosses would get cash and a small piece of Facebook, and both sides would stop fighting and get on with their lives.

*Facebook, Inc.*, 640 F.3d at 1037–38.

The May 19 Term Sheet similarly passes this test. It states that SolarCity will pay $15 million into a settlement fund for the settlement of "[a]ny all claims" in this action. Term Sheet ¶¶ 1, 6. It also includes detailed terms defining the class, providing for notice to the class, defining the released parties, defining the scope of release and specifying limitations on Class Counsel's anticipated application for attorney's fees, costs and expenses. *Id.* ¶¶ 4-8. This is far more detailed than the handwritten term sheet enforced in *Facebook*, the one-paragraph email enforced in *Schaffer*,

the handwritten term sheet enforced in *Ramirez,* or the oral agreement enforced in *Zendejas.* The May 19 Term Sheet includes all necessary terms and is "sufficiently definite for a court to determine whether a breach has occurred, order specific performance or award damages." *Facebook, Inc.*, 640 F.3d at 1037–38.

### C. The Parties Intended To Be Bound By The Term Sheet

The Term Sheet itself evidences the parties' intent that it be binding. It states the parties "have agreed to the following principal terms of settlement of all claims asserted against Solar City in *Lucero v. Solar City Corp.*, No, 3: 15-CV-05107-RS, United States District, Court Northern District of California, subject to the parties' drafting and execution of a definitive settlement agreement, and subject to approval by the Court." Term Sheet at 1. It further states that the parties "have reached agreement on all material terms of a class action settlement of this matter." *Id.* ¶ 9.

## III. THE ENFORCEABLE TERM SHEET SETS OUT THE PAYMENT TERMS

The payment terms in the enforceable May 19 Term Sheet are clear: SolarCity "will pay $15 million into the Settlement Fund" and then "[t]he costs of class notice, claims administration, Plaintiffs attorneys' fees and litigation expenses, and class representative incentive payments, as approved by the court, are to be paid from the Settlement Fund." Term Sheet ¶¶ 1, 3. The Term Sheet also notes that "[t]here will be no reversion of any funds from the Settlement Fund to Solar City" and that the parties "have reached agreement on all material terms of a class action settlement of this matter." *Id.* ¶¶ 2, 9. These provisions necessarily mean that SolarCity will make a single payment into the Settlement Fund following preliminary approval—when class notice will begin—and that all payments will thereafter be deducted from the fund. The Term Sheet does not indicate that SolarCity can split the $15 million into three separate payments over a period of years. Such a provision is not consistent with the Term Sheet as written and would undoubtedly constitute a material term despite the fact that the parties acknowledged that all material terms have already been agreed to. Accordingly, Defendant's proposed revision is not consistent with the Term Sheet and cannot be adopted. Rather, consistent with the Term Sheet, the Court should require the following:

> Defendant shall fund the Settlement Agreement as follows: (a) within fourteen (14) days of the entry of the Preliminary Approval Order (and receipt of wire instructions provided by the Settlement Administrator

MOTION TO ENFORCE BINDING SETTLEMENT TERM SHEET                                   11
CASE NO. 15-CV-05107-RS

> to Defendant and an executed W-9), Defendant will transfer to the Settlement Administrator (via wire instructions provided by the Settlement Administrator to Defendant) Fifteen Million Dollars ($15,000,000).

Arisohn Decl., Ex. F ¶ 4.1.

## IV. THE TERM SHEET DOES NOT PROVIDE FOR A BLOW PROVISION

The Term Sheet does not provide either of the Parties an opportunity to terminate, void or otherwise back out of their agreement. Not only would such a provision render the Term Sheet illusory, but it would fundamentally alter the agreement between the parties. Because the Term Sheet provides that the Parties had "reached agreement on all material terms," SolarCity's attempt to add a blow provision to the Settlement Agreement cannot be reconciled with the Term Sheet. Term Sheet ¶ 9. Accordingly, in enforcing the Term Sheet, the Court should not permit SolarCity the opportunity to void the deal if there are a certain number of opt outs for any other reason.

## V. DEFENDANT IS IN BREACH OF ITS OBLIGATION TO WORK DILIGENTLY TOWARDS EXECUTING A FORMAL SETTLEMENT

As described above, Defendant has not "work[ed] diligently to execute a formal settlement agreement within 14 days" despite undertaking to do so. Term Sheet ¶ 9. After executing the Term Sheet on May 19, Defendant waited 12 days to circulate a draft term sheet on May 31. Arisohn Decl. Ex. D. Then, after receiving Plaintiff's redlines on June 6, Defendant took another seven days to return new edits. *Id.* Ex. G. All the while, counsel for Plaintiff consistently prodded Defendant to work more expeditiously. *Id.* Exs. C-D, G. And on top of its foot dragging, Defendant repeatedly sought to insert material terms that differed markedly from those in the Term Sheet, indicating a lack of good faith. *Id.* Ex. E. Now, 34 days after the execution of the Term Sheet, SolarCity still refuses to agree to a formal settlement agreement. Accordingly, even under the most generous interpretation of its conduct, Defendant is in breach of its obligation to "work diligently to execute a formal settlement agreement within 14 days" of execution of the Term Sheet and Plaintiff is left with no choice but to seek enforcement of the Term Sheet in lieu of a formal settlement agreement.

## VI. CONCLUSION

For the foregoing reasons, the court should grant Plaintiff's motion to enforce the "Class Action Settlement Term Sheet" that was executed on May 19, 2017.  Alternatively, if the Term Sheet is not enforced, the Court should disregard the Parties' request that the Court stay further proceedings in the case and proceed on Plaintiff's Motion For Class Certification.

Dated:  June 22, 2017

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:  /s/ *Joshua D. Arisohn*
       Joshua D. Arisohn

Scott A. Bursor (State Bar No. 276006)
Joshua D. Arisohn (*Admitted Pro Hac Vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com
           jarisohn@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan, Esq. (State Bar No. 208436)
600 W. Broadway, Suite 700
San Diego, California 92101
Tel: (619) 272-7014
Fax: (619) 330-1819
Email: rnathan@nathanlawpractice.com

*Attorneys for Plaintiff*