**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
Joshua D. Arisohn (*Admitted Pro Hac Vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail:  scott@bursor.com
         jarisohn@bursor.com

[Additional counsel on signature page]

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ALBINO LUCERO JR., on Behalf of Himself and all Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SOLARCITY CORP., <br><br> Defendant. | Case No. 3:15-cv-05107-RS <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES, AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES** <br><br> Date: January 18, 2018 <br> Time: 1:30 PM <br> Courtroom 3, 17th Floor <br><br> Hon. Richard Seeborg |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 18, 2018 at 1:30 p.m., or as soon thereafter as the matter may be heard by the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 3, 17th Floor, in the courtroom of the Honorable Richard Seeborg, Plaintiff will and hereby does move for an order awarding attorneys' fees, reimbursement of litigation costs and expenses, and payment of incentive fees to Jose Albino Lucero Jr., Carole Gibbs and Arthur Colby.

This motion is made on the grounds that an award of attorneys' fees, reimbursement of litigation costs and expenses, and payment of incentive fees is proper, given that the parties have agreed that Class Counsel may make such applications in their Class Action Settlement Agreement, the work of Class Counsel has conferred substantial benefits to the Class, and that such awards are permitted under the laws of this Circuit.

This motion is based on the attached Memorandum of Points and Authorities, the accompanying Declaration of Joshua D. Arisohn, the accompanying Declaration of Reuben D. Nathan, the accompanying Declaration of Steven L. Woodrow, the accompanying Declaration of Stefan Coleman, the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

### CIVIL RULE 7-4(a)(3) STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should award attorneys' fees, reimbursement of litigation costs and expenses, and payment of incentive fees to the Class Representatives.

Dated:  December 1, 2017             Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   _/s/ Joshua D. Arisohn_
                Joshua D. Arisohn

Scott A. Bursor (State Bar No. 276006)
Joshua D. Arisohn (*Admitted Pro Hac Vice*)
888 Seventh Avenue

New York, NY  10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com
              jarisohn@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan (State Bar No. 208436)
600 W. Broadway, Suite 700
San Diego, California 92101
Tel: (619) 272-7014
Fax: (619) 330-1819
Email: rnathan@nathanlawpractice.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

PAGE(S)

I.      INTRODUCTION ...................................................................................... 1

II.     BACKGROUND AND PROCEDURAL HISTORY .......................................... 2

III.    SUMMARY OF THE PROPOSED SETTLEMENT ........................................ 3

        A.      Payment to Settlement Class Members .......................................... 3

        B.      Payment of Attorneys' Fees, Costs And Incentive Awards ................... 3

IV.     CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES AWARD IS
        FAIR AND REASONABLE ......................................................................... 4

        A.      The Percentage Of The Benefit Method ........................................ 4

                1.      The Total Value Of The Settlement Fund Is $15 Million ............ 4

                2.      Class Counsel Achieved Extraordinary Results For The Class ...... 5

                        a.      Class Counsel Achieved Extraordinary Results For The
                                Class .................................................................. 5

                        b.      Plaintiffs' Claims Carried Substantial Litigation Risk ......... 6

                        c.      Class Counsel Skillfully Prosecuted This Action ............... 7

                        d.      Market Rates As Reflected By Awards In Similar Cases ....... 7

                        e.      The Contingent Nature Of The Fee And Financial
                                Burden Borne By Class Counsel ................................. 9

        B.      The Requested Attorneys' Fees Are Reasonable Under A Lodestar
                Cross Check ......................................................................... 9

        C.      The Court May Alternatively Grant The Requested Attorneys' Fees
                Under The Lodestar Method .................................................... 10

                1.      Class Counsel Spent A Reasonable Number Of Hours On This
                        Litigation At A Reasonable Hourly Rate ............................ 11

                2.      All Relevant Factors Support Applying A Multiplier To Class
                        Counsel's Lodestar ................................................... 11

                        a.      Complexity Of This Litigation ................................. 12

                        b.      Class Counsel Provided Exceptional Representation
                                Prosecuting This Complex Case ............................... 13

                        c.      Class Counsel Obtained Excellent Class Benefits ............. 13

                        d.      Class Counsel Faced A Substantial Risk Of
                                Nonpayment ....................................................... 13

V.    CLASS COUNSEL'S EXPENSES WERE REASONABLE AND
       NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED
       ON BEHALF OF THE CLASS ........................................................................ 14

VI.   THE REQUESTED INCENTIVE AWARDS FOR THE CLASS
       REPRESENTATIVE ARE FAIR AND REASONABLE ................................... 14

VII.  CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Blum v. Stenson*,
    465 U.S. 886 (1984) ................................................................................ 12

*Caudle v. Bristow Optical Co.*,
    224 F.3d 1014 (9th Cir. 2000) ................................................................. 9

*Charvat v. Travel Servs.*,
    2015 WL 76901 (N.D. Ill. Jan. 5, 2015) ................................................. 6

*Cohorst v. BRE Props., Inc.*,
    2011 WL 7061923 (S.D. Cal. Nov. 14, 2011) ......................................... 7

*Cosgrove v. Sullivan*,
    759 F. Supp. 166 (S.D.N.Y. 1991) ......................................................... 12

*Couser v. Comenity Bank*,
    125 F. Supp. 3d 1034 (S.D. Cal. 2015) ................................................... 5

*Craft v. County of San Bernardino*,
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................................. 10

*Dakota Med., Inc. v. RehabCare Grp., Inc.*,
    2017 WL 4180497 (E.D. Cal. Sept. 21, 2017) ......................................... 8

*Fischel v. Equitable Life Assur. Soc'y*,
    307 F.3d 997 (9th Cir. 2002) ................................................................... 4

