UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLE GIBBS and ARTHUR COLBY, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>SOLARCITY CORPORATION, a Delaware corporation,<br><br>*Defendant.* | Case No. 4:16-cv-11010-TSH |

## DECLARATION OF STEFAN COLEMAN IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEYS' FEES AND EXPENSES

Pursuant to 28 U.S.C. § 1746, I, Stefan Coleman, Esq. hereby declare and state as follows:

1. I am over the age of eighteen and am fully competent to make this declaration. I make this declaration based upon personal knowledge unless otherwise indicated.

2. I submit this declaration in support of the attorneys' fees petition made in the case of *Lucero, et al. v. SolarCity Corporation,* Case No. 3:15-cv-05107, pending in the Northern District of California.

3. I am a partner of the Law Offices of Stefan Coleman, P.A., a boutique litigation firm focused on complex litigation matters, including specifically class action cases brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4. I have litigated dozens of TCPA matters during my career including a number of

1

significant nationwide settlements.

5.       I have been involved in the *Gibbs, et al. v SolarCity* from the outset, from an extensive pre-suit investigation through to the settlement in conjunction with the *Lucero v. SolarCity* action.

*Intensive Pre-Suit Investigation*

6.       I began investigating this case over two years ago. Much of this time was spent in an intensive pre-suit investigation interviewing numerous consumers who contacted my firm seeking help from the unwanted calls from SolarCity. From the outset, I had to analyze each person's claim and figure out whether there would be issues of consent, arbitration, alleging an autodialer, and a myriad of other important factors that could present an obstacle in the litigation. In addition, I worked with the clients to collect, review, and analyze documents to prove the weight of their claims. Ultimately, I was able to categorize all of the different types of claims from the people contacting me into different categories which ultimately led to the drafting of the different classes in the in *Gibbs, et al. v SolarCity* action.

7.       For Plaintiff Gibbs, she was approached by a salesman at her home who offered her SolarCity's products and services. Despite Gibbs informing the salesman she was not interested and having registered her phone number on the National Do Not Call registry, she began receiving consistent sales calls directly from SolarCity.

8.       For Plaintiff Colby, he had visited SolarCity's website and requested a quote for solar panels to be installed in his house. When a representative from SolarCity visited his house the representative told Plaintiff Colby that his house was not suited for solar installation. Despite this, SolarCity repeatedly called Plaintiff Colby's cellular and landline telephone numbers despite his registration on the national Do Not Call registry as well his repeated requests for them

to stop calling his phone numbers.

9. In addition, as part of my pre-suit investigation I researched the *Morris v. SolarCity* case and needed to determine whether their case would necessarily preclude the case that I had been investigating. I made the determination that the calls in the *Gibbs* action were directly traceable to SolarCity whereas the calls in the *Morris* action appeared to be generated by a 3rd party affiliate. In addition, our case would have an additional stop call class not present in the *Morris* action.

*Drafting the Initiating Documents*

10. Once the decision was made which clients would best represent the different classes, I drafted the initiating documents including the complaint to be filed in Massachusetts.

11. In addition, throughout the litigation process I needed to continue to request additional documents from the plaintiffs and the other backup plaintiffs, as well as keeping everyone informed about the progress of the case.

12. My firm also had to find appropriate local counsel to file the case in Massachusetts.

*Litigation Ensues*

13. From the initial filing through settlement and until now, I have been involved in the litigation of the case.

14. Shortly after filing the case, plaintiff's counsel in the California action filed a Motion to Intervene and Transfer. We strategized and we ultimately responded by filing an Opposition to the Motion to Intervene and Transfer.

15. SolarCity then moved to dismiss the Massachusetts action which necessitated further research and drafting to respond to their Motion to Dismiss.  On March 8, 2017 Judge Hillman denied SolarCity's motion to dismiss.

*Mediation and Settlement*

16.     Ultimately, the case was mediated before Judge Denlow. Though no deal was reached at the mediation, progress was made which eventually led to the class-wide settlement before the court.