*Gehrich v. Chase Bank USA, N.A.*,
    316 F.R.D. 215 (N.D. Ill. 2016) ............................................................. 6

*Gene And Gene LLC v. BioPay LLC*,
    541 F.3d 318 (5th Cir. 2008) ................................................................... 6

*Gutierrez v. Wells Fargo Bank, N.A.*,
    2015 WL 2438274 (N.D. Cal. May 21, 2015) ......................................... 11

*Hageman v. AT & T Mobility LLC*,
    2015 WL 9855925 (D. Mont. Feb. 11, 2015) ........................................... 8

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................... 4, 5, 10

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ....................................................................... 14

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011) ............................................................. 4

*Hashw v. Dep't Stores Nat'l Bank*,
    182 F. Supp. 3d 935 (D. Minn. 2016) ..................................................... 5

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES,
AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES
CASE NO. 3:15-CV-05107-RS

v

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ................................................................................................. 5, 11

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ......................................................................... 8

*In re Beverly Hills Fire Litig.*,
    639 F. Supp. 915 (E.D. Ky. 1986) ........................................................................... 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................... 5, 10

*In re Boston & Me. Corp. v. Sheehan, Phinney, Bass & Green*,
    778 F.2d 890 (1st Cir. 1985) .................................................................................... 12

*In re Capital One Tel. Consumer Prot. Act Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ........................................................................ 5

*In re Heritage Bond Litig.*,
    2005 WL 1594389 (C.D. Cal. June 10, 2005) ......................................................... 7

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d. 1036 (N.D. Cal 2008) .................................................................. 7

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................................... 4, 8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) .............................................................................. 13, 14

*Ingalls v. Hallmark Mktg. Corp.*,
    2009 U.S. Dist. LEXIS 131081 (C.D. Cal. Oct. 16, 2009) ....................................... 8

*James v. JPMorgan Chase Bank, N.A.*,
    2017 WL 2472499 (M.D. Fla. June 5, 2017) ........................................................... 8

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) ................................................................................ 10, 12

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015) .............................................................................. 6

*Martin v. AmeriPride Servs., Inc.*,
    2011 U.S. Dist. LEXIS 61796 (S.D. Cal. June 9, 2011) ........................................... 8

*Meyer v. Portfolio Recovery Associates*,
    707 F.3d 1036 (9th Cir. 2012) ................................................................................ 6

*Morales v. City of San Rafael*,
    96 F.3d 359 (9th Cir. 1996) ................................................................................... 11

*Morris v. Lifescan, Inc.*,
    54 F. App'x 663 (9th Cir. 2003) ........................................................................... 4, 8

*Muchnick v. First Fed. Savs. & Loan Assoc. of Phil.*,
   1986 U.S. Dist. LEXIS 19798 (E.D. Pa. Sept. 30, 1986) ............................................ 12

*Municipal Auth. of Bloomsburg v. Pennsylvania*,
   527 F. Supp. 982 (M.D. Pa. 1981) .......................................................................... 12

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) .................................................................................. 5

*Prison Legal News v. Schwarzenegger*,
   608 F.3d 446 (9th Cir. 2010) .................................................................................. 11

*Rabin v. Concord Assets Grp., Inc.*,
   1991 U.S. Dist. LEXIS 18273 (S.D.N.Y. Dec. 19, 1991) ............................................ 12

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y. 1997) .......................................................................... 12

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................................. 15

*Rose v. Bank of Am. Corp.*,
   2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ............................................................ 5

*Singer v. Becton Dickinson & Co.*,
   2010 U.S. Dist. LEXIS 53416 (S.D. Cal. June 1, 2010)................................................ 8

*Spokeo, Inc. v. Robins*,
   135 S. Ct. 1892 (2015)............................................................................................ 7

*State of Florida v. Dunne*,
   915 F.2d 542 (9th Cir. 1990) .................................................................................. 4

*Staton v. Boeing*,
   327 F.3d 938 (9th Cir. 2003) .......................................................................... 4, 14

*Steiner v. Am. Broad. Co., Inc.*,
   248 Fed. Appx. 780 (9th Cir. 2007)........................................................................ 10

*Van Vranken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ........................................................................ 15

*Vandervort v. Balboa Capital Corp.*,
   8 F. Supp. 3d 1200 (C.D. Cal. 2014) ...................................................................... 8

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010) ............................................................................ 8

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ........................................................................ passim

*Williams v. MGM-Pathe Commc'ns Co.*,
   129 F.3d 1026 (9th Cir. 1997) ......................................................................... 4, 8

*Wright v. Nationstar Mortgage LLC,*
  2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ............................................................................. 6, 8

*Young v. Polo Retail, LLC,*
  2007 U.S. Dist. LEXIS 27269 (N.D. Cal. Mar. 28, 2007) ................................................................. 4

## I.      INTRODUCTION

Plaintiff Jose Albino Lucero Jr. (the "Class Representative" or the "Plaintiff") and Bursor & Fisher, P.A. and Nathan & Associates, APC (collectively "Class Counsel") respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees, reimbursement of litigation costs and expenses, and payment of incentive awards in connection with the classwide settlement of this action.

The Settlement Fund[1] in this case is $15 million.  ECF No. 171-1 at Ex. A.  Each class member is entitled to a *pro rata* share after any approved Fee Award, any approved service awards, and Settlement Administration Costs are deducted.  The Class is defined to include:

> all individuals in the United States, from November 6, 2011 to the date the class notice is disseminated, who received from or on behalf of Defendant: (1) one or more calls on their cellphones, or (2) at least two telemarketing calls during any 12-month period where their phone numbers appeared on a National or State Do Not Call Registry or SolarCity's Internal Do Not Call List more than 15 days before the calls.