17.     I am familiar with (i) the claims, evidence, and legal arguments involved in this settlement, (ii) the terms of the class settlement, and (iii) the relevant defenses, evidence, and legal arguments. Based on my experience in having litigated dozens of TCPA matters and in settling significant nationwide class settlements, I believe that the settlement reached in this case is clearly in the best interest of the class members as it provides them with both meaningful relief and financial compensation for their claims.

*My Firm's Loadstar and Expenses*

18.     In this case, my firm agreed to undertake this class action case on a contingent fee basis of 33% plus reimbursements of costs and expenses.

19.     I knew from the outset that I would be required to spend a significant amount of time investigating and litigating Plaintiffs' claims with absolutely no guarantee of success, while simultaneously foregoing other opportunities. Nevertheless, my firm has a proven record of effectively and successfully prosecuting complex nationwide class actions such as this one (see Firm Resume of Law Offices of Stefan Coleman, P.A., attached as Exhibit 1A).

20.     To date, my firm has spent 114.7 total hours representing the Plaintiffs and the Settlement Class without compensation.

21.     Throughout my involvement in this case, I did my part to ensure that the tasks necessary to prosecute this case were appropriately allocated and conducted efficiently, without undue duplication of effort, and at minimal expense. Not being paid by the hour, I had an incentive to

conduct my efforts efficiently. So too, being responsible for advancing expenses, I had an incentive to not expend funds unnecessarily.

22.     As reflected in the table below, as of October 30, 2017, the total number of attorney hours spent on this case by my law office are 114.7 hours. The hours are notated on an ongoing basis and rounded to the nearest tenth of the hour. The total lodestar amount for my attorney time based on my current rate is $51,615. The lodestar figure is based on my ordinary professional billing rate of $450 that I charge clients, including those that pay for legal services by the hour and which have been approved in Motions for Attorneys' Fees based on the lodestar method. I have charged this $450 rate since 2013. My law firm resume is attached as Exhibit 1A.

| Attorney | Years of Experience | Hours | Rate | Total |
|---|---|---|---|---|
| Stefan Coleman | 11 | 114.7 | $450 | $51,615 |
| Total | | 114.7 | | $51,615 |

23.     In addition, my firm has incurred $5,744.00 of reimbursable expenses, which includes filing fees, a pro hac vice fee, local counsel fees, and a mediation fee.

24.     The total loadstar fee plus reimbursable expenses is $57,359.

I declare under penalty of perjury that the foregoing is true and correct.


Executed, November 7, 2017                            /s/ Stefan Coleman
                                                      Stefan Coleman, Esq.

# Exhibit 1A

LAW OFFICES OF
# STEFAN COLEMAN, LLC

201 S Biscayne Blvd, 28th Floor, Miami, Fl 33131
1072 Madison Ave, Ste 1, Lakewood, NJ 08701
1309 Jerich Tpke, New Hyde Park, NY 11040

PHONE (877) 333-9427 | FAX (888) 498-8946      NEW YORK | NEW JERSEY | FLORIDA
EMAIL: LAW@STEFANCOLEMAN.COM                   WEB: CLASSACTION.WS

The Law Firm Resume

**The Law Offices of Stefan Coleman** is a dynamic law firm that concentrates its practice on consumer law and technology. The core of the law firm is based on an in-depth knowledge of an ever-evolving technology and its impact on the law. Specifically, the firm has devoted much of its practice to protecting consumer's privacy rights as well as protecting consumer's from product defects and false advertisements. The firm also works on behalf of companies to alert them to the most recent changes and evolutions in the law as it applies to their industry as well as litigating class action cases. The firm has participated in a number of significant class actions on behalf of consumers.

Stefan Coleman, Esq. is a graduate of the University of Virginia and the University of Miami School of Law. He has practiced law for over ten years in which time he has participated in a number of significant class actions on behalf of consumers. The following is a brief list of some of the class actions that he has participated in.

*Love v. IdeaVillage Products Corp et al*, a consumer class action in which certain purchasers could recover a full refund for their purchase of an alleged defective product sold by the defendant. This case resulted in the defendant changing its business practice.

*Xexo v. iRenew Bio Energy Solutions et al*, a consumer class action in which purchasers of the iRenew bracelet recovered for the alleged false advertising by the defendant.