*Id.* at 2.

To date, the response to the settlement has been overwhelmingly positive.  As of November 24, 2017 there have been 92,093 claims submitted and only 64 opt-outs.  Arisohn Decl. ¶ 40.  The claims process, which runs until April 16, 2018, will undoubtedly result in even more claims.  Based on the current number of claims, and assuming that the fees and cost reimbursement requested herein are granted in full, class members who have submitted claims are each slated to receive $92.37.  This amount far exceeds the recovery for class members in the vast majority of TCPA class actions.  *See infra* Section IV.A.2.a.

In light of these considerations, Class Counsel requests that the Court approve an award of attorneys' fees of 33.3% of the $15,000,000 Settlement Fund, or $5,000,000.  This method of calculating the fee award, based on a percentage of the Settlement Fund, is straightforward, fair under the circumstances and supported by the law of this Circuit.  *See infra* Sections IV.A.1-IV.A.3. Cross-checking this percentage fee against the Class Counsel's lodestar validates its reasonableness.

---

[1] All capitalized terms herein that are not otherwise defined have the definitions set forth in the Class Action Settlement Agreement (ECF No. 171-1 at Ex. A) ("Settlement Agreement").

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES,
AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES
CASE NO. 15-CV-05107-RS

1

As of October 30, 2017, Class Counsel and counsel in the related case of *Gibbs v. SolarCity Corp.*, 16-cv-11010-TSH (D. Mass.), have worked 2,380 hours on this case for a total lodestar fee, at current billing rates, of $1,219,331.50.  Arisohn Decl. ¶ 50; *id.* Ex. B (Bursor & Fisher's detailed billing diaries for this case); Decl. Reuben D. Nathan In Supp. Of Pls.' Mot. For An Award Of Attys.' Fees, Costs And Expenses ("Nathan Decl.") ¶¶ 11-12; *id.* Ex. B (Nathan & Associates' detailed billing diaries for this case); Decl. Of Atty. Steven L. Woodrow In Supp. Of Mot. For An Award Of Reasonable Attys.' Fees And For Reimbursement Of Expenses ("Woodrow Decl.") ¶¶ 34, 39; *id.* Ex. B (Woodrow & Peluso's detailed billing diaries for this case); Decl. Of Stefan Coleman In Supp. Of Mot. For Approval Of Attys.' Fees And Expenses ("Coleman Decl.") ¶¶ 20, 22; *id.* Ex. 1B (Law Offices of Stefan Coleman, P.A.'s detailed billing diaries for this case).  This represents a blended hourly rate of $512.32, which is well within the bounds of reasonable hourly rates in this District.  *Id.* ¶ 50.  A fee award of 33.3%, or $5,000,000, would represent a multiplier of 4.1 over the base lodestar fee, *id.*, which is fair and reasonable and well within the accepted range of multipliers approved by courts in the Ninth Circuit.  *See* Parts IV.C.2.a-IV.C.2.d, below (discussing the factors supporting the application of a multiplier to Class Counsel's lodestar).

Class Counsel also seeks reimbursement of $144,628.85 in out-of-pocket expenses.  *See* Arisohn Decl. ¶ 53; *id.*, Ex. C (an itemized listing of each out-of-pocket expense incurred by Bursor & Fisher in connection with this case); Nathan Decl. ¶ 13 (describing each out-of-pocket expense incurred by Nathan & Associates in connection with this case); Woodrow Decl. ¶ 40; *id.*, Ex. C (an itemized listing of each out-of-pocket expense incurred by Woodrow & Peluso in connection with this case); Coleman Decl. ¶ 23; *id.*, Ex. 1B (an itemized listing of each out-of-pocket expense incurred by Law Offices of Stefan Coleman, P.A. in connection with this case).  These expenses were necessary to the prosecution of this case, were carefully and reasonably expended, and should be reimbursed.  *Id.* ¶ 52.

## II.     BACKGROUND AND PROCEDURAL HISTORY

The Declaration of Joshua D. Arisohn, submitted herewith, contains a detailed discussion of the background and procedural history of this case, including (i) Plaintiff's pre-suit investigation, (ii) the pleadings and initial motions, (iii) discovery, (iv) Plaintiff's motion for class certification and the

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES,
AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES
CASE NO. 15-CV-05107-RS

2

1 accompanying expert reports, (v) the parties' arm's-length settlement negotiations, and (vi)

2 preliminary approval and dissemination of notice.

3 ## III. SUMMARY OF THE PROPOSED SETTLEMENT

4 ### A. Payment to Settlement Class Members

5 Through November 24, 2017, Class Members have submitted 92,093 claims. *Id.* ¶ 40.

6 Accordingly, assuming that Class Counsel's motion for attorneys' fees, reimbursement of costs and

7 expenses and payment of incentive awards is granted in full, Class Members will be paid $92.37 per

8 claim.

**Distribution Of The Common Fund**

| | |
|---:|---|
| $15,000,000.00 | Total Cash Fund |
| $-1,332,862 | Estimated Epiq Administrative Expenses |
| -$5,000,000 | Attorneys' Fees at 33.3% |
| $-144,628.85 | Expense Reimbursement |
| -$15,000.00 | Class Representative Incentive Awards |
| $8,507,509.15 | Subtotal |
| /92,093 | Total Claims |
| **$92.37** | **Payout Per Claim** |

17 This is an excellent recovery that will substantially compensate claimants for the alleged violations

18 of their statutory rights. While the number of claims are likely to increase by the end of the claim

19 period on April 16, 2018, the estimate set out above is unlikely to change significantly.