*In re Jiffy Lube*, a Telephone Consumer Protection Act case that resulted in a $35 million recovery for consumers for the unsolicited text message advertising. Several major issues of law were settled in this case resulting in a massive victory for consumers.

*Pimental v. Google Inc.*, a Telephone Consumer Protection Act case that resulted in a $6 million settlement for consumers who received a text message from Google's Slide app.

*Woodman v. ADP Dealer Services, Inc., et al.*, a Telephone Consumer Protection Act case that resulted in a $7.5 million settlement for consumers who received unsolicited text messages promoting car sales.

*Lanza v. Palm Beach Holdings., et al.*, a Telephone Consumer Protection Act case that resulted in a $6.5 million settlement for consumers who received unsolicited text messages.

*Kolinek v Walgreen, Co.* a Telephone Consumer Protection Act case that resulted in an $11 million settlement for consumers who received unsolicited calls to their cell phone.

LAW OFFICES OF
STEFAN COLEMAN, LLC

201 S Biscayne Blvd, 28th Floor, Miami, Fl 33131
1072 Madison Ave, Ste 1, Lakewood, NJ 08701
1309 Jerich Tpke, New Hyde Park, NY 11040

*Hopwood v. Nuance Communications., et al.*, a Telephone Consumer Protection Act case that resulted in a $9.24 million settlement for consumers who received unsolicited calls.

*Flanigan v. The Warranty Group, Inc. and American Protection Plans LLC d/b/a American Residential Warranty.*, a Telephone Consumer Protection Act case that resulted in a $16 million settlement for consumers who received unsolicited calls.

*Martin v. Global Marketing Research Services*, a Telephone Consumer Protection Act case that resulted in a $10 million fund for consumers who received unsolicited calls.

*Stone & Co.,. v. LKQ Corporation*, a Telephone Consumer Protection Act case that resulted in a $3.26 million fund for consumers who received a fax from the defendant.

# Exhibit 1B

Law Offices of Stefan Coleman
201 S. Biscayne Blvd, 28th Floor
Miami, Fl 33131



| | | Invoice # | 0001521 |
| | | Case | SolarCity |
| | | Attorney | Stefan Coleman |
| | | Rate | $450/hr |
| | | Invoice Date | October 30, 2017 |
| | | **Balance Due (USD)** | **$56,413.30** |

| Date | Task | Time Entry Notes | Time |
|---|---|---|---|
| 9/7/15 | Communication Research | Interview with Mike D. regarding calls he is receiving from Solar City. Informed him about how to document the calls. Mike D. provided websites that the caller provided and that the operator eventually connected him to Solar City. .7 Research into which 3rd party companies could be responsible for the calls promoting Solar City and documenting and tracing their relationship to Solar City .5 | 1.2 |
| 9/11/15 | Research | Reviewed all documents and information provided by Mike D. regarding calls from Solar City. Further investigation into how 3rd party is promoting Solar City.  Compiled call logs from Mike D connected to Solar City's calls and extrapolated data from all calls made to Mike D. from SolarCity. | .8 |
| 10/2/15 | Communication | Contact with client Mike D. regarding whether he pays for calls to his cell phone number regarding standing against Solar City. Updated facts about calls based on communication with client Mike D. | .3 |
| 10/6/15 | Research Investigation | Further production of call logs provided by Mike D. Reviewed and compiled months of call logs and extracted calls from Solar City. Researched other phone numbers connected to solicitation calls by SolarCity. | .9 |
| 10/7/15 | Communication Research | Interview with potential client Erin C regarding ongoing calls from Solar City. .5 Investigation into the phone numbers calling her and whether Solar City or a 3rd party on behalf of Solar City is making the calls. .6 | 1.1 |
| 10/23/15 | Communication Investigation | Contact with potential client Joe G. regarding telemarketing calls from Solar City. Investigation into whether phone numbers he has identified as coming from Solar City were made by Solar City or some 3rd party making calls posing as Solar City. | .7 |
| 12/3/15 | Communication Research | Interviewed new client Debbie N. regarding the calls she is receiving from Solar City.  Went over the detailed history of her receiving calls from Solar City and any prior relationship she has had with them as well as issues of possible consent. Explained to her the TCPA, how TCPA actions are initiated, and answered her questions about the next steps. | .8 |
| 12/4/15 | Research | Worked with Debbie N to obtain voice mails of telemarketer from her cloud account. | .4 |
| 12/9/15 | Research | Further research and investigation to determine whether calls received by Debbie N. were made by Solar City or by a 3rd party promoting Solar City. | .6 |