20 ### B. Payment of Attorneys' Fees, Costs And Incentive Awards

21 The Settlement Agreement provides that "Class Counsel shall apply to the Court for

22 attorney's fees, expenses, and costs, totaling up to one-third of the Settlement Fund." Settlement

23 Agreement ¶ 6.1. The Settlement Agreement also provides that "Class Counsel, on behalf of

24 Representative Plaintiff, as well as Carole Gibbs and Arthur Colby (the *Gibbs* plaintiffs), shall

25 petition the Court for incentive awards in an amount up to $5,000 apiece.") *Id.* ¶ 5.1.

26 At no point has Class Counsel negotiated its attorneys' fees with SolarCity. Settlement

27 Agreement ¶ 6. Nor does the Settlement Agreement have a "clear sailing" provision. *Id.* The

28 Settlement Agreement does permit Class Counsel to apply for up to one-third of the Settlement Fund

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES, AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES CASE NO. 15-CV-05107-RS

3

for its attorneys' fees, but SolarCity is free to oppose this request.  *Id.*

## IV.  CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES AWARD IS FAIR AND REASONABLE

Under Ninth Circuit standards, a District Court may award attorneys' fees under either the "percentage-of-the-benefit" method or the "lodestar" method.  *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Class Counsel's fee request is fair and reasonable under either of these methods.

### A.    The Percentage Of The Benefit Method

Under the common fund doctrine, courts typically award attorneys' fees based on a percentage of the total settlement.  *See State of Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee award of 33% of the recovery); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorney's fee award of 33% of the recovery).

#### 1.    The Total Value Of The Settlement Fund Is $15 Million

To calculate attorneys' fees based on the percentage of the benefit, the Court must first determine the value of the Settlement Fund.  In doing so, the Court must include the value of the benefits conferred to the Class, including any attorneys' fee, expenses, and notice and claims administration payments to be made.  *See, e.g., Staton v. Boeing*, 327 F.3d 938, 972-74 (9th Cir. 2003); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd*, 473 F. App'x. 716 (9th Cir. 2012).  Moreover, the Court must not consider the total monetary amount distributed to the Class; rather, the Court should only consider the amount *made available* to the Class.  As articulated in *Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269 (N.D. Cal. Mar. 28, 2007), Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available rather than the amount actually paid out.  *Id.* at *23 (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) (ruling that a district court abused its discretion in basing attorney fee award on actual distribution to class instead of amount being made available).

Here, because the Settlement Agreement creates a common fund of $15 million, that is the amount that should be used for a percentage-of-the-benefit analysis.

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES,
AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES
CASE NO. 15-CV-05107-RS

4

2.     **Class Counsel Achieved Extraordinary Results For The Class**

The Ninth Circuit has established 25% of a common fund as a starting benchmark under a percentage-of-the-benefit analysis.  *Hanlon*, 150 F.3d at 1029.  However, the 25% benchmark would be unreasonably low here.  *See id.* at 148 ("The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases."); *see also Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272-73 (9th Cir. 1989) (explaining that the benchmark should be "adjusted upward or downward" based on the unique circumstances of the case).

The Ninth Circuit has identified five factors that are relevant in determining whether requested attorneys' fees in a common fund case are reasonable:  (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work, (d) market rates as reflected by awards made in similar cases; and (e) the contingent nature of the fee and the financial burden carried by the plaintiffs.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).  Each of these factors points to a higher award in this case.  Here, a fee of 33.3% is reasonable for the reasons set forth below.

a.   **Class Counsel Achieved Extraordinary Results For The Class**

The benefit obtained for the class is foremost among the factors in determining a proper fee. In this case, the significant monetary and prospective benefits achieved weighs heavily in favor of an upward adjustment from the 25% benchmark.  *In re Bluetooth*, 654 F.3d at 942 (citing *Hensley*, 461 U.S. at 434-36).  As noted above, each Class Member making a claim is currently slated to receive a check for $92.37.  This far exceeds the amounts obtained in vast majority of TCPA settlements.  *See, e.g.*, *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, *10 (N.D. Cal. Aug. 29, 2014) (approving $20 to $40 per claimant); *Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142, dkt. 94 (N.D. Cal. Apr. 2, 2012) (providing for a $25 merchandise voucher to each class member);  *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 944 (D. Minn. 2016) (approving a TCPA settlement that yielded $33.20 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) ("$34.60 per claimant recovery in this case does not seem so miniscule in light of the fact that class members did not suffer any actual damages beyond a few unpleasant phone calls. . . ."); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ("Although Class

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES,
AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES
CASE NO. 15-CV-05107-RS

5

Members are only expected to recover approximately $13.75, the Court finds that in light of the large number of Class Member claimants and high claims rate, the amount of the Settlement Fund weighs in favor of approving the Settlement."); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ("[T]hirty dollars per claimant" is "within the range of recoveries" in TCPA class actions") (omitting quotation marks and citations); *Wright v. Nationstar Mortgage LLC*, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) ("And the $45 recovery per claimant is also in line with other TCPA settlements."); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (recovery of $52.50 "falls well within the range of recoveries in other recent TCPA class actions"); *Charvat v. Travel Servs.*, 2015 WL 76901, at *1 (N.D. Ill. Jan. 5, 2015) (noting a "*pro rata* settlement award distribution of $48.37").

Because the Settlement provides a substantial monetary benefit to Class Members above and beyond that recovered in the vast majority of TCPA cases, this factor weighs heavily in favor of the reasonableness of the requested fee award.

### b. Plaintiffs' Claims Carried Substantial Litigation Risk

The second *Vizcaino* factor looks to the risk and novelty of the claims at issue. Both are certainly present here. Arisohn Decl. ¶¶ 58-60. (discussing the risks of litigating Plaintiffs' claims). Indeed, Class Counsel undertook significant financial risk in prosecuting this case.