1

| Date | Type | Description | Hours |
|---|---|---|---|
| 1/26/16 | Communication Research | Contact with Debbie N. regarding ongoing calls from Solar City and discussing the class action process. Based upon interview with Debbie N., investigated possible sources and language she may agreed to where Debbie N may have given consent for Solar City to call her. | 1.1 |
| 1/28/16 | Research | Compiling and organizing notes from clients to discuss case with potential co-counsel regarding bringing case against Solar City, the clients who can serve as lead plaintiffs, and the types of claims that can be made. | 1.4 |
| 1/29/16 | Research | Research to determine how broad the complaints are regarding Solar City calls. Looking for commonality among the people complaining about the calls. Compiled list of complaints to determine common threads. Research to determine which of the clients we have fit into each of the different types of complaints. | 1.6 |
| 1/30/16 | Research Investigation | Research to determine how Solar City hires affiliates and lead generators and pays on a per lead basis for them to generate leads. Researching all documentation of their hiring lead generators and paying for leads. Research for affiliate agreements and contracts with lead generators. | 1.4 |
| 1/31/16 | Research | Compiling master list of complaints from phone numbers identified as Solar City telemarketing numbers and companies generating leads for Solar City. | .6 |
| 1/31/16 | Research Investigation | Research into SolarCity's purchase of Paramount Solar a solar sales marketing firm and the connection between that firm and whether it called the current clients. | .9 |
| 2/1/16 | Communication | Worked with Debbie to obtain DNC registration, screenshots, and call logs evidencing the latest calls she has received. | .4 |
| 2/3/16 | Research | Research to determine where Solar City is based and has contacts in to determine which jurisdictions a case could be brought given Solar City's contacts and the list of clients. | .4 |
| 2/11/16 | Research | Research regarding ongoing calls to Debbie N. now on both her landline and cell phone number. Worked on helping Debbie N document these new calls. Reviewed updated call logs provided by Debbi N. Researched and compiled all possible numbers from Solar City after reviewing her call logs. | .7 |
| 2/13/16 | Communication | Contact with Debbie N. regarding ongoing calls and continuing to document calls from Solar City. | .3 |
| 2/14/16 | Research | Reviewing new phone numbers provided by Debbie N. from solar telemarketers that she has linked to Solar City. Research to determine if these phone numbers are in fact lead generators for Solar City. | .8 |
| 2/16/16 | Communication Research | Review of Debbie N's husband's phone bills reflecting calls from Solar City to his cell phone. Worked with Debbie N's husband to verify his DNC registration. Answered questions regarding bringing a TCPA case against Solar City. | 1.2 |
| 3/4/16 | Communication | Communication with client Mike D regarding the ongoing calls he is receiving. In-depth interview with Mike D. regarding all the facts that have to do with the calls including all of the words that were used on the call promoting Solar City. Went over his role as lead plaintiff in a class action and answered his questions. | .8 |
| 3/6/16 | Research | Working with Debbie N client to obtain additional call records for the additional calls she has received. | .3 |
| 3/30/16 | Research Investigation | Investigation into Arthur C's claims against Solar City. .8 Research to determine if Arthur C has a good DNC claim. .4  Research whether Solar City may be number trapping and autodialing clients based on oral consent but not written consent. Research to determine if others are complaining about Solar City calling based on number | 3.2 |