Defendant vigorously opposed this case and raised numerous significant defenses to the claims presented. Most notably, there was a substantial risk that the class would not be certified in this case given SolarCity's argument that individual issues of consent predominated over common ones. Arisohn Decl. ¶¶ 58-60. While Plaintiffs strongly believed that Defendant failed to meet its burden on this point, courts have been divided when addressing this very issue, depending on the circumstances of the case. *Compare Meyer v. Portfolio Recovery Associates*, 707 F.3d 1036, 1042 (9th Cir. 2012) (upholding class certification) *with Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. 2008) (reversing class certification).

Further, this case was one of some complexity and the docket reflects extensive litigation. There were multiple motions to dismiss, a motion to stay, numerous discovery disputes, a contested class certification brief and competing motions by the parties to strike each other's experts. Even if

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES, AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES CASE NO. 15-CV-05107-RS

6

the case did not settle and class certification was granted, there likely would have been a 23(f)

petition, a motion to decertify the class, a motion for summary judgment and a trial.  In addition,

there was a substantial risk that the D.C. Circuit would issue a decision in *ACA International v.*

*FCC*, No. 15-1211 (D.C. Cir.) that would have upended the FCC's final order interpreting the

meaning of "automatic telephone dialing system" under the TCPA, among other things.  Another

risk was the Supreme Court's pending decision in *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015)

which might have upended the law on the type of injury necessary for Article III standing.

Accordingly, significant legal obstacles faced the class from the onset and the risk and complexity of

the suit supports approval of the requested attorneys' fee.

### c.  Class Counsel Skillfully Prosecuted This Action

The litigation of a complex, multiparty, nationwide class action "requires unique legal skills

and abilities."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d. 1036, 1047 (N.D. Cal 2008).

However, the "single clearest factor reflecting the quality of class counsels' services to the class are

the results obtained."  *In re Heritage Bond Litig.*, 2005 WL 1594389, at *12 (C.D. Cal. June 10,

2005).  The quality of opposing counsel is also important in evaluating the quality of the work done

by Class Counsel.  *Cohorst v. BRE Props., Inc.*, 2011 WL 7061923, at *20 (S.D. Cal. Nov. 14,

2011).

Here, Class Counsel faced an uphill battle not only in their pursuit of the facts in this

complicated case, but in the formidable opposition by experienced class action defense counsel from

both Orrick, Herrington & Sutcliffe, LLP and Morrison & Foerster LLP.  Despite these obstacles,

Class Counsel succeeded in defeating a motion to dismiss and stay, prevailing in multiple discovery

disputes and reaching this Settlement. The ability of Class Counsel to obtain such a favorable

settlement in these circumstances supports the requested fee award.

### d.  Market Rates As Reflected By Awards In Similar Cases

Although the Ninth Circuit has established a benchmark fee of 25%, it is not uncommon for

courts in this Circuit to award fees even higher than 25% in common fund cases.  For example, when

awarding 32.8% of the settlement fund for fees and costs, Judge Patel explained:  "absent

extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES,
AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES
CASE NO. 15-CV-05107-RS

7

be set at 30%[,]" as this will "encourage plaintiffs' attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions."  *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378-79 (affirming attorney's fee of 33% of the recovery); *Williams*, 129 F.3d at 1027 (33.33% of total fund awarded); *Morris*, 54 Fed. App'x at 663 (affirming fee award of 33% of the recovery); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (citing to five recent class actions where federal district courts approved attorney fee awards ranging from 30% to 33%); *Martin v. AmeriPride Servs., Inc.*, 2011 U.S. Dist. LEXIS 61796, at *23 (S.D. Cal. June 9, 2011) (noting that "courts may award attorneys fees in the 30%-40% range"); *Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. June 1, 2010) (approving attorney fee award of 33.33% of the common fund and holding that award was similar to awards in three other cases where fees ranged from 33.33% to 40%); *Ingalls v. Hallmark Mktg. Corp.*, 2009 U.S. Dist. LEXIS 131081 (C.D. Cal. Oct. 16, 2009) (awarding 33.33% fee on a $5.6 million common fund settlement); *Rippee v. Boston Mkt. Corp.*, No. 05-CV-1359 TM (JMA) (Dkt. No. 70, at 7) (S.D. Cal. Oct. 10, 2006) (awarding a 40% fee on a $3.75 million in a common fund settlement); *Soto v. Wild Planet Foods, Inc.*, 15-cv-05082-BLF, Nov. 27, 2017 Order (ECF No. 61) (awarding class counsel, including both Bursor & Fisher and Nathan & Associates, a fee award of 33.33%).

In TCPA settlements as well, courts in this Circuit and around the country have not shied away from awarding more than 25 percent in fees.  *See, e.g., Dakota Med., Inc. v. RehabCare Grp., Inc.*, 2017 WL 4180497, at *10 (E.D. Cal. Sept. 21, 2017) (awarding one-third of common fund in attorneys' fees); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33%); *Hageman v. AT & T Mobility LLC*, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (awarding one-third of the common fund recovery in attorney's fees); *James v. JPMorgan Chase Bank, N.A.*, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017) (approving a request for a 30% attorney's fee); *Wright v. Nationstar Mortgage LLC*, 2016 WL 4505169, at *14 (N.D. Ill. Aug. 29, 2016) ("[T]he baseline rate in TCPA common fund cases is 30% of the first $10 million of recovery" and "25% of the next $10 million") (quotation marks and citations omitted).