2

| | | | |
|---|---|---|---|
| | | trapping.  1.2 Researched whether state TCPA claims can be brought in his home state. .8 | |
| 4/1/16 | Research Investigation | Investigation regarding new phone number Debbie N claims is from Solar City.  Called phone number to determine if the call is from Solar City or another company posing as Solar City. Online research to determine what others are saying about this phone number | .6 |
| 4/2/16 | Research Investigation | Another investigation regarding set of numbers provided by Debbie N. regarding calls she claims are from Solar City.  Research into each of the phone numbers. | .5 |
| 4/11/2016 | Communication Research | Initial interview with Carole Gibbs regarding the telemarketing calls she is receiving. Interviewed Gibbs regarding her experience and communication with Solar City. Explained to her the TCPA and filing an action against Solar City. Answered her questions regarding the  litigation process. .6 Initial research into the phone numbers she provided to link them with Solar City. .8 | 1.4 |
| 4/12/2016 | Research Investigation | Research to determine how they acquired Gibbs' phone number and what type of information and consent she may have provided. | .5 |
| 4/12/16 | Research Investigation | Investigation into calls reported by Erica G. regarding the calls she is receiving from Solar City.  Researched connection between the phone numbers she reported and their link with Solar City and their lead generators. | 1.3 |
| 4/13/2016 | Communication Research | Contact with client Gibbs regarding history of the calls and working on documenting the calls. Reviewed partial list of call logs .8  Plotted out the stop requests. .3  Research whether Gibbs would have a good DNC claim .6. | 1.7 |
| 4/15/16 | Research | Research to determine whether Gibbs' claims could be expanded into class claims. Compared research on complaints with her facts to determine if she could represent a class of people. Researched class definition that could include her claim. | .8 |
| 4/16/16 | Research | Research regarding TCPA cases in the 1st district regarding autodialer claims to determine where to potentially file Gibbs' case. | .9 |
| 4/18/16 | Research | Researched docket and prior complaint against Solar City from Morris v Solar City. | 1.1 |
| 4/19/16 | Research Analysis | Reviewed and analyzed documents related to Morris v. Solar City case.  Reviewed complaint to determine whether there are other classes that the Morris case did not allege that our clients can support. .9 Reviewed and analyzed case management statement and first amended complaint. 1.3 Reviewed motion to stay and order to deny stay. 1.1 | 3.3 |
| 4/20/16 | Research Analysis | Reviewed and analyzed Solar City's Motion to Dismiss in Morris case and Morris' response. Analyzed whether our potential clients could assist in overcoming similar arguments on a motion to dismiss for our clients and whether we will need to address new angles not raised by the Morris complaint because of the facts of our clients. | 2.4 |
| 4/23/16 | | Reviewed and analyzed order denying motion to dismiss in Morris case. .3 Reviewed and analyzed discovery letters from plaintiff and defendant along with exhibits in Morris case. 1.8 | 2.1 |
| 5/1/16 | Research | Compared outstanding cases to our potential case and clients.  Outlined differences in cases one being that the calls to our client are coming directly from Solar City and not a 3rd party. | .8 |
| 5/2/16 | Research Analysis | Compiled all notes and research into packet to share with co-counsel and to work on draft complaint. Strategized | 1.7 |