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES,
AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES
CASE NO. 15-CV-05107-RS

8

### e. The Contingent Nature Of The Fee And Financial Burden Borne By Class Counsel

The fifth factor cited by *Vizcaino* is the contingent nature of the fee and the financial burden carried by the plaintiffs. *Vizcaino*, 290 F.3d at 1050. To date, Class Counsel has worked for over two years with no payment, and no guarantee of payment absent a successful outcome. Class Counsel and counsel in *Gibbs* also advanced $144,628.85 in out-of-pocket expenses, again with no guarantee of repayment. If the case had advanced through class certification, these expenses would have increased many-fold, and Class Counsel would have been required to advance these expenses potentially for several years to litigate this action through judgment and appeals.

The burdens borne by Class Counsel in this case also included extensive travel for depositions, appearances in three different courts and mediation. Travel destinations for this case spanned the country and included Chicago, Albuquerque, Las Vegas (twice), Milwaukee, Dallas, Worcester and Sacramento (twice).

### B. The Requested Attorneys' Fees Are Reasonable Under A Lodestar Cross Check

Courts in the Ninth Circuit often examine the lodestar calculation as a crosscheck on the percentage fee award to ensure that counsel will not receive a "windfall." *Vizcaino*, 290 F.3d at 1050. The cross-check analysis is a two-step process. First, the lodestar is determined by multiplying the number of hours reasonably expended by the reasonable rates requested by the attorneys. *See Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000). Second, the court determines the multiplier required to match the lodestar to the percentage-of-the-fund request made by counsel, and determines whether the multiplier falls within the accepted range for such a case. Here, the lodestar cross-check confirms the reasonableness of the requested fee.

As of October 30, 2017, Class Counsel and counsel in *Gibbs* have worked 2,380 hours on this case for a total lodestar fee, at current billing rates, of $1,219,331.50. Arisohn Decl. ¶ 50. This represents a blended hourly rate of $512.32, which is well within the bounds of reasonable hourly rates in this District. *Id.* ¶ 55. A fee award of 33.3%, or 5,000,000 would represent a multiplier of 4.1 over the base lodestar fee. *Id.* ¶ 50; Section IV.C.2.a-d below (discussing the factors supporting the application of a multiplier to Class Counsel's lodestar). This multiplier falls well within the

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES, AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES CASE NO. 15-CV-05107-RS

9

accepted range in the Ninth Circuit, and is reasonable.  *See*, *e.g.*, *Vizcaino*, 290 F.3d at 1051 (noting district court cases in the Ninth Circuit approving multipliers as high as 19.6); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving fee award resulting in a multiplier of 5.2, and collecting similar cases); *Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (approving multiplier of 6.85); 4 Newberg on Class Actions § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher. The modest multiplier provided by the lodestar cross-check demonstrates that the percentage fee sought by Class Counsel is fair and reasonable.

Class Counsel and counsel in *Gibbs* also incurred out-of-pocket expenses totaling $144,628.85.   Each of these expenses is itemized in the attached declarations.  Arisohn Decl. Ex. C; Nathan Decl. ¶ 13; Woodrow Decl. ¶ 40 and Ex. B; Coleman Decl. ¶ 23 and Ex. A.  Each was a necessary expense to the prosecution of this case.  Arisohn Decl. ¶ 52.

## C.   The Court May Alternatively Grant The Requested Attorneys' Fees Under The Lodestar Method

Under Ninth Circuit standards, a District Court may also award attorneys' fees under the "lodestar" method.  *Hanlon*, 150 F.3d at 1029.  The lodestar figure is calculated by multiplying the hours spent on the case by reasonable hourly rates for the region and attorney experience.  *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011); *Hanlon*, 150 F.3d at 1029.  The resulting lodestar figure may be adjusted upward or downward by use of a multiplier to account for factors including, but not limited to:  (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment.  *Hanlon*, 150 F.3d at 1029; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).[2]   Courts typically apply a multiplier or enhancement to the lodestar to account for

---

[2] *Kerr* identifies twelve factors for analyzing reasonable attorneys' fees:

(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

the substantial risk that class counsel undertook by accepting a case where no payment would be received if the lawsuit did not succeed.  *Vizcaino*, 290 F.3d at 1051.

### 1. Class Counsel Spent A Reasonable Number Of Hours On This Litigation At A Reasonable Hourly Rate

Class Counsel worked very efficiently.  The law firms involved in this case coordinated their work throughout this litigation and there was no duplication of effort.  Class Counsel and counsel in *Gibbs* have submitted their detailed daily billing records showing what work was done and by whom.  Arisohn Decl. Ex. B; Nathan Decl. Ex. B; Woodrow Decl. Ex. B; Coleman Decl. Ex. 1B. These records confirm Class Counsel's efficient billing.

SolarCity was represented by very able counsel from two of the largest law firms in the United States.  This case was hard fought, right up through formalizing the Settlement Agreement, which required Plaintiffs to bring a motion to enforce the term sheet.  Given the number of contested motions, the volume of discovery, the nature of the litigation, and the difficulty of the settlement negotiations, the number of hours Class Counsel spent was reasonable.

The blended hourly rates for Class Counsel and counsel in *Gibbs* of $512.32 is also quite reasonable.  And the hourly rates for each of the lawyers who staffed the case, which are set forth in the declarations and exhibits thereto, are also reasonable and amply supported by the evidentiary material submitted as exhibits.  *Id.*; *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (finding district court did not abuse its discretion in awarding hourly rates for Bay Area attorneys of up to $875 for a partner); *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (finding reasonable rates for Bay Area attorneys of between $475-$975 for partners, $300-$490 for associates, and $150-$430 for litigation support and paralegals).