| | | | |
|---|---|---|---|
| | | about best place to file case given outstanding case against SolarCity. | |
| 5/4/16 | Communication | Communicated with co-counsel regarding prior litigation history and distinguishing our case from previous cases. | .3 |
| 5/6/16 | Drafting | Drafting and editing nature of the action and common factual allegations. | 1.1 |
| 5/8/16 | Drafting | Continued drafting and editing of complaint, including factual allegations and class definitions. | .8 |
| 5/10/16 | Drafting | Continued drafting and editing complaint, including drafting causes of actions and common questions for complaint. | .7 |
| 5/11/16 | Drafting | Drafting complaint and compiling similar complaints to include in complaint. .8  Completed draft of complaint and started on revising another version of the complaint to update factual allegations. .7 | 1.5 |
| 5/12/16 | Communication | Communicated with client Arthur C regarding updating him on our investigation, research, getting approval for draft of complaint and factual allegations, and the plan for the case. | .6 |
| 5/12/16: | Communication | Communicated with Carole G regarding updating her on our research findings and what the strategy of our case will be and getting approval of complaint. Answered any of her outstanding questions. | .7 |
| 5/13/16 | Communication | Communicated with Arthur C regarding the status of filing the case. | .2 |
| 5/13/16 | Communication Research | Communicated with Client Carole G regarding updating the factual allegations. .3 Worked with Carole G to research all email accounts for any prior relationship with Solar City. .7 | 1.0 |
| 5/15/16 | Research | Organized notes to be shared with co-counsel detailing case against Solar City and difference between other cases filed and showing current draft of the complaint. | .9 |
| 5/16/16 | Communication | Communicated with client Arthur C regarding updating complaint. | .2 |
| 5/16/16 | Communication | Communicated with client Carole G. regarding getting her approval for updated factual allegations. | .3 |
| 5/16/16 | Communication Research | Communication with client Carole G regarding providing possible additional calls from Solar City in the complaint and analyzing the dates and times of the calls. .5 Communication with co-counsel regarding case. .6 | 1.1 |
| 5/18/16 | Communication | Communicated with co-counsel regarding filing the case. | .1 |
| 5/18/16 | Research Drafting | Reviewed edit of complaint from co-counsel Steven W and researched issue of DNC revocation class.  Research prior settlements referencing revocation class and how to come up with a method to define who would be in such a class. | 1.1 |
| 5/20/16: | Research Analysis | Reviewed and analyzed edits of co-counsel to complaint from Patrick P.  .6 Factual research regarding the timing of the calls for a DNC stop call class. .8 Reviewed several resumes from possible local counsels to work with to file the case in Massachusetts. .8 Communicate with co-counsel regarding local counsel. .3 | 2.5 |
| 5/22/16 | Communication | Communicated with Carole G. regarding updated her factual allegations again regarding her earliest stop call notifications to Solar City. | .3 |
| 5/22/16 | Research Drafting | Reviewed latest draft of complaint working on revocation class definition and additional declarations to seek. .6 Conference with co-counsel regarding updated allegations. .6 | 1.2 |
| 5/25/16 | Communication | Discussion with co-counsel regarding plaintiff's facts. | .4 |
| 5/26/16 | Research Investigation | Review of Debbie N's latest updated call logs to organize and compile calls from Solar City. | .7 |
| 5/30/16 | Communication | Conference with co-counsel regarding Spokeo and its impact on case. | .6 |

4

| Date | Category | Description | Hours |
|---|---|---|---|
| 5/31/16 | Research Drafting | Drafting engagement letter with local counsel and research method of payment to get case filed in Massachusetts. | .5 |
| 6/1/16 | Research Analysis | Reviewed and analyzed final complaint and summons. Online research into Judge assigned to case. .5 Communication with co-counsel regarding local counsel. .2 | .7 |
| 6/2/16 | Research | Researched the reason for the case being transferred to the central division. | .3 |
| 6/5/16 | Research Communication | Research into claims from prospective client Leslie H regarding calls from Solar City. Working on getting additional clients to strengthen the case. | .6 |
| 6/17/16 | Communication | Communication with co-cousenl regarding case status and strategy. | .4 |
| 6/21/16 | Communication Research | Further contact with Debbie N regarding updating her call logs showing calls from Solar City and whether to file a separate case or to add her to the case. | .3 |
| 6/21/16 | Communication Research | Interview and research with Patricia B regarding ongoing calls from Solar City. | .5 |
| 6/22/16 | Communication Research | Interview and research with Lori S regarding calls from Solar City. | .4 |
| 6/26/16 | Communication Research | Investigated and researched potential new client's claims against Solar City from Susan J. | .5 |
| 7/20/16 | Research Communication | Worked with Debbie N. to obtain additional call records. Debbie N still receiving calls and working on documenting calls. | .4 |
| 7/21/16 | Research | Reviewed and analyzed Bursor & Fisher's motion for appointment of lead counsel in Morris' case along with their declarations. Analysis to determine strategy to respond. | 2.0 |
| 7/27/16 | Research Analysis | Reviewed and analyzed Motion and Memorandum to Intervene into case along with exhibits. | 2.2 |
| 7/28/16 | Research Analysis | Reviewed and analyzed corporate disclosure statement. | .1 |
| 8/3/16 | Communication Research | Worked with Debbi N. on providing updated screenshots regarding calls from Solar City. | .4 |
| 8/10/16 | Research Analysis | Review and analysis of motion for extension of time to respond to the motion to intervene and exhibits in support. | .6 |
| 8/11/16 | Research Analysis | Reviewed and analyzed Solar City's opposition to the motion to intervene. | 1.4 |
| 8/12/16 | Research Analysis | Review, analyzed, and commented on Solar City's Motion to Dismiss and researched and prepared response. | 2.8 |
| 8/13/16 | Research Analysis | Researched case law regarding click wrap agreements consenting to arbitration. | 2.3 |
| 8/26/16 | Motions Analysis | Reviewed and analyzed our opposition to the motion to dismiss. | 2.1 |
| 8/31/16 | Motions Analysis | Reviewed and analyzed opposition to motion to intervene or transfer case to the Northern District California. | 2.2 |
| 9/8/16 | Motions Analysis | Reviewed and analyzed Solar City's memorandum in law in support of its motion to dismiss. | 1.4 |
| 9/12/16 | Motions Analysis | Reviewed and analyzed Solar City's reply to their Memo in Support of their Motion to Dismiss. | 1.3 |
| 11/1/16 | Analysis Communication | Reviewed and analyzed email from Solar City's counsel inviting both cases' lawyer to mediate. .2 Conference with co-counsel regarding mediation. .4 Conference with co-counsel regarding opposing transfer. .3 | .9 |
| 11/2/16 | Communication | Communication with co-counsel regarding working with counsel on Morris case. | .3 |
| 11/14/16 | Communication Research | Communicating with potential new client from New York receiving calls from Solar City. Investigated potential claims by client Susan K. Strategized whether we should file another case in NY. | 1.2 |
| 12/5/16 | Communication Research | Reviewed email from opposing counsel regarding mediation and attachment regarding mediation notice, cost of | 1.0 |