### 2. All Relevant Factors Support Applying A Multiplier To Class Counsel's Lodestar

The lodestar analysis is not limited to the initial mathematical calculation of class counsel's base fee.  *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996).  Rather, Class Counsel's actual lodestar may be enhanced according to those factors that have not been "subsumed within the initial calculation of hours reasonably expended at a reasonable rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983) (citation omitted); *see also Morales*, 96 F.3d at 364.  In a

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES, AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES CASE NO. 15-CV-05107-RS

11

1   historical review of numerous class action settlements, the Ninth Circuit found that lodestar

2   multipliers normally range from 0.6 to 19.6.  *See Vizcaino*, 290 F.3d at 1051 n.6.  Indeed, state and

3   federal courts often approve multipliers greater than 4.[3]

4       In considering the reasonableness of attorneys' fees and any requested multiplier, the Ninth

5   Circuit has directed district courts to consider the time and labor required, novelty and complexity of

6   the litigation, skill and experience of counsel, the results obtained, and awards in similar cases.

7   *Blum v. Stenson*, 465 U.S. 886, 898-900 (1984); *Kerr*, 526 F.2d at 70.  All of the factors weigh

8   heavily in favor of the requested fee award in this action.  *Vizcaino*, 290 F.3d at 1051.

9                                           **a.   Complexity Of This Litigation**

10      The novelty and complexity of this case strongly supports the requested fee.  This case

11  required significant discovery into the workings of the solar lead industry.  SolarCity's main

12  argument in this case was that call recipients had provided prior express written consent to receive

13  calls.  But Class Counsel was required to investigate layer upon layer of lead generators, affiliates

14  and middle men to determine where leads came from, whether they contained the requisite consent

15  and whether they presented common issues that would predominate over individual ones.  Arisohn

16  Decl. ¶¶ 2, 30, 33, 58.  In addition, Class Counsel was required to investigate three separate

17  telephone dialing systems to determine if they met the definition for automatic telephone dialing

18  systems under the TCPA.  *Id.*  Class counsel also had to navigate massive call logs referencing tens

19  of millions of telephone calls.

20      As the Court is aware, this action was hotly contested.  It required substantial original work,

21  and significant risk that Class Counsel's efforts (and its out-of-pocket costs) would go

22  uncompensated.  Settlement negotiations included multiple formal and informal discussions, which

23  ─────────────────────

24  [3] *See, e.g.*, *Rabin v. Concord Assets Grp., Inc.*, 1991 U.S. Dist. LEXIS 18273 (S.D.N.Y. Dec. 19, 1991) (approving multiplier of 4.4 in securities class action); *Municipal Auth. of Bloomsburg v.

25  Pennsylvania*, 527 F. Supp. 982 (M.D. Pa. 1981) (approving multiplier of 4.5); *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915 (E.D. Ky. 1986) (approving multiplier of up to 5); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) (approving multiplier of 5.5); *In re Boston & Me. Corp. v.

26  Sheehan, Phinney, Bass & Green*, 778 F.2d 890 (1st Cir. 1985) (approving multiplier of 6); *Muchnick v. First Fed. Savs. & Loan Assoc. of Phil.*, 1986 U.S. Dist. LEXIS 19798 (E.D. Pa. Sept.

27  30, 1986) (approving multiplier of 8.3 in a consumer class action); *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) (approving multiplier of 8.74); *Perera v. Chiron Corp.*, Civ. No. 95-

28  20725-SW (N.D. Cal. 1999, 2000) (approving multiplier of 9.14; cited in California Class Actions and Coordinated Proceedings §15.05).

were complicated both in terms of the subject matter and damages analyses at issue.

Therefore, a multiplier of 4.1 is well within the parameters used throughout this Circuit. Indeed, in light of the novelty and complexity of this case, the trailblazing work it required, and concomitant risks to counsel, a substantially higher multiplier would be justified.

### b.  Class Counsel Provided Exceptional Representation Prosecuting This Complex Case

Class Counsel respectfully submits that they have conducted themselves in this action in a professional, diligent and efficient manner.  Class Counsel and counsel in *Gibbs* have extensive experience in the field of class action litigation.  Arisohn Decl. Ex. A (Bursor & Fisher's resume); Nathan Decl. Ex. A (Nathan & Associates' resume); Woodrow Decl. (attaching Woodrow & Peluso's firm resume); Coleman Decl. Ex. 1A (attaching Law Offices of Stefan Coleman, P.A.'s resume).  Additionally, litigation tasks were allocated to prevent "over lawyering" and inefficiency. The bulk of the work was performed by a small number of attorneys fully familiar with the complex factual and legal issues presented by this litigation.  This division of labor permitted the work to be done efficiently, resulting in an economy of service and avoiding duplication of effort.

### c.  Class Counsel Obtained Excellent Class Benefits

As discussed above, based on the current number of claims, and assuming that this motion for fees, costs and incentive awards is granted in full, the Settlement will provide each claimant with a check for $92.37.  This amount far exceeds the recovery in the vast majority of TCPA actions.  The Notice Plan was also a resounding success, as direct notice was sent to over 3 million Class Members.

### d.  Class Counsel Faced A Substantial Risk Of Nonpayment

A critical factor bearing on fee petitions in Ninth Circuit courts is the level of risk of non-payment faced by Class Counsel at the inception of the litigation.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1048.  The contingent nature of Class Counsel's fee recovery, coupled with the uncertainty that any recovery would be obtained, are significant.  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).   In *Wash. Pub. Power*, the Ninth Circuit recognized that:

> It is an established practice in the private legal market to reward
> attorneys for taking the risk of non-payment by paying them a

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES,
AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES
CASE NO. 15-CV-05107-RS

13

> premium over their normal hourly rates for winning contingency cases
> …. [I]f this 'bonus' methodology did not exist, very few lawyers
> could take on the representation of a class client given the investment
> of substantial time, effort, and money, especially in light of the risks of
> recovering nothing.

*Id.* at 1299-1300 (citations omitted) (internal quotations marks omitted).