5

| Date | Category | Description | Hours |
|---|---|---|---|
| | | mediation, date, and location. .3 Conference with co-counsel regarding mediation. .7 | |
| 12/16/16 | Communication Analysis | Reviewed and analyzed communications with opposing counsel regarding permission to view unredacted motion for class certification in Morris action. | .3 |
| 12/19/16 | Research Analysis | Review and analysis of notice of supplemental authority for Solar City and attached case Meyers v. Nicolet Restaurant. | .7 |
| 12/19/16 | Research Analysis | Communication with co-counsel and analysis of whether to accept co-counsel agreement with Morris' counsel. | .3 |
| 12/20/16 | Research Analysis | Reviewed email regarding preparation for conference call regarding upcoming mediation. Reviewed Judge Denlow's checklist sheet and his mediation procedures sheet. .9 Strategy conference with co-counsel regarding call with mediator. .4 | 1.3 |
| 1/5/17 | Communication Research | Researched additional info regarding client Leslie H for her receiving unsolicited calls from Solar City. Investigated her claims based on evidence of calls which could strengthen our case. Strategized whether additional case brought against Solar City in Pennsylvania would help. | 1.2 |
| 1/6/17 | Communication Analysis | Reviewed draft joint prosecution terms among the firms in conference with co-counsel and strategy moving forward in the litigation. .3 | .3 |
| 1/6/17 | Communication Research | Interview with potential client David V. regarding calls from Solar City. Investigated his claims and whether it would make sense to file another case in NJ or to possibly carve out a NJ class. | .4 |
| 1/9/17 | Drafting Analysis | Reviewed and analyzed joint prosecution agreement among the firms. | .5 |
| 1/9/17 | Analysis | Reviewed and edited early draft of mediation statement and completing Judge Denlow's checklist. | 1.2 |
| 1/10/17 | Research Analysis | Review and analysis of JAMs communication regarding upcoming mediation along with their mediation agreement. | .8 |
| 1/10/17 | Research Analysis | Reviewed, analyzed, and strategized improving mediation brief or possibly filing a separate statement from the Gibbs case. | .6 |
| 1/10/17 | Research Analysis | Reviewed and analyzed updated mediation statement regarding framing of Gibbs case and what the key legal hurdles are in the case. 1.4 Reviewed and analyzed final comments on all Judge Denlow's mediation checklist regarding class size, definition, and possible subclasses. .8 | 2.2 |
| 1/23/17 | Communication | Reviewed communication regarding JAMS mediation. | .1 |
| 1/24/17 | Research Analysis | Reviewed, analyzed, and commented on Solar City's mediation statement. 2.1 Reviewed and analyzed Solar City's exhibits deposition transcript of Jonathan Raymond and Randall Snyder. 1.2 Reviewed and analyzed compiled list of similar settlements exhibit to see which cases and structure were most applicable. 1.3 Reviewed and analyzed Solar City's completed settlement checklist and made comments for mediation. .8 | 5.4 |
| 1/24/17 | Communication | Communication with co-counsel and strategy regarding upcoming mediation. | .3 |
| 1/26/17 | Research Communication | Investigated possible new claims from client Jenna C regarding calls from Solar City and how this could impact current case. | .4 |
| 1/26/17 | Communication | Conference with co-counsel regarding mediation strategy. | 1.4 |
| 1/30/17 | Research Analysis | Reviewed, analyzed, and strategized based on opposing counsel's opening demand. | .3 |
| 1/30/17 | Research Analysis | Analysis of whether our joint prosecution agreement exists if California case gets dismissed or Massachusetts case gets dismissed. | .8 |