Throughout this case, Class Counsel expended substantial time and costs to prosecute a nationwide class action suit with no guarantee of compensation or reimbursement in the hope of prevailing against a sophisticated Defendant represented by high caliber attorneys. Arisohn Decl. ¶¶ 58-60. Class Counsel obtained a highly favorable result for the Class, knowing that if its efforts were ultimately unsuccessful, it would receive no compensation or reimbursement for its costs. This fact alone supports a finding that Class Counsel is entitled to a multiplier.

## V.   CLASS COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS

The Ninth Circuit allows recovery of litigation expenses in the context of a class action settlement. *See Staton*, 327 F.3d at 974. Class Counsel is entitled to reimbursement for standard out-of-pocket expenses that an attorney would ordinarily bill a fee-paying client. *See, e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). These expenses include court fees, copying fees, courier charges, legal research charges, telephone/facsimile fees, travel expenses, postage fees, court reporter fees, videographer fees, transcript costs, and other related expenses. Arisohn Decl., Ex. C.

Here, Class Counsel and counsel in *Gibbs* incurred out-of-pocket costs and expenses in the aggregate amount of $144,628.85 in prosecuting this litigation on behalf of the Class. *Id.* Each of these expenses was necessary and reasonably incurred to bring this case to a successful conclusion, and they reflect market rates for various categories of expenses incurred. *Id.* ¶¶ 52-57.

## VI.   THE REQUESTED INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVE ARE FAIR AND REASONABLE

In recognition of their efforts on behalf of the Class, and subject to the approval of the Court, SolarCity has agreed to pay Class Representative Jose Albino Lucero Jr., as well as the plaintiffs in the *Gibbs* action (Carole Gibbs and Arthur Colby) $5,000 each (for a total of $15,000), as appropriate compensation for their time and effort serving as the class representatives in this

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES,
AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES
CASE NO. 15-CV-05107-RS

14

1  litigation.

2         Incentive awards "are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563

3  F.3d 948, 958 (9th Cir. 2009).  Such awards "are intended to compensate class representatives for

4  work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing

5  the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.*

6  at 958-59.  Incentive awards are committed to the sound discretion of the trial court and should be

7  awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on

8  the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the

9  litigation. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  Incentive

10  awards are appropriate when a class representative will not benefit beyond ordinary class members.

11  For example, where a class representative's claim makes up "only a tiny fraction of the common

12  fund," an incentive award is justified. *Id.*, 901 F. Supp. at 299.

13         The requested amount of $5,000 for Lucero, Gibbs and Colby is appropriate to compensate

14  them for bringing this action for the benefit of millions of Class Members.  Throughout the

15  litigation, these named plaintiffs held regular meetings with Class Counsel and counsel in *Gibbs* to

16  receive updates on the progress of the case and to discuss strategy.  Arisohn Decl. ¶¶ 63-65.  They

17  assisted in Class Counsel's investigation throughout this litigation by providing information on the

18  calls that they received from SolarCity, among other matters.  *Id.*  The named plaintiffs assisted in

19  drafting the complaints and reviewed the complaints for accuracy before they were filed.  *Id.*  They

20  coordinated with Class Counsel to form responses to all discovery requests proffered by Defendant,

21  including written interrogatories and documents requests, and they gathered documents for

22  production.  *Id.*  Lucero also sat for a day-long deposition.  *Id.*  The named plaintiffs were also

23  intimately involved in the settlement process, and have continued to keep abreast of settlement

24  progress to date.  *Id.*  They took significant time away from work and personal activities to initiate

25  and litigate this action.  *Id.*  They were prepared to litigate this case to a verdict if necessary.  *Id.*

26  The named plaintiffs' dedication and efforts have conferred a significant benefit on millions Class

27  Members across the United States.

28

# VII.    CONCLUSION

Class Counsel, counsel in *Gibbs* and the Class Representatives worked on this case for more than two years.  That work produced a benefit to Class Members in the form of a $15 million Settlement Fund.  We now seek to be paid fairly for that work.  Class Counsel and the Class Representative therefore respectfully request that the Court approve:

- $5,000,000 in attorneys' fees for Class Counsel and counsel in *Gibbs*, representing 33.3% of the Settlement Fund;
- $144,628.85 in reimbursement of Class Counsel's out-of-pocket expenses; and
- Incentive awards to the Class Representatives of $5,000 apiece.

For the foregoing reasons, these amounts are fair and reasonable and should be approved.

Dated:  December 1, 2017                    Respectfully submitted,

                                                 **BURSOR & FISHER, P.A.**

                                                 By:  /s/ *Joshua D. Arisohn*
                                                      Joshua D. Arisohn

                                                 Scott A. Bursor (State Bar No. 276006)
                                                 Joshua D. Arisohn (*Admitted Pro Hac Vice*)
                                                 888 Seventh Avenue
   New York, NY  10019
   Telephone: (212) 989-9113
   Facsimile:  (212) 989-9163
   E-Mail: scott@bursor.com
          jarisohn@bursor.com

   **BURSOR & FISHER, P.A.**
   L. Timothy Fisher (State Bar No. 191626)
   1990 North California Boulevard, Suite 940
   Walnut Creek, CA  94596
   Telephone: (925) 300-4455
   Facsimile:  (925) 407-2700
   E-Mail: ltfisher@bursor.com

   **NATHAN & ASSOCIATES, APC**
   Reuben D. Nathan (State Bar No. 208436)
   600 W. Broadway, Suite 700
   San Diego, California 92101
   Tel: (619) 272-7014

1

Fax: (619) 330-1819
Email: rnathan@nathanlawpractice.com

2

3

*Attorneys for Plaintiff*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28