6

| Date | Type | Description | Hours |
|---|---|---|---|
| 1/31/17 | Research Communication | Communication with co-counsel regarding mediation and strategy moving forward. Communication regarding California counsel withdrawing their motion to transfer. | .4 |
| 2/2/17 | Research Analysis | Review and analysis of Intervenor's Notice of Withdrawal to Intervene and Transfer. | .1 |
| 2/8/17 | Communication Research | Interview with potential new client Chris T regarding calls from Solar City from New York. Investigated his claims and why they might be calling him. Strategized whether he should be added to the current case. | .4 |
| 2/13/17 | Communication Analysis | Communication with co-counsel regarding possibility of arbitration defense by Solar City with clients and their seeking access to client's computers. .3 Analysis of letter sent by opposing counsel regarding inspection of plaintiff's devices. .4 Check in with clients to see if they recall signing up anywhere and having signed an arbitration agreement. .4 | 1.1 |
| 2/13/17 | Research | Review and analysis of whether arbitration clause applies to cover our client as it is currently displayed by Solar City. | .5 |
| 3/8/17 | Research Motions | Review and analysis of memorandum and order of Defendant's motion to dismiss. | .8 |
| 3/22/17 | Research Analysis | Review, analysis, and commented on Solar City's Answer to Complaint. | 1.2 |
| 5/19/17: | Communication | Communication with co-counsel regarding settlement and notifying the court to push back any deadlines since we have to appear for an upcoming hearing. | .3 |
| 6/8/17 | Communication | Communication with co-counsel regarding leadership positions for the settlement. | .6 |
| 6/8/17 | Analysis | Review and analysis of proposed settlement agreement. | 2.3 |
| 6/22/17 | Research Analysis | Review and analyzed motion for settlement to enforce term sheet. | 1.2 |
| 7/10/17 | Analysis | Review and analysis of no publicity terms agreement. | .3 |
| 7/14/17 | Analysis | Reviewed and analyzed motion for settlement. | 1.4 |
| 8/3/17 | Research Analysis | Review and analysis of Memorandum in Support of Joint Motion to Stay Litigation Pending Final Approval of Class Action Settlement. | .2 |
| 9/10/17 | Drafting | Updated firm resume and sent to co-counsel. | .3 |
| 9/15/17 | Motion Analysis | Reviewed and analyzed order granting preliminary approval. | .7 |
| 9/25/17 | Communication | Communication with co-counsel regarding pro hac vice motion. | .3 |
| **Total Hours** | | | 114.7 |
| | | | **Total: $51,615.00** |

**Expenses**

| Date | Item | Description | Cost |
|---|---|---|---|
| 6/01/16 | Expense | Filing Fee | $400 |
| 8/23/16 | Expense | Local Counsel Fee | $406 |
| 11/4/16 | Expense | Local Counsel Fees | $180 |
| 12/29/16 | Expense | JAMS Mediation Fee | $4,298.30 |
| 1/5/17 | Expense | Local Counsel Fee | $360 |
| 9/25/17 | Expense | Pro Hac Vice Fee | $100 |
| | | **Total** | **$5,744.00** |

| | |
|---|---|
| Total | $57,359.00 |
| **Balance Due (USD)** | **$57,359.00** |

